1  DYLAN J. LIDDIARD, State Bar No. 203055
   THOMAS J. MARTIN, State Bar No. 150039
2  DANIEL W. TURBOW, State Bar No. 175015
   EDMUNDO C. MARQUEZ, State Bar No. 268424
3  WILSON SONSINI GOODRICH & ROSATI
   Professional Corporation
4  650 Page Mill Road
   Palo Alto, CA 94304-1050
5  Telephone:  (650) 493-9300
   Facsimile:   (650) 565-5100
6  Email:  dliddiard@wsgr.com
   tmartin@wsgr.com
7  dturbow@wsgr.com
   ecmarquez@wsgr.com
8
   Attorneys for Defendants
9  TRIREME MEDICAL, LLC (f/k/a TRIREME
   MEDICAL, INC.), EITAN KONSTANTINO,
10 QUATTRO VASCULAR PTE LTD. and QT
   VASCULAR LTD. (f/k/a QT VASCULAR
11 PTD. LTD.)

12                    UNITED STATES DISTRICT COURT

13                  NORTHERN DISTRICT OF CALIFORNIA

14                          OAKLAND DIVISION

15

16 ANGIOSCORE, INC.,                    )  CASE NO.:  4:12-cv-3393-YGR
                                        )
17           Plaintiff,                 )  **DEFENDANTS TRIREME**
                                        )  **MEDICAL, LLC (F/K/A TRIREME**
18     v.                               )  **MEDICAL, INC.), EITAN**
                                        )  **KONSTANTINO, QUATTRO**
19 TRIREME MEDICAL, LLC (f/k/a TRIREME  )  **VASCULAR PTE LTD, AND QT**
   MEDICAL, INC.), EITAN KONSTANTINO,   )  **VASCULAR LTD (F/K/A QT**
20 QUATTRO VASCULAR PTE LTD. and QT     )  **VASCULAR PTD, LTD)'S NOTICE**
   VASCULAR LTD. (f/k/a QT VASCULAR PTD.)  **OF MOTION AND MOTION TO**
21 LTD.),                               )  **DISMISS ANGIOSCORE, INC.'S**
                                        )  **FOURTH AMENDED COMPLAINT**
22           Defendants.                )
                                        )     **Date:  September 9, 2014**
23                                      )     **Time: 2:00 p.m.**
                                        )     **Hon. Yvonne Gonzalez Rogers**
24 ─────────────────────────────────────)

25

26

27

28

1

2

# TABLE OF CONTENTS

**Page**

3    NOTICE OF MOTION AND MOTION ....................................................................1

4    STATEMENT OF ISSUES..................................................................................1

5    MEMORANDUM OF POINTS AND AUTHORITIES .........................................2

6    INTRODUCTION................................................................................................2

7    RELEVANT BACKGROUND AND THE FOURTH AMENDED COMPLAINT....................3

8    ARGUMENT ......................................................................................................4

9    I.    THE COURT IS NOT BOUND TO ACCEPT AS TRUE PLAINTIFF'S
           CONCLUSORY AND FORMULAIC ALLEGATIONS................................4
10

11   II.   THE AIDING AND ABETTING CLAIM AGAINST TRIREME, QUATTRO,
           AND QTV SHOULD BE DISMISSED...............................................................5

12         A.    To State a Claim for Aiding and Abetting, Plaintiff Must Sufficiently Plead
                 Actual Knowledge and Direct Participation or an Inherently Wrongful Act..........6
13
           B.    Plaintiff Has Failed to Plead an Actionable Aiding and Abetting Claim...............7
14

15   III.  PLAINTIFF HAS FAILED TO STATE A CLAIM FOR UNFAIR
           COMPETITION UNDER BUSINESS AND PROFESSIONS CODE SECTION
           17200 ......................................................................................................9
16
           A.    Plaintiff Lacks Standing under the UCL. .........................................................10
17
           B.    Plaintiff Fails to Sufficiently Allege a Cause of Action under the UCL...............11
18
           C.    Plaintiff Has Not Pleaded Any Basis for Injunctive or Restitutionary Relief.......13
19

20   CONCLUSION ................................................................................................14

21

22

23

24

25

26

27

28

D<small>EFS.</small>' N<small>OTICE OF</small> M<small>OTION</small> & M<small>OTION TO</small> D<small>ISMISS</small>
A<small>NGIOSCORE'S</small> F<small>OURTH</small> A<small>MENDED</small> C<small>OMPLAINT</small>
C<small>ASE</small> N<small>O.</small>:  4:12-<small>CV</small>-3393-YGR

i

1

# TABLE OF AUTHORITIES

<u>Page(s)</u>

2

3

## CASES

4

*Allstate Ins. Co. v. Countrywide Fin. Corp.*,
   824 F. Supp. 2d 1164 (C.D. Cal. 2011) ...............................................................8

5

6

*Anderson v. Airco, Inc.*,
   No. Civ.A. 02C-12-091HDR, 2004 WL 2827887
   (Del. Super. Nov. 30, 2004) ................................................................................8

7

8

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .........................................................................................4, 5

9

*Austin B. v. Escondido Union Sch. Dist.*,
   149 Cal. App. 4th 860 (Cal. Ct. App. 2007) .......................................................7

10

11

*Bank of the W. v. Superior Court*,
   833 P.2d 545 (Cal. 1992) ..................................................................................13

12

*Beard Research, Inc. v. Kates*,
   8 A.3d 573 (Del. Ch. 2010) ................................................................................9

13

14

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ..................................................................................4, 5, 13

15

*Cal. Int'l Chem. Co. v. Neptune Pool Serv., Inc.*,
   770 F. Supp. 1530 (M.D. Fla. 1991) ..................................................................8

16

17

*Carlton Invs. v. TLC Beatrice Int'l Holdings, Inc.*,
   No. 13950, 1995 WL 694397 (Del. Ch. Nov. 21, 1995) .....................................6

18

*Casault v. Fed. Nat'l Mortg. Ass'n*,
   915 F. Supp. 2d 1113 (C.D. Cal. 2012) ............................................................13

19

20

*Casey v. U.S. Bank Nat'l Ass'n*,
   26 Cal. Rptr. 3d 401 (Cal. Ct. App. 2005) ......................................................6, 7

21

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
   973 P.2d 527 (Cal. 1999) ..................................................................................11

22

23

*Davis v. Ford Motor Credit Co.*,
   101 Cal. Rptr. 3d 697 (Cal. Ct. App. 2009) ......................................................11

24

*E.H. Renzel Co. v. Warehousemen's Union I.L.A. 38-44*,
   106 P.2d 1 (Cal. 1940) ......................................................................................14

25

26

*Gregory v. Albertson's, Inc.*,
   128 Cal. Rptr. 2d 389 (Cal. Ct. App. 2002) ................................................11, 13

27

*Hashimoto v. Clark*,
   264 B.R. 585 (D. Ariz. 2001) .............................................................................6

28

*Hayes v. Gross,*
  982 F.2d 104 (3d Cir. 1992).............................................................................................4

*Husser v. State,*
  608 A.2d 728 (Del. 1992)................................................................................................8

*In re Shoe-Town, Inc. Stockholders Litig.,*
  No. 9483, 1990 WL 13475 (Del. Ch. Feb. 12, 1990).....................................................6

*James v. City of Wilkes-Barre,*
  700 F.3d 675 (3d Cir. 2012)............................................................................................4

*Kearns v. Ford Motor Co.,*
  567 F.3d 1120 (9th Cir. 2009)...................................................................................11, 12

*Khoury v. Maly's of Cal., Inc.,*
  17 Cal. Rptr. 2d 708 (Cal. Ct. App. 1993) ...................................................................11

*Korea Supply Co. v. Lockheed Martin Corp.,*
  63 P.3d 937 (Cal. 2003) ...........................................................................................10, 13

*Malpiede v. Townson,*
  780 A.2d 1075 (Del. 2001)...........................................................................................6, 7

*McGowan v. Ferro,*
  No. CIV.A. 18672-NC, 2002 WL 77712 (Del. Ch. Jan. 11, 2002)...................................6

*Mullin v. Sussex Cnty.,*
  861 F. Supp. 2d 411 (D. Del. 2012) ...............................................................................5

*Reinhardt v. Gemini Motor Transp.,*
  869 F. Supp. 2d 1158 (E.D. Cal. 2012)......................................................................10, 13

*Rockridge Trust v. Wells Fargo, N.A.,*
  985 F. Supp. 2d 1110 (N.D. Cal. 2013) .......................................................................10

*Somers v. Apple, Inc.,*
  729 F.3d 953 (9th Cir. 2013)...........................................................................................5

*Steiner v. Verizon Wireless,*
  No. 2:13-cv-1457-JAM-KJN PS, 2014 WL 202741
  (E.D. Cal. Jan. 17, 2014) .............................................................................................14

*Sybersound Records, Inc. v. UAV Corp.,*
  517 F.3d 1137 (9th Cir. 2008).......................................................................................11

*Travelers Prop. Cas. Co. of Am. v. Centex Homes,*
  Nos. 12-0371-SC, 13-0088-SC, 2013 WL 4528956
  (N.D. Cal. Aug. 26, 2013) ...........................................................................................12

*Watson Labs., Inc. v. Rhone-Poulenc Rorer, Inc.,*
  178 F. Supp. 2d 1099 (C.D. Cal. 2001).......................................................................12

**STATUTES**

Cal. Bus. & Prof. Code § 17200..................................................................................*passim*

1

Cal. Bus. & Prof. Code § 17204 ..................................................................................10

2

**RULES**

3

Fed. R. Civ. P. 8 .........................................................................................................1, 5

Fed. R. Civ. P. 9(b).............................................................................................1, 3, 5, 12

Fed. R. Civ. P. 12(b)(6)..............................................................................................1, 4

Fed. R. Civ. P. 15(a)....................................................................................................14

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on September 9, 2014, or as soon thereafter as the matter may be heard, before the Honorable Yvonne Gonzalez Rogers of the United States District Court for the Northern District of California, Oakland Courthouse, Courtroom 1, Fourth Floor, 1301 Clay Street, Oakland, California, 94612, defendants TriReme Medical, LLC ("TriReme"), Eitan Konstantino, Quattro Vascular Ltd ("Quattro"), and QT Vascular Ltd. ("QTV") (collectively "Defendants") will, and hereby do, move to dismiss AngioScore, Inc.'s ("AngioScore") Fourth Amended Complaint ("Complaint" or "FAC") pursuant to the Federal Rules of Civil Procedure 8, 9(b), and 12(b)(6).  This motion is supported by the Memorandum of Points and Authorities, the [Proposed] Order, the arguments of counsel, and any other matters properly before the Court.

**STATEMENT OF ISSUES**

1.      Whether the Complaint adequately pleads particularized facts to state a claim that defendants TriReme, Quattro, and QTV aided and abetted the alleged breach of fiduciary duty by Dr. Konstantino.

2.      Whether the Complaint pleads any basis to confer standing upon plaintiff to assert a claim against Defendants for alleged violations of the California Business and Professional Code Section 17200 ("UCL"), and whether the Complaint adequately pleads particularized facts sufficient to plead a violation by Defendants of the UCL.

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

On July 7, 2014, Defendants moved to dismiss certain claims in plaintiff's Third Amended Complaint ("TAC").  Dkt. No. 230.  In that motion, Defendants demonstrated that AngioScore's state law aiding and abetting claim against the corporate defendants and its claim for violations of Section 17200 of the Business & Professions Code (Cal. Bus. & Prof. Code § 17200 *et seq.*; the "UCL") against all Defendants fail as a matter of law and should be dismissed. Tacitly conceding the merits of those arguments, AngioScore chose not to file an opposition and instead filed a Fourth Amended Complaint ("Complaint" or "FAC") on July 15.  Dkt. No. 244. Plaintiff's latest complaint – now its fifth in this action – fails to correct the deficiencies of its prior one.  Instead, plaintiff made a few superficial changes, many of them still on "information and belief," but all still lacking any plausible basis to support its claims.  Plaintiff's attempt to cloak the flaws in its state law claims merely exposes the paucity of those claims.

Plaintiff alleges that by employing Dr. Konstantino and assisting in the development and marketing of the "Chocolate" catheter technology, TriReme, Quattro, and QTV aided and abetted Dr. Konstantino's alleged breach of duty to AngioScore.  FAC ¶¶ 66-69.  The latest Complaint still fails to support those allegations with facts sufficient to meet the pleading requirements of an aiding and abetting claim.  Plaintiff has added new allegations that Quattro was founded in 2009 under a different name prior to its incorporation in March 2010 (in contrast, plaintiff still concedes that QTV was not in existence at the time of the alleged primary breach), but there are still no facts pleaded that reflect that Quattro or the other corporate defendants either had actual knowledge and directly participated in any breach of fiduciary duty by Dr. Konstantino or otherwise engaged in inherently wrongful conduct in assisting Dr. Konstantino in the alleged breach.

Perhaps recognizing the difficulty of alleging any *facts* that could support an aiding and abetting claim against the corporate defendants, plaintiff has tried a new argument.  The new Complaint has now added allegations that "individuality and separateness" do not exist between Dr. Konstantino and that Dr. Konstantino's "complete control and dominance" of the corporate

1   defendants renders their separateness a mere "fiction." *Id.* ¶¶ 47-48.  These new allegations,

2   however, are fatal to plaintiff's aiding and abetting claim because it is axiomatic that an

3   individual (or entity as the case here) cannot aid and abet himself.

4          Plaintiff also failed to cure the previously identified defects in its claim for alleged

5   violations of the UCL.  As a threshold matter, plaintiff lacks standing to bring a claim under the

6   UCL because it has not alleged a cognizable injury.  Additionally, the Complaint does not

7   identify (let alone allege) an underlying violation (which is required to bring UCL claims based

8   on "unlawful" or "unfair" acts), or a likelihood of public harm (which is required to bring UCL

9   claims based on fraud).  Moreover, the allegations of purported "fraudulent" conduct by

10  Defendants do not satisfy Rule 9(b)'s heightened pleading standard.  Plaintiff's UCL claim fails

11  for the additional reason that plaintiff has not sufficiently pled irreparable harm to support

12  injunctive relief, and non-restitutionary disgorgement (which plaintiff seeks) is not allowed

13  under the UCL.  Because plaintiff still lacks any plausible basis to seek restitution or injunctive

14  relief, AngioScore has no right of recovery.

15         For these reasons, and for reasons explained in more detail below, the aiding and abetting

16  claim and the UCL claim should be dismissed.  Having now chosen to amend its complaint *twice*

17  as a matter of course (in addition to the two times in which it sought and was granted leave to

18  amend), the Court should deny plaintiff any further attempts to amend its claims.  The motion to

19  dismiss should be granted with prejudice.

20              **RELEVANT BACKGROUND AND THE FOURTH AMENDED COMPLAINT**

21         Dr. Eitan Konstantino founded AngioScore, is an inventor on all of the original patents

22  that cover its commercial products, and served as its president when it incorporated in 2003.  *Id.*

23  ¶ 16.  Dr. Konstantino's family invested the initial funds to start AngioScore.  In 2005, Dr.

24  Konstantino founded TriReme, and thereafter he served as its Chief Executive Officer until July

25  2013. *Id.* ¶ 5.  At the time he founded TriReme, Dr. Konstantino informed AngioScore of his

26  plans for TriReme, and received an explicit waiver from AngioScore to proceed.  *Id.* ¶ 20.  Dr.

27  Konstantino offered AngioScore the opportunity to invest in TriReme, but AngioScore rejected

28

1   the offer.  *Id.*  By April 2007, Dr. Konstantino's employment with AngioScore had ended, but he

2   remained on the AngioScore Board until February 2010.  *Id.* ¶¶ 17-18.

3        Two months after Dr. Konstantino left the AngioScore Board, on April 6, 2010, the '119

4   patent asserted in this litigation issued.  *Id.* ¶ 15.  As of today, there is still no commercial device

5   that is based on the '119 patent.

6        Until the Court granted leave to AngioScore to amend its complaint to assert new state

7   law claims, the only cause of action that was pending by AngioScore was for infringement of the

8   '119 patent, and the only remedies it had sought was a reasonable royalty and injunction related

9   to the sales of the Chocolate device since December 2011.  Quattro was incorporated as a

10  research and development startup in March 2010.  *Id.* ¶ 29.  In July 2013, QTV was formed as a

11  holding company and acquired the shares of TriReme and Quattro (which is also after Dr.

12  Konstantino is alleged to have usurped a corporate opportunity).  *Id.* ¶ 36.  In late April 2014,

13  QTV listed on the Singaporean stock exchange and became a publicly traded company with Dr.

14  Konstantino as its CEO.  *Id.* ¶¶ 5, 45.  The following week – and more than four years after Dr.

15  Konstantino left the AngioScore Board – AngioScore strategically filed for leave to add new

16  claims against Dr. Konstantino as well as TriReme, Quattro, and QTV.  The Fourth Amended

17  Complaint demands from QTV all of its proceeds from the IPO, presumably in an effort to

18  intimidate potential shareholders and otherwise harm the business and reputation of QTV.

19                                   **ARGUMENT**

20  **I.    THE COURT IS NOT BOUND TO ACCEPT AS TRUE PLAINTIFF'S
           CONCLUSORY AND FORMULAIC ALLEGATIONS**

21

22        To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must provide "more than labels

23  and conclusions, and a formulaic recitation of the elements of a cause of action[ ] ."  *Bell Atl.*

24  *Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678-79

25  (2009).  Rather, a plaintiff must make factual allegations sufficient "to raise a right to relief

26  above the speculative level."  *Twombly*, 550 U.S. at 555.

27        In deciding a Rule 12(b)(6) motion, the Court must accept as true well-pleaded factual

28  allegations.  *Hayes v. Gross*, 982 F.2d 104, 105-06 (3d Cir. 1992).  The Court is not, however,

1  required to accept as true conclusory assertions.  *James v. City of Wilkes-Barre*, 700 F.3d 675,

2  679 (3d Cir. 2012) (citing *Iqbal*, 556 U.S. at 678-79; *Twombly*, 550 U.S. at 555-57).  To survive

3  a motion to dismiss, a complaint must allege factual content that allows the court to draw a

4  reasonable inference that the defendant is liable for the misconduct alleged.  *See Somers v.*

5  *Apple, Inc.*, 729 F.3d 953, 959-60 (9th Cir. 2013); *Mullin v. Sussex Cnty.*, 861 F. Supp. 2d 411,

6  418 (D. Del. 2012) (the Court need only accept reasonable inferences that logically flow from

7  the face of the pleading, and not every strained interpretation of the allegations).

8       As explained in more detail below, the allegations in support of plaintiff's claims for

9  aiding and abetting and violations of the UCL do not meet the requirements of Rule 8.  In

10  addition, to the extent plaintiff's claims for aiding and abetting and unfair competition are found

11  to sound in fraud, plaintiff also must comply with Federal Rule of Civil Procedure 9(b) and its

12  requirement to plead allegations of fraud with particularity.  *See, e.g.*, FAC ¶¶ 66-79.

13       Plaintiff may try to argue that its pleading burden should be relaxed because the Court

14  has allowed it to take further targeted discovery on the claims it was given leave to add.  The law

15  is clear, however, that even under Rule 8, plaintiff's pleading burden is not excused by any lack

16  of discovery (despite having nearly two years to conduct discovery in this action).  Instead, the

17  Supreme Court has held that "the question presented by a motion to dismiss a complaint for

18  insufficient pleadings does not turn on the controls placed upon the discovery process."  *Iqbal*,

19  556 U.S. at 684-85 (citing *Twombly*, 550 U.S. at 559).  In other words, a plaintiff cannot make

20  allegations and claims that are unsupported by sufficient *facts* (rather than conclusions), and

21  thereby defeat a motion to dismiss with the hope that discovery may ultimately provide some

22  basis for its speculation.  As demonstrated below, plaintiff's allegations in support of its aiding

23  and abetting and UCL claims do not satisfy these pleading requirements.

24  **II.    THE AIDING AND ABETTING CLAIM AGAINST TRIREME, QUATTRO, AND**
**      QTV SHOULD BE DISMISSED**

25

26       Plaintiff's aiding and abetting claim still suffers from the same fatal defects Defendants

27  identified in their last motion to dismiss.  As a preliminary matter, plaintiff cannot establish an

28  underlying primary breach of fiduciary duty by Dr. Konstantino because no such breach

occurred.  But even assuming *arguendo* for purposes of this motion that plaintiff has sufficiently

pleaded a primary breach by Dr. Konstantino, the aiding and abetting claim still fails.  Under

controlling Delaware or California law, plaintiff's bald assertions that TriReme, Quattro, and

QTV "substantially assisted" and "ratif[ied]" Dr. Konstantino's alleged breach of his fiduciary

duty remain insufficient to state a claim.  *Cf.* FAC ¶¶ 67-69.

**A.  To State a Claim for Aiding and Abetting, Plaintiff Must Sufficiently Plead Actual Knowledge and Direct Participation or an Inherently Wrongful Act.**

A plaintiff seeking to hold a defendant liable for aiding and abetting a breach of fiduciary

duty of another defendant must allege particularized facts demonstrating that the alleged aiding

party knowingly and intentionally was complicit in the alleged primary breach.  *See Malpiede v.*

*Townson*, 780 A.2d 1075, 1096 (Del. 2001) ("A third party may be liable for aiding and abetting

a breach of a corporate fiduciary's duty to the stockholders if the third party 'knowingly

participates' in the breach." (citation omitted)); *In re Shoe-Town, Inc. Stockholders Litig.*, No.

9483, 1990 WL 13475, at *8 (Del. Ch. Feb. 12, 1990) (court may only draw reasonable

inferences of any conscious wrongdoing when they are based on well-pleaded and particularized

*factual* allegations).

A third party may not be held liable for aiding and abetting unless (1) that party had

*actual knowledge* of a breach and consciously and directly participated in it, or (2) that party's

assistance, when considered separately, constitutes an inherently wrongful act.  *See, e.g.*,

*Hashimoto v. Clark*, 264 B.R. 585, 508-09 (D. Ariz. 2001) (applying California law); *McGowan*

*v. Ferro*, No. CIV.A. 18672-NC, 2002 WL 77712, at *2-3 (Del. Ch. Jan. 11, 2002) (dismissing

aiding and abetting claims where complaint failed to allege that payments made by non-fiduciary

acquirer to directors were so "'grossly excessive'" as to be inherently wrongful (citation

omitted)); *Carlton Invs. v. TLC Beatrice Int'l Holdings, Inc.*, No. 13950, 1995 WL 694397, at

*15 n.11 (Del. Ch. Nov. 21, 1995) (aiding and abetting claim dismissed where plaintiffs failed to

allege that the non-fiduciary knowingly participated in an inherently wrongful breach of duty);

*Casey v. U.S. Bank Nat'l Ass'n*, 26 Cal. Rptr. 3d 401, 406 (Cal. Ct. App. 2005) (aiding and

abetting "'necessarily requires a defendant to reach a conscious decision to participate in tortious

1    activity for the purpose of assisting another in performing a wrongful act'" (emphasis omitted)

2    (citation omitted)).  Mere knowledge of a breach and failure to prevent it does not constitute

3    aiding and abetting.  *Austin B. v. Escondido Union Sch. Dist.*, 149 Cal. App. 4th 860, 879 (Cal.

4    Ct. App. 2007).

5         **B.     Plaintiff Has Failed to Plead an Actionable Aiding and Abetting Claim.**

6         Instead of amending its complaint to add facts demonstrating the requisite knowledge and

7    participation existed, plaintiff continues to rely upon conclusory, unsupported assertions.  *See,*

8    *e.g.*, FAC ¶¶ 43-44 (asserting that corporate defendants knew or should have known of the

9    alleged breach due to their conscious and direct participation, without citing any particularized

10   facts to support the allegation).  Nothing of substance has been added from the prior complaint.

11   Instead, plaintiff has simply added a few extra paragraphs describing in the same conclusory

12   fashion the business activities of TriReme, Quattro, and QTV, without adding the allegations

13   necessary to demonstrate actual knowledge and direct participation in the breach, or an

14   inherently wrongful act.  *See, e.g., id.* ¶¶ 23, 26-27. Indeed, the cosmetic nature of plaintiff's

15   amendments is never more apparent than in paragraph 43 of the FAC.  This paragraph is

16   otherwise substantively identical to paragraph 37 in the Third Amended Complaint, except now

17   plaintiff has simply deleted the words "on information and belief."  *Compare* TAC ¶ 37, *with*

18   FAC ¶ 43.  Simply removing "information and belief" does not make the claim any more

19   particularized. Notably, plaintiff failed to replace that phrase with any particularized facts

20   showing that TriReme, Quattro, and QTV were actually aware of the alleged breach by Dr.

21   Konstantino, let alone that they participated in that breach, as is required under the law to support

22   an aiding and abetting claim.  *See, e.g., Malpiede*, 780 A.2d at 1097.

23        Nor do plaintiffs allege that TriReme, Quattro, or QTV separately breached an

24   independent duty or otherwise committed an inherently wrongful act.  It is not enough to merely

25   allege, as plaintiffs do, that TriReme and Quattro were "in concert with" Dr. Konstantino and

26   "substantially assisted" in the alleged breach by, for example, *employing* Dr. Konstantino,

27   *facilitating* the assignment of the Chocolate technology to Quattro, *sponsoring* a study, and

28   *cooperating* with Quattro in raising funds for development and marketing of Chocolate.  FAC ¶¶

23, 26, 67.  These allegations simply describe what any company would provide in the way of support to its CEO.  They are, therefore, insufficient to support an inference of any inherently wrongful acts on the part of TriReme, Quattro, or QTV.

Even if, for argument purposes, these allegations were deemed sufficient (and they are not), plaintiff has added other allegations, presumably in an attempt to redress the deficiencies of its prior complaint, that are actually fatal to its aiding and abetting claim.  Plaintiff now alleges that at all relevant times, there existed "a unity of interest between Konstantino and TriReme, Quattro, and/or QT such that any individuality and separateness between them have ceased to exist."  *Id.* ¶ 47.  Plaintiff alleges that "any individuality or separateness" between Dr. Konstantino and the corporate defendants does not exist, *id.* ¶ 48.  If these allegations are accepted as true, plaintiff cannot legally plead an aiding and abetting claim against the corporate defendants.

Under Delaware law, "[l]iability for aiding and abetting requires proof of three elements: underlying tortious conduct, knowledge, and *substantial assistance*."  *Anderson v. Airco, Inc.*, No. Civ.A 02C-12-091HDR, 2004 WL 2827887, at *4 (Del. Super. Nov. 30, 2004) (emphasis added).  If, as plaintiff alleges, Dr. Konstantino, TriReme, Quattro, and QTV are for all intents and purposes one-in-the-same and their separateness is a "fiction" (FAC ¶ 48), plaintiff's aiding and abetting claim necessarily fails because an individual "cannot be an aider and abettor of himself."  *Allstate Ins. Co. v. Countrywide Fin. Corp.*, 824 F. Supp. 2d 1164, 1189-90 (C.D. Cal. 2011) (dismissing aiding and abetting claim against defendant alleged to have been the primary violator because "it is impossible to aid and abet oneself"); *Cal. Int'l Chem. Co. v. Neptune Pool Serv., Inc.*, 770 F. Supp. 1530, 1535 (M.D. Fla. 1991) (same); *Husser v. State*, 608 A.2d 728 n.1 (Del. 1992) ("'one cannot be an aider and abettor of himself in the commission of an offense'" (citation omitted)) (citing cases).  In short, because plaintiff now alleges that individuality between TriReme, Quattro, QTV, and Dr. Konstantino never existed, the corporate entities cannot be held liable for aiding and abetting Dr. Konstantino.

In addition to the defects discussed above, plaintiff's aiding and abetting claim against QTV suffers from a separate and distinct flaw:  QTV was not even in *existence* at the time of the

1  alleged breach by Dr. Konstantino.  Under controlling Delaware law, there can be no liability for

2  aiding and abetting where an entity did not exist at the time and was thus unlikely to have

3  participated in the breach.  *See, e.g.*, *Beard Research, Inc. v. Kates*, 8 A.3d 573, 605 (Del. Ch.

4  2010) (no liability for aiding and abetting breach of fiduciary duties where company did not exist

5  at time of breaches and was thus unlikely to have played any role in them).

6       Here, QTV did not become functional in any capacity until years later.  *See* FAC ¶ 36

7  (July 11, 2013 press release announcing formation of QTV).  It therefore could not have

8  knowingly participated in the breach.  Lacking any logical or factual basis to allege that QTV

9  actually assisted in any alleged breach by Dr. Konstantino prior to QTV's existence, plaintiff

10  again resorts to alleging (in conclusory fashion) that QTV's purported acquisition of TriReme

11  "constitutes ratification of the substantial assistance provided by TriReme and Quattro" to Dr.

12  Konstantino.  *Id.* ¶ 69.  Plaintiff has also added an allegation that QTV has "assumed the

13  liabilities" of TriReme and Quattro.  *See id.*  "Assumption of liability," however, is a separate

14  legal theory that plaintiff has not alleged, and it has nothing whatsoever to do with whether an

15  entity can be liable for aiding and abetting.  This new allegation against QTV still does not come

16  close to pleading actual knowledge and direct participation in the breach by QTV, or an

17  inherently wrongful act by QTV.

18       Plaintiff's real motivation in naming QTV in this lawsuit shortly after its April 2014 IPO

19  (*id.* ¶ 45) is apparently to damage its reputation and disrupt its business.  But whatever plaintiff's

20  motivations may be, plaintiff is not excused from pleading particularized factual allegations of

21  conscious and deliberate wrongdoing, or an inherently wrongful act.  Because the Fourth

22  Amended Complaint contains no such allegations, the aiding and abetting claim should be

23  dismissed.

24  **III.   PLAINTIFF HAS FAILED TO STATE A CLAIM FOR UNFAIR COMPETITION
         UNDER BUSINESS AND PROFESSIONS CODE SECTION 17200**

25

26       Like its predecessor, the Fourth Amended Complaint does not contain any allegations to

27  confer standing on plaintiff to bring a UCL claim against Defendants.  The Complaint does not

28  allege a sufficient economic injury, as courts have required to have standing to assert a UCL

1    claim.  Even if plaintiff could overcome this threshold defect, the Complaint still does not

2    sufficiently allege with the requisite specificity the purportedly "unlawful," "unfair," or

3    "fraudulent" acts, each of which has its own separate pleading standard.  The UCL is also

4    defective because it fails to sufficiently allege a basis for injunctive relief, and unlawfully seeks

5    disgorgement of Defendant's profits.

6      **A.  Plaintiff Lacks Standing under the UCL.**

7      A claim may only be brought under the UCL by a person who has suffered injury in fact

8    and has lost legally protected money or property as a result of unfair competition.  Cal. Bus. &

9    Prof. Code § 17204.  Courts have repeatedly dismissed UCL claims that did not meet this

10   fundamental requirement.  *See Rockridge Trust v. Wells Fargo, N.A.*, 985 F. Supp. 2d 1110,

11   1166-67 (N.D. Cal. 2013) (applying California law and dismissing UCL claim where plaintiff

12   had not sufficiently alleged an actual injury); *Reinhardt v. Gemini Motor Transp.*, 869 F. Supp.

13   2d 1158, 1173-74 (E.D. Cal. 2012) (dismissing UCL claims for failure to allege actual injury

14   where employees sought disgorgement of profits).

15     Once again, plaintiff has failed to allege any actual economic injury caused by

16   Defendants' alleged unfairly competitive acts (whatever those may be).  Plaintiff alleges that it

17   "lost business," FAC ¶ 79, but there are no facts pleaded in the Complaint to make this allegation

18   plausible.  Rather than plead such facts, plaintiff seeks as a remedy "disgorgement" or

19   "restitution" in the amount of *Defendants' revenues, earnings, and profits* in light of "ill-gotten

20   gains obtained by Defendants." *Id.* ¶ 78.  "Lost business," however, is insufficient to establish

21   standing under the UCL, especially where plaintiff seeks as a remedy Defendants' purported ill-

22   gotten gains rather than plaintiff's actual financial losses.  *See, e.g., Reinhardt*, 869 F. Supp. 2d

23   at 1174-75 ("restitutionary" disgorgement focuses on plaintiff's loss and may be obtained under

24   the UCL, but "non-restitutionary" disgorgement of profits focuses on the defendant's gain and is

25   not permitted); *Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 947-49 (Cal. 2003)

26   (compensation for "lost business opportunity" is a measure of damages based on mere

27   expectancy, not restitution of actual property lost, and thus not permitted under the UCL).  For

28   this reason alone, the UCL claim should be dismissed in its entirety.

1

**B.      Plaintiff Fails to Sufficiently Allege a Cause of Action under the UCL.**

2       The UCL prohibits "unfair competition," which is defined in the statute to include "any

3  unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.  Each

4  prohibited type of act (unlawful, unfair, or fraudulent) constitutes a separate and distinct theory

5  of liability and must be sufficiently and independently pled.  *Kearns v. Ford Motor Co.*, 567 F.3d

6  1120, 1127 (9th Cir. 2009) (applying California law).  A plaintiff may not in shotgun fashion

7  avoid specifying under which part of the UCL it asserts a violation.  Instead, a UCL claim must

8  be dismissed if the "complaint identifies no particular section of the statutory scheme which was

9  violated and fails to describe with any *reasonable particularity the facts* supporting violation."

10  *Khoury v. Maly's of Cal., Inc.*, 17 Cal. Rptr. 2d 708, 712 (Cal. Ct. App. 1993) (emphasis added)

11  (citing cases); *Gregory v. Albertson's, Inc.*, 128 Cal. Rptr. 2d 389, 396-97 (Cal. Ct. App. 2002).

12       The statute "borrows" violations of other laws and treats those violations, when

13  committed pursuant to unlawful business practices, as independently actionable.  *Gregory*, 128

14  Cal. Rptr. 2d at 392-93; *Davis v. Ford Motor Credit Co.*, 101 Cal. Rptr. 3d 697, 701, 706 (Cal.

15  Ct. App. 2009).  Thus, a claim based on "unlawful" business acts must state which specific

16  underlying statute has been violated and allege facts sufficient to show a "business practice" that

17  is at the same time a violation of that law.  *See, e.g.*, *Reinhardt*, 869 F. Supp. 2d at 1174

18  (directing plaintiffs to list under their UCL claims the specific statutes they contend form the

19  basis of "unlawful" UCL conduct); *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137,

20  1151-52 (9th Cir. 2008) (challenged conduct must be both a business practice and a violation of

21  an underlying law to be "unlawful" under UCL).

22       Likewise, a claim based on "unfair" competition must be tethered to specific

23  constitutional, statutory, or regulatory provisions.  *See Gregory*, 128 Cal. Rptr. 2d at 394-95.  In

24  order to be deemed "unfair" under the UCL, the conduct at issue must threaten "an incipient

25  violation of an antitrust law" or violation of the "spirit or policy of those laws."  *Sybersound*

26  *Records*, 517 F.3d at 1151-52; *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 973 P.2d 527,

27  543-44 (Cal. 1999).

28

1      Claims brought under the UCL for "fraud" must also satisfy heightened pleading

2  requirements of Rule 9(b) of the Federal Rules of Civil Procedure.  *Kearns*, 567 F.3d at 1127.

3  Notably, however, the "fraudulent" prong of the UCL may not be used by one competitor to sue

4  another for deceptive practices.  Such practices are not actionable under the UCL "absent a

5  showing that the public, rather than merely the plaintiff, is likely to be deceived."  *Watson Labs.,*

6  *Inc. v. Rhone-Poulenc Rorer, Inc.*, 178 F. Supp. 2d 1099, 1120-21 (C.D. Cal. 2001) ("The Court

7  has identified no case under the 'fraudulent' prong of § 17200 allowing one competitor to

8  proceed against another on the basis that the defendant deceived him.") (applying California

9  law).

10      The FAC does not satisfy these pleading requirements.  As a threshold matter, nowhere in

11  the Complaint is there any allegation, let alone the specific factual allegations required under

12  Rule 9(b), that any alleged fraudulent conduct by Defendants is likely to cause harm to the

13  public.  Instead, plaintiff attempts to use the UCL to hold its purported competitor accountable

14  for an alleged deception on *plaintiff* (not the public). The UCL, however, was not enacted to

15  redress such alleged grievances.  *See, e.g.*, *Watson Labs.*, 178 F. Supp. 2d at 1120-21; *Travelers*

16  *Prop. Cas. Co. of Am. v. Centex Homes*, Nos. 12-0371-SC, 13-0088-SC, 2013 WL 4528956, at

17  *5 (N.D. Cal. Aug. 26, 2013) (dismissing with prejudice UCL claim for fraudulent practices

18  where plaintiff failed to allege defendant "made any statements to the public, let alone engaged

19  in an action which was likely to deceive members of the public").

20      Even if plaintiff could overcome this hurdle, plaintiff once again has failed to identify the

21  statutory provisions upon which it is basing its UCL claim and has also failed to identify or

22  allege elements of the underlying violations on which "unlawful," "unfair," and "fraudulent"

23  claims might be based.  The Complaint fails to identify any underlying business practice of

24  Defendants that is also a legal violation, as would be required to bring a claim for "unlawful"

25  competition.  Plaintiff also fails to allege any violation of an antitrust law or policy, as would be

26  required to bring a claim for "unfair" competition.  Admittedly, the words "unlawful," "unfair,"

27  and "fraudulent" appear with much greater frequency in the FAC than its predecessor.  *Compare*

28

1   TAC ¶ 65, *with* FAC ¶¶ 75-77.  But no amount of repetition of these words is enough to state a

2   claim.

3        Other than repeating these words, the other "additions" to plaintiff's UCL claim are

4   nothing new at all, and indeed are substantively identical to what plaintiff had alleged previously.

5   Plaintiff  repeats the same allegations used to support its patent infringement claim, i.e., that Dr.

6   Konstantino "denied" developing products that would compete with AngioScore and failed to

7   "disclose the Chocolate business opportunity" to AngioScore, and simply alleges that those same

8   acts were "unfair, unlawful, and fraudulent" under Section 17200.  *Compare* FAC ¶¶ 75, 76, *with*

9   *id.* ¶¶ 32, 56.  But simply re-alleging and incorporating every prior allegation in the pleading is

10  not sufficient to state a UCL claim.  *See Casault v. Fed. Nat'l Mortg. Ass'n*, 915 F. Supp. 2d

11  1113, 1128-29 (C.D. Cal. 2012) (citing *Twombly*, 550 U.S. at 555) (dismissing claim for "unfair"

12  practices under the UCL where plaintiff's complaint provided "little more than a recitation of the

13  elements necessary to state a claim under the unfair prong of a UCL claim").  The UCL requires

14  that each individual basis for liability be separately and sufficiently pleaded.  *See, e.g., Gregory*,

15  128 Cal. Rptr. 2d at 396-97; *Casault*, 915 F. Supp. 2d at 1128-29  (analyzing "unfair,"

16  "unlawful," and "fraudulent" claims separately).   Each of these failures provides an independent

17  basis for dismissing the UCL claims.

18        **C.     Plaintiff Has Not Pleaded Any Basis for Injunctive or Restitutionary Relief.**

19        The UCL claim should also be dismissed for the separate and independent reason that

20  Plaintiff has not sufficiently alleged a basis for injunctive or restitutionary relief, the only relief

21  available under the UCL.  *See Korea Supply*, 63 P.3d at 948 (private litigants cannot recover

22  damages under the UCL); *Bank of the W. v. Superior Court*, 833 P.2d 545, 552-53 (Cal. 1992)

23  (damages not available under the UCL); *Reinhardt*, 985 F. Supp. 2d at 1174-75 (non-

24  restitutionary disgorgement not available under the UCL). The complaint fails to allege facts

25  sufficient to show an irreparable injury that would occur if an injunction does not issue.  Instead,

26  plaintiff again merely cites "lost business" as its potential harm, without any factual allegations

27  to support that claim.  For reasons stated above, "lost business" is not a cognizable injury at all

28  under the UCL, and even if it was, "[a] mere allegation that such injury will result is not

1    sufficient" for injunctive relief. *E.H. Renzel Co. v. Warehousemen's Union I.L.A. 38-44*, 106

2    P.2d 1, 3 (Cal. 1940).  Nor is "disgorgement" of defendant's profits a remedy under the UCL, for

3    reasons stated above.  Here, plaintiff has not pled any basis that would reflect entitlement to

4    either an injunction or restitution, nor could it under the facts alleged in the Complaint.

5    Plaintiff's claims are simply not the type to which the UCL and its limited remedies apply.

6                                         **CONCLUSION**

7            For the foregoing reasons, Defendants respectfully request that their motion to dismiss be

8    granted and with prejudice.  Although Rule 15(a) permits a single amendment of a pleading as a

9    matter of course, plaintiff has now amended its complaint *twice* as a matter of course (in addition

10   to the two occasions it sought leave to amend).[1]  Moreover, plaintiff has also had a second bite at

11   the apple with respect to the claims at issue, and still it has not alleged any new plausible basis

12   for stating an aiding and abetting claim or UCL violation.  Because plaintiff has now had

13   multiple opportunities to amend its complaint including the claims at issue in this motion,

14   Defendants respectfully request that plaintiff's aiding and abetting and UCL claims be dismissed

15   with prejudice.

16                                                   Respectfully submitted,

17   Dated:  July 31, 2014                           WILSON SONSINI GOODRICH & ROSATI
                                                     Professional Corporation
18

19
                                                     By:  /s/ Dylan J. Liddiard
20                                                        DYLAN J. LIDDIARD
                                                         dliddiard@wsgr.com
21
                                                     Attorneys for Defendants
22                                                   TriReme Medical, LLC (f/k/a TriReme
                                                     Medical, Inc.), Eitan Konstantino, Quattro
23                                                   Vascular PTE Ltd., and QT Vascular Ltd. (f/k/a
                                                     QT Vascular Ptd. Ltd.)
24

25   _____

26   [1] Plaintiff filed its First Amended Complaint as a matter of course on Aug. 16, 2012.  Dkt.
     No. 12; *see Steiner v. Verizon Wireless*, No. 2:13-cv-1457-JAM-KJN PS, 2014 WL 202741, at
27   *2 (E.D. Cal. Jan. 17, 2014) (striking fourth amended complaint filed in response to defendant's
     motion to dismiss third amended complaint because plaintiff had already amended complaint
     once as a matter of course and did not obtain leave).
28