James W. Geriak (State Bar No. 32871)
jgeriak@sheppardmullin.com
Steven M. Hanle (State Bar No. 168876)
shanle@sheppardmullin.com
André De La Cruz (State Bar No. 245175)
adelacruz@sheppardmullin.com
SHEPPARD, MULLIN, RICHTER &
HAMPTON LLP
650 Town Center Drive, 4th Floor
Costa Mesa, California 92626-1993
Telephone: (714) 513-5100
Facsimile: (714) 513-5130

Robert P. Feldman (State Bar No. 69602)
bobfeldman@quinnemanuel.com
Diane M. Doolittle (State Bar No. 142046)
dianedoolittle@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN LLP
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone: (650) 801-5000
Facsimile: (650) 801-5100

Peter J. Armenio (*Admitted Pro Hac Vice*)
peterarmenio@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN LLP
55 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Mark Farber (*Admitted Pro Hac Vice*)
mark@farberllc.com
FARBER LLC
4 Corporate Drive, Suite 287
Shelton, Connecticut 06484
Telephone: (203) 258-1305

Attorneys for Plaintiff
ANGIOSCORE, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| ANGIOSCORE, INC.,<br><br>Plaintiff,<br><br>v.<br><br>TRIREME MEDICAL, LLC (f/k/a TRIREME MEDICAL, INC.), EITAN KONSTANTINO, QUATTRO VASCULAR PTE LTD., and QT VASCULAR LTD. (f/k/a QT VASCULAR PTE. LTD.),<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIMS. | Case No. 4:12-CV-3393-YGR<br><br>**ANGIOSCORE, INC.'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS ANGIOSCORE'S FOURTH AMENDED COMPLAINT**<br><br>Date: Sept. 9, 2014<br>Time: 2:00 pm<br>Dept: Hon. Yvonne Gonzalez Rogers<br><br>Trial Date: April 13, 2015 |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................................. 1

II. ANGIOSCORE HAS STATED A CLAIM FOR AIDING AND ABETTING BREACH OF FIDUCIARY DUTY .................................................................................. 2

    A. The Complaint Contains Detailed Factual Allegations of Aiding and Abetting ........................................................................................................... 2

    B. The Factual Allegations of Aiding and Abetting Satisfy Each Element of the Claim ................................................................................................................ 3

        1. "Knowledge" ................................................................................................. 4

        2. "Substantial Assistance" by the Corporate Defendants ............................... 5

        3. QT Vascular Pte. Ltd. .................................................................................. 6

        4. Alternative Pleading .................................................................................... 6

III. ANGIOSCORE HAS STATED A CLAIM FOR VIOLATION OF BUSINESS AND PROFESSIONS CODE SECTION 17200 ................................................................. 8

    A. AngioScore Has Standing Under Section 17200 ........................................................ 8

    B. AngioScore Sufficiently Alleges a Cause of Action Under § 17200 ...................... 10

    C. AngioScore Has Adequately Pled a Claim for an Unlawful or Unfair Business Act or Practice ........................................................................................ 10

    D. Angioscore Has Pled A Basis For Injunctive And Restitutionary Relief ............... 13

IV. LIBERAL AMENDMENTS ARE FREELY GRANTED ................................................ 14

V. CONCLUSION ................................................................................................................. 15

# TABLE OF AUTHORITIES

**Page**

### Cases

*Allergan, Inc. v. Athena Cosmetics, Inc.*,
   640 F.3d 1377 (Fed. Cir. 2011) ............................................................................................. 9

*BizCloud, Inc. v. Computer Sciences Corp.*,
   No. 14-cv-00162, 2014 WL 1724762 (N.D. Cal. Apr. 29, 2014) ......................................... 8

*Cel-Tech Commc'n v. Los Angeles Cellular Tel. Co.*,
   20 Cal. 4th 163 (Cal. 1999) ................................................................................................. 11

*Casey v. U.S. Bank Nat'l Ass'n*,
   127 Cal. App. 4th 1138 (Cal. App. 4th Dist. 2005) ........................................................ 3, 6

*City of S. Pasadena v. Dep't of Transp.*,
   29 Cal. App. 4th 1280 (Cal. Ct. App. 3d Dist. 1994) ........................................................ 13

*Coleman v. Standard Life Insurance Co.*, ,
   288 F. Supp. 2d 1116 (E.D. Cal. 2003) ............................................................................... 7

*Comm. On Children's Television, Inc. v. Gen. Foods Corp.*,
   35 Cal. 3d 197 (1983) ......................................................................................................... 12

*Durell v. Sharp Healthcare*,
   183 Cal. App. 4th 1350 (2010) ........................................................................................... 11

*Eminence Capital, LLC v Aspeon, Inc.*,
   316 F.3d 1048 (9th Cir. 2003) ............................................................................................ 14

*Gregory v. Albertson's, Inc.*,
   104 Cal. App. 4th 845 (1st Dist. 2003) .............................................................................. 11

*Guth v. Loft*,
   23 Del. Ch. 255 (Del. 1939) ................................................................................... 2, 10, 11

*Haas Automation, Inc. v. Denny*,
   2:12-CV-04779 CBM, 2014 WL 2966989 (C.D. Cal. July 1, 2014) ................................. 13

*Holman v. Indiana*,
   211 F.3d 399 (7th Cir. 2000) ............................................................................................... 8

*Kaisky v. Nike, Inc.*,
   27 Cal. 4th 939 (2002) ....................................................................................................... 11

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ........................................................................................... 10

*Korean Philadelphia Presbyterian Church v. California Presbytery*,
   77 Cal. App. 4th 1069 (Cal. Ct. App. 2d Dist. 2000) ........................................................ 13

*Kwikset Corp. v. Superior Court*,
    51 Cal. 4th 310 (Cal. 2011) .................................................................................................. 8, 9

*Law Offices of Mathew Higbee v. Expungement Assistance Servs.*,
    214 Cal. App. 4th 544 (2013) .................................................................................................. 9

*Madrid v. Perot Sys. Corp.*,
    130 Cal. App. 4th 440 (Cal. Ct. App. 3d Dist. 2005 ............................................................. 13

*Malpiede v. Townson*,
    780 A.2d 1075 (Del. 2001) ...................................................................................................... 3

*McCalden v. California Library Association*,
    955 F.2d 1214 (9th Cir. 1990) ................................................................................................. 7

*Neilson v. Union Bank of Cal., N.A.*,
    290 F. Supp. 2d 1101 (C.D. Cal. 2003) .................................................................................. 4

*PeopleBrowsr, Inc. v. Twitter, Inc.*,
    No. 12-cv-6120, 2013 WL 843032 (N.D. Cal. Mar. 6, 2013) ............................................... 11

*People v. Duz-Mor Diagnostic Laboratory, Inc.*,
    68 Cal. App. 4th 654 (1998) .................................................................................................. 11

*People v. McKale*,
    25 Cal. 3d 626, 635 (Cal. 1979) ............................................................................................ 12

*Peterson v. McGladrey & Pullen LLP*,
    676 F.3d 594 (7th Cir. 2012) ................................................................................................... 7

*Reinhardt v. Gemini Motor Transport*,
    869 F. Supp. 2d 1158 ............................................................................................................. 11

*Schnall v. Hertz Corp.*,
    78 Cal. App. 4th 1144 (Cal. Ct. App. 1st Dist. 2000) ........................................................... 12

*Sonoma Diamond Corp. v. Superior Court*,
    83 Cal. App. 4th 523 (Cal. Ct. App. 5th Dist. 2000) ............................................................... 7

*Sybersound Records, Inc. v. UAV Corp.*,
    517 F.3d 1137 (9th Cir. 2008) ............................................................................................... 11

**<u>Statutes</u>**

8 Del. C. Sections 102 and 141(e) ................................................................................................ 2, 11

Cal. Bus. & Prof. Code § 17200 ................................................................. 1, 8, 10, 11, 12, 13, 14

Cal. Bus. & Prof. Code § 17203 ..................................................................................................... 9

Cal. Bus. & Prof. Code § 17204 ..................................................................................................... 8

California Corporations Code §309 ...................................................................................... 2, 10, 11

Fed. R. Civ. P. Rule 8(d)(2) ................................................................................................1, 7

Fed. R. Civ. P. Rule 8(d)(3) ...................................................................................................7

Fed. R. Civ. P. Rule 9(b) ...............................................................................................1, 4, 12

Fed. R. Civ. P. Rule 12(b)(6) .........................................................................................10, 12

Fed. R. Civ. P. Rule 15(a) .....................................................................................................14

Fed. R. Civ. P. 15(a)(2) .........................................................................................................14

Fed. R. Civ. P. Rule 18(a) ................................................................................................1, 7

## I. INTRODUCTION

By this motion, Defendants make yet another attempt to challenge AngioScore's claims for aiding and abetting breach of fiduciary duty and unfair competition, which only recently came to light in discovery relating to United States Patent No. 7,691,119 ("the '119 patent"). As discovery revealed, during the time he owed a fiduciary duty to AngioScore as a member of its Board of Directors, individual Defendant Eitan Konstantino was covertly developing a competing product in concert with the corporate Defendants. As before, Defendants' arguments to prevent AngioScore from pursuing its claims are unpersuasive and infirm, and this Court should deny their motion.

With regard to the Fourth Cause of Action asserted against the corporate Defendants for aiding and abetting Dr. Konstantino's breach of fiduciary duty, Defendants argue that AngioScore's allegations are conclusory, formulaic and not sufficiently particularized. They are wrong. The Fourth Amended Complaint contains dozens of factual allegations specifying the nature of the breach and the manner and nature of the corporate Defendants' knowledge and participation in it. Although the Court need only accept well-pleaded facts that allow it to draw a reasonable inference that Defendants are liable, the Fourth Amended Complaint also passes muster under the pleading standards of Rule 9(b).

Defendants also misapprehend the rules allowing for alternative pleading, asserting that AngioScore's allegations under the theory of alter ego dooms its aiding and abetting claim. Under Rules 8(d)(2) and 18(a), AngioScore is entitled to pursue the corporate Defendants under an alter ego theory and under principles of secondary liability as aiders and abettors. AngioScore's allegations with respect to its alter ego theory do not preclude it from making aiding and abetting allegations as an alternative theory of liability.

With regard to the Fifth Cause of Action for violation of California Business and Professions Code Section 17200, it is plain that AngioScore has standing by reason of its injury in fact and entitlement to an injunction as a result of Defendants' illegal acts. It has also satisfied the pleading standards by alleging facts demonstrating that Defendants' acts are both unlawful and unfair. The act of surreptitiously usurping AngioScore's corporate opportunity violates at least the

1  following laws:  Section 309 of the California Corporations Code, 8 Del. C. Sections 102 and
2  141(e) and the court-made law as set forth in *Guth v. Loft*, 23 Del. Ch. 255 (Del. 1939).  The same
3  acts qualify as "unfair," a prong that is defined by the courts "liberally" and need not violate
4  antitrust laws, contrary to Defendants' assertion.  Indeed, contrary to Defendants' suggestion that
5  this claim can be easily disposed of by this motion, numerous cases hold that claims of violations
6  under the UCL under the "unfair" prong are ill-suited for dismissal at the pleading stage in light
7  of the fact-intensive nature of the inquiry.  Finally, the FAC plainly states which laws form the
8  predicate for the "unlawful" prong and which acts form the predicate for the "unfair" prong.
9  Pleadings are designed to put defendants on notice of the nature of the claims, and the allegations
10 of the FAC achieve far more than that.

For the foregoing reasons, AngioScore respectfully asks this Court to deny Defendants' motion to dismiss in its entirety.

## II. ANGIOSCORE HAS STATED A CLAIM FOR AIDING AND ABETTING BREACH OF FIDUCIARY DUTY

Defendants do not seek to dismiss AngioScore's claims for breach of fiduciary duty asserted in the Fourth Amended Complaint's ("FAC") Second and Third Causes of Action, and therefore tacitly concede that AngioScore's allegations are sufficient to plead a breach of fiduciary duty.  They nevertheless seek to dismiss AngioScore's Fourth Cause of Action based on TriReme, Quattro, and QT's aiding and abetting that breach of fiduciary duty.  Defendants have no basis for moving to dismiss this claim as the allegations in the FAC more than satisfy the applicable pleading standards.

### A. The Complaint Contains Detailed Factual Allegations of Aiding and Abetting

AngioScore's FAC sets forth in detail how Dr. Konstantino breached his fiduciary duties as a member of AngioScore's Board of Directors, and how TriReme, Quattro, and QT aided and abetted that breach.  Specifically, the FAC alleges that, while serving on AngioScore's Board of Directors, Dr. Konstantino secretly conceived of and developed an angioplasty balloon catheter device later commercialized under the name "Chocolate."  (FAC ¶¶ 21-23; *see also id.* ¶¶ 25-26, 30, 32-36, 38-39, 75.)  Dr. Konstantino engaged in these covert development activities in concert

with two companies he founded – TriReme and Quattro, which eventually merged to form QT. (*Id.* ¶¶ 22-23, 32-36, 75.)  Dr. Konstantino – as well as the companies he founded – knew the Chocolate device would directly compete on the market with AngioScore's principal product, the AngioSculpt® device.  (*Id.* ¶¶ 22-23, 32, 43-44, 46.)

As a board member of AngioScore, Dr. Konstantino had a duty to disclose his development of the Chocolate device to AngioScore, but he never did so.  (*Id.* ¶¶ 27, 32, 43.)  He chose instead to affirmatively misrepresent to AngioScore that he had "not developed any products . . . that compete[] with AngioScore products," and then continued to help TriReme, Quattro, and QT bring the Chocolate product to the market after resigning from AngioScore's board.  (*Id.* ¶¶ 23, 27, 33-35, 38-40; *see also id.* ¶ 75.)  Dr. Konstantino's failure to disclose the Chocolate device and offer it to AngioScore as a business opportunity constituted a breach of his fiduciary duty to AngioScore.  (*See, e.g.*, *id.* ¶¶ 55-65.)  Although Dr. Konstantino's companies knew about his concurrent service on AngioScore's board and his failure to disclose the Chocolate device, these companies nevertheless assisted in the development and commercialization of that device – thereby aiding and abetting the breach of Dr. Konstantino's fiduciary duty to AngioScore.  (*Id.* ¶¶ 43-44.)

### B. The Factual Allegations of Aiding and Abetting Satisfy Each Element of the Claim

Aiding and abetting a breach of fiduciary duty occurs where the defendant "knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act. . . ."  *Casey v. U.S. Bank Nat'l Ass'n*, 127 Cal. App. 4th 1138, 1144 (Cal. App. 4th Dist. 2005); *see also Malpiede v. Townson*, 780 A.2d 1075, 1096 (Del. 2001).  Here, Defendants argue that AngioScore has failed to adequately plead that TriReme, Quattro, and QT "had actual knowledge" of Dr. Konstantino's breach and "directly participated" in that breach.  (Defendants' Motion to Dismiss ("MTD") at 6.)  But as set forth in detail below, AngioScore's allegations in the FAC are more than sufficient to support its claim for aiding and abetting breach of fiduciary duty.

### 1. "Knowledge"

In the first instance, Defendants have failed to cite any authority for the proposition that Rule 9(b)'s heightened pleading requirement applies to AngioScore's claim for aiding and abetting breach of fiduciary duty.  (MTD at 5.)  Even if it applies, Rule 9(b) explicitly states that allegations of "knowledge, and other conditions of the mind of a person may be averred generally."  Fed. R. Civ. P. 9(b); *see also Neilson v. Union Bank of Cal., N.A.*, 290 F.Supp. 2d 1101, 1119 (C.D. Cal. 2003).  Therefore, Defendants' assertion that AngioScore must plead "particularized facts" demonstrating knowledge of breach is incorrect.  Instead of particularized facts, the allegations need only include the "nature of the knowledge a defendant purportedly possessed."  *Neilson*, 290 F. Supp. at 1119.  The FAC easily meets and even exceeds this standard.

AngioScore's FAC pleads particularized facts that TriReme, Quattro, and QT were all aware of Dr. Konstantino's breach of fiduciary duty.  Indeed, the FAC alleges, upon information and belief, that Dr. Konstantino "is a founder of TriReme, Quattro, and QT," and that he "is the principal decision maker with regard to what products have been and will be manufactured and sold by TriReme, Quattro, and QT."  (FAC ¶¶ 7, 9.)  "Given Konstantino's relationship" to these companies, the FAC reasonably concludes that "TriReme, Quattro, and QT knew or should have known of Konstantino's service until February 2010 on AngioScore's Board of Directors."  (*Id.* ¶ 43.)  Furthermore, by virtue of their intent to participate in the angioplasty balloon catheter market, these companies similarly knew that the Chocolate device would directly compete with AngioScore's AngioSculpt® device and that Dr. Konstantino therefore had a duty to inform AngioScore of this business opportunity.  (*Id.* ¶¶ 22, 32, 43, 57, 62.)  As alleged in the FAC, these companies also knew that Dr. Konstantino did not disclose such information to AngioScore and therefore breached his fiduciary duty.  (*Id.* ¶¶ 43-44, 67-69.)

These allegations and others in the FAC are more than adequate to satisfy the Federal Rule of Civil Procedure's pleading requirements.  AngioScore's allegations give Defendants notice as to the "nature of the knowledge" they "purportedly possessed" – namely, knowledge of Dr. Konstantino's position on AngioScore's Board of Directors, his duty to disclose the Chocolate

device to AngioScore, and his failure to do so. Thus, AngioScore has properly pled actual knowledge.

### 2. "Substantial Assistance" by the Corporate Defendants

AngioScore also adequately pled that the corporate Defendants substantially assisted in Dr. Konstantino's breach of fiduciary duty. Among other things, the FAC highlights Dr. Konstantino's role in founding each of TriReme, Quattro, and QT. Relying on Dr. Konstantino's "early involvement with the creation, formation and operation" of these companies, the FAC alleges that these companies "each knowingly and intentionally were complicit in Konstantino's activities performed while he was a member of AngioScore's Board of Directors" and engaged in "conscious and direct participation in Konstantino's breach." (FAC ¶¶ 9, 44.)

Moreover, the FAC alleges at least six specific activities in which TriReme and Quattro participated while Dr. Konstantino was still serving on AngioScore's Board of Directors – namely, (1) drafting engineering drawings; (2) production and testing of Chocolate prototypes; (3) development of a business model, a development team, and partnerships for developing the Chocolate device; (4) performance of finite element analysis of the Chocolate design; (5) animal testing of a Chocolate prototype;[1] and (6) seeking financing for the development of the Chocolate device. (FAC ¶ 23; *see also id.* ¶¶ 22, 28, 32, 44.) Other portions of the FAC focus on the cooperation among Dr. Konstantino, TriReme, and Quattro in attempting to obtain patent protection for the device. (*Id.* ¶ 29.)

These allegations – taken as true as they must on a motion to dismiss – establish that Dr. Konstantino and the three companies he founded were all working together to develop and eventually commercialize a product that would compete with AngioScore's products without informing AngioScore. This is precisely the conduct that constitutes Dr. Konstantino's breach of

---

[1] The FAC describes the animal testing conducted by Dr. Konstantino, TriReme, and Quattro in detail, stating that on January 15, 2010, Dr. "Konstantino, Quattro, and TriReme conducted a study of the Chocolate balloon catheter in a porcine native vessel," (*i.e.*, in a live pig) at Stanford University and that Dr. Konstantino "attended the study on his own behalf and as a representative of Quattro and/or TriReme." (*Id.* ¶ 26.) The FAC goes on to state that this study listed "Quattro Vascular Pte Ltd" as its sponsor and was printed "on the joint letterhead of Quattro and TriReme." (*Id.*)

his fiduciary duty to AngioScore, and the FAC pleads with particularity that all defendants shared in that conduct.  AngioScore has gone above and beyond the minimal pleading standard for alleging "substantial assistance" in an aiding and abetting claim.[2]  AngioScore's particularized allegations exceed this minimum standard of pleading.

### 3. QT Vascular Pte. Ltd.

Defendants also seek dismissal of corporate Defendant QT Vascular Pte. Ltd. ("QT") on the grounds that "it was not even in existence" at the time of the alleged wrongdoing.  (MTD at 8.)  Again, Defendants misconstrue the allegations of the FAC and applicable law.  As announced in a press release issued July 11, 2013, QT was formed as a result of a "merger" between Defendants Trireme and Quattro, which were indisputably in existence at the time of the initial breach.  (FAC ¶ 36.)  Defendants fail to cite any cases where a successor-in-interest is absolved of liability for the companies that preceded it.  In any event, the other allegations of the FAC set forth separate and independent grounds for QT's liability, including the ongoing harm suffered by AngioScore by reason of Defendants' continued exploitation of AngioScore's corporate opportunity.  (*See e.g.,* FAC ¶ 36.)  Defendants' motion to dismiss QT thus fails.

### 4. Alternative Pleading

Defendants argue that allegations in the FAC describing a "unity of interest" among Defendants is "fatal" to AngioScore's aiding and abetting cause of action.  (MTD at 8 (citing FAC ¶¶ 47-48).)  But Defendants' argument is based on a misreading of AngioScore's FAC and a misunderstanding of the applicable law.

The FAC sets forth two alternative theories against TriReme, Quattro, and QT related to breach of fiduciary duty:  (1) an alter ego theory, and (2) an aiding and abetting theory. AngioScore's "unity of interest" allegations relate to its alter ego theory, and not its aiding and

---

[2] As evidenced in *Casey v. U.S. Bank Nat'l Ass'n*, 127 Cal. App. 4th 1138, 1145 (2005), the pleading standard is minimal for this element.  In *Casey*, the court rejected a challenge to the sufficiency of allegations of substantial assistance, stating that "common sense tells us that even 'ordinary business transactions' a bank performs for a customer can satisfy the substantial assistance element of an aiding and abetting claim if the bank actually knew those transactions were assisting the customer in committing a specific tort," reasoning that the crucial element in pleading aiding and abetting is knowledge.  *Id.*

abetting theory.  Rules 8(d)(2) and 18(a) of the Federal Rules of Civil Procedure expressly authorize such alternative pleadings, either in a single count or in separate ones.

More specifically, AngioScore seeks to hold the corporate Defendants liable under an alter ego theory in the Second and Third Causes of Action for breach of fiduciary duty.  These causes of action seek to hold TriReme, Quattro, and QT liable as primary violators in addition to Dr. Konstantino.  (FAC ¶¶ 55-65.)  To this end, the FAC alleges a "unity of interest" between Dr. Konstantino, on the one hand, and TriReme, Quattro, and QT, on the other hand, such that "any individuality and separateness" between them does not exist.  (*Id.* ¶¶ 47-48.)  *Sonoma Diamond Corp. v. Superior Court*, 83 Cal.App. 4th 523, 526 (Cal. Ct. App. 5th Dist. 2000) (stating that the first element of the alter ego doctrine is "such a unity of interest and ownership between the corporation and its equitable owner that the separate personalities of the corporation and the shareholder do not in reality exist").  These allegations are incorporated by reference into the Second and Third Causes of Action.  (FAC ¶¶ 55, 60.)  Moreover, the Second and Third Causes of Action go on to allege specific acts of the corporate Defendants and the harm that has resulted from those acts as further support for the application of an alter ego theory of liability.  (*Id.* ¶¶ 55-65.)

AngioScore's aiding and abetting theory in the Fourth Cause of Action is an alternative theory and is not based on any "unity of interest" among Defendants.  The Fourth Cause of Action ensures the corporate Defendants remain liable as aiders and abettors, even if an alter ego theory of liability ultimately does not prevail.  In other words, this theory would apply only to the extent that TriReme, Quattro, and QT do not share a "unity of interest" with Dr. Konstantino and are therefore not his alter egos.

Rules 8(d)(2) and 18(a) authorize the alternative pleading found in the FAC.  Rule 8(d)(3) states that a party may "state as many separate claims or defenses as it has, regardless of consistency."  *See* e.g. *McCalden v. California Library Association*, 955 F.2d 1214, 1219 (9th Cir. 1990); *see also Peterson v. McGladrey & Pullen LLP*, 676 F.3d 594, 597 (7th Cir. 2012).  A plaintiff also "need not use particular words to plead in the alternative" as long as "it can be reasonably inferred that this is what [he was] doing."  *Coleman v. Standard Life Insurance Co.*,


1  288 F.Supp. 2d 1116, 1120 (E.D. Cal. 2003) (citing *Holman v. Indiana*, 211 F.3d 399, 407 (7th

2  Cir. 2000)). The rules also make clear that alternative pleading may occur either in a single count

3  or in separate ones, as here.

4      Defendants offer no authority to suggest that alternative pleading is no longer allowed.

5  Indeed, because all of Defendants' cases fail to even address the question of alternative pleadings,

6  they are inapposite. Thus, AngioScore's allegations that a "unity of interest" exists among the

7  Defendants are far from fatal to its aiding and abetting claim. They are expressly authorized by

8  the rules.

9  **III.  ANGIOSCORE HAS STATED A CLAIM FOR VIOLATION OF BUSINESS AND PROFESSIONS CODE SECTION 17200**

10

11      Defendants next move to dismiss AngioScore's Fifth Cause of Action for unfair

12  competition under California's Business & Professions Code Section 17200 ("UCL") for (1) lack

13  of standing and (2) failure to state a claim upon which relief can be granted. Defendants also

14  contend that AngioScore has failed to sufficiently plead a basis for relief on its claim. As set forth

15  below, Defendants are wrong on all accounts.

16      **A.  AngioScore Has Standing Under Section 17200**

17      Defendants' argument that AngioScore lacks standing to assert an unfair competition claim

18  is contrary to settled law. All the UCL requires for standing is that the claimant be "a person who

19  has suffered injury in fact and has lost money or property as a result of the unfair competition."

20  Cal. Bus. & Prof. Code § 17204. AngioScore alleges that Defendants' Chocolate device directly

21  competes with its AngioSculpt® products, and that Defendants' undisclosed commercialization of

22  the Chocolate device has deprived AngioScore of corporate opportunities. (FAC ¶¶ 75-76). Lost

23  business opportunities, including future revenues, are classic economic injuries under the UCL.

24  *See, e.g., Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 885-86 (Cal. 2011) ("There are

25  innumerable ways in which economic injury from unfair competition may be shown. A plaintiff

26  may … have a present or future property interest diminished [or] be deprived of money or

27  property to which he or she has a cognizable claim…"); *see also BizCloud, Inc. v. Computer*

28

*Sciences Corp.*, No. 14-cv-00162, 2014 WL 1724762 at *3-4 (N.D. Cal. Apr. 29, 2014) (allegations of lost royalty payments sufficient to establish UCL standing).

The lone standing defect Defendants purport to identify is that AngioScore seeks disgorgement as a remedy. (MTD at 10 (citing FAC ¶ 78)). The California Supreme Court has held, however, that "ineligibility for restitution is not a basis for denying standing under section 17204." *Kwikset*, 51 Cal. 4th at 337. Furthermore, Defendants fail to acknowledge that AngioScore separately seeks an injunction (FAC ¶ 79), which would allow for relief from both present and future anticompetitive conduct. *See* Cal. Bus. & Prof. Code § 17203 ("Any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction."). AngioScore's standing to pursue an injunction, "the primary form of relief available under the UCL," is not dependant on the availability of restitution, "a mere ancillary form of relief." *Kwikset*, 51 Cal. 4th at 337.

In any case, AngioScore's request for disgorgement is based in economic injury to its business interests: AngioScore seeks to recover proceeds from the Corporate Defendants' aiding and abetting Konstantino's breach of fiduciary duty. (FAC ¶¶ 71-79.) These proceeds reflect the corporate opportunity AngioScore lost when the Defendants designed, developed and commercialized a competing device without disclosure to or authorization from AngioScore. (FAC ¶¶ 75-77.) Thus, AngioScore suffered an economic injury when Defendants capitalized upon the Chocolate device, and AngioScore has standing to pursue the ancillary relief of disgorgement. *See, e.g., Allergan, Inc. v. Athena Cosmetics, Inc.,* 640 F.3d 1377, 1382 (Fed. Cir. 2011) (reversing district court and finding standing where competitor sought an injunction and restitution, alleging that it had "lost sales, revenue, market share, and asset value" as a result of unfair business practices); *Law Offices of Mathew Higbee v. Expungement Assistance Servs.*, 214 Cal. App. 4th 544, 560 (2013) (plaintiff had standing to pursue UCL claim where he alleged "he had lost business" and "the value of his law firm had diminished" as a result of unlawful competition). Defendants' challenge to AngioScore's standing under the UCL must fail.

### B. AngioScore Sufficiently Alleges a Cause of Action Under § 17200

Defendants correctly note that Section 17200 is a multipronged statute and disjunctively makes each of unlawful, unfair or fraudulent business practices an independent basis for relief. It does not, however, require that each be "independently" pled in order for the pleading to survive attack by a motion under Rule 12(b)(6). Instead, the effect of the 9th Circuit holding upon which Defendants' solely rely, *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009), is just the opposite. *Kearns* held that pleadings can be, but need not always be, separately analyzed under the various prongs of the statute. In any event, *Kearns* has no application here because the court specifically found that, unlike here, the entire claim was grounded in fraud and, therefore, all claims made against the defendant had to be pled with particularity and did not require separate analysis. *Id.*

The plain language of the statute makes clear that the claim of unfair competition may be based upon any one of an "unfair, unlawful or fraudulent business act or practice." In substance, AngioScore's claim of unfair competition is grounded in its claims that Konstantino breached his fiduciary duty under California law (California Corporations Code, §309) and Delaware law (*Guth v. Loft*, 23 Del. Ch. 255 (Del. 1939)) as a member of its Board of Directors by not offering to it the corporate opportunity to acquire and commercialize the Chocolate device. This breach of fiduciary duty was aided and abetted by the Corporate Defendants in this action and in the aggregate these acts also constitute a violation of Section 17200. AngioScore maintains that its claim for relief under Section 17200, incorporating as it does the allegations relating to the second, third and fourth causes of action of the FAC satisfies the prongs of Section 17200 it has alleged, i.e., (i) an unfair business act or practice and (ii) an unlawful business act or practice.

### C. AngioScore Has Adequately Pled a Claim for an Unlawful or Unfair Business Act or Practice

AngioScore adequately alleges violation of the UCL under the two prongs of "unlawful" and "unfair" business act.

As Defendants must admit, under the "'unlawful' variety of unfair competition," the UCL "permits violations of other laws to be treated as unfair competition that is independently

1  actionable." *Kaisky v. Nike, Inc.*, 27 Cal.4th 939, 949 (2002). Virtually any law, be it federal,
2  state, or local, can serve as a predicate for an action under the UCL. *Durell v. Sharp Healthcare*,
3  183 Cal.App. 4th 1350, 1361 (2010). *Reinhardt v. Gemini Motor Transport*, 869 F.Supp. 2d 1158,
4  1173 (E.D. Cal. (2012). A violation of court-made law can also be the basis of a claim under
5  §17200. See *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137 (9th Cir. 2008).

6  AngioScore alleges Defendants have committed unlawful competition by breaching (or
7  aiding and abetting the breach of) the fiduciary duty under California law and Delaware law.
8  AngioScore identified California Corporations Code, §309, 8 Del. C. Sections 102 and 141(e) and
9  the holding in *Guth v Loft*, *supra*, as the predicates to its claims for breach of fiduciary duty under
10 California and Delaware law. Thus, Defendants' argument that AngioScore's claim of an
11 <u>unlawful</u> business act or practice under Section 17200 does not identify a statutory predicate must
12 fail.

13 Notably, with respect to the <u>unfair</u> prong, the Defendants fail to mention that *Cel-Tech*
14 recognized that not only antitrust violations but any action that "significantly threatens or harms
15 competition" could be unfair. *Cel-Tech Commc'n v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163
16 (Cal. 1999). The "significantly threatens" language is flexible: "a violation of the unfair prong
17 may be based on conduct that "significantly threatens or harms competition," regardless of
18 whether it represents an actual or incipient violation of an antitrust law. *PeopleBrowsr, Inc. v.*
19 *Twitter, Inc*., No. 12-cv-6120, 2013 WL 843032 at *4 (N.D. Cal. Mar. 6, 2013). More recent
20 cases have also clarified that a practice not proscribed by statute or court-made law is nevertheless
21 "unfair" if it offends an established public policy or is immoral, unethical, oppressive,
22 unscrupulous or substantially injurious to consumers. *Gregory v. Albertson's, Inc.,* 104 Cal.
23 App.4th 845 (1st Dist. 2003) (citing *Cel-Tech* and *People v. Duz-Mor Diagnostic Laboratory, Inc.,*
24 68 Cal. App.4th 654 (1998)).

25 Whether a claim under the <u>unfair</u> competition prong must be tethered to a statute or
26 judicially made law, the law remains clear that AngioScore's claim under Section 17200 is
27 predicated on breach of fiduciary duty, an act proscribed by both California and Delaware law.
28 Without question, the acts described in the FAC are immoral, unethical, oppressive, and

unscrupulous. They also violate the spirit of antitrust laws, threaten competition, and violate the fundamental rules of honesty and fair dealing, by relying on the disloyal actions of a corporate director to provide a competing entity with a business opportunity that should have been presented to AngioScore first. Defendants have unfairly profited and competed at its competitor AngioScore's expense.

In their motion, Defendants also ignore (and fail to present to the Court) settled law that dismissal of an alleged violations of the UCL under the "unfairness" prong at the pleadings stage is disfavored. *See e.g.*, *Schnall v. Hertz Corp.,* 78 Cal. App. 4th 1144, 1167 (Cal. Ct. App. 1st Dist. 2000) (Unlike "unlawfulness," "unfairness" is an equitable concept that cannot be mechanistically determined under the relatively rigid legal rules applicable to the sustaining or overruling of a demurrer). In *People v. McKale,* 25 Cal. 3d 626, 635 (Cal. 1979), the court observed, "[w]hat constitutes "unfair competition" ... under any given set of circumstances is a question of fact." *See, also, Comm. On Children's Television, Inc. v. Gen. Foods Corp.*, 35 Cal. 3d 197, 213-14 (1983).

Defendants' position that all of AngioScore's allegations are subject to the heightened pleading standard of Rule 9(b) is flat wrong. It provides no authority for the proposition that UCL claims based upon the unfair or unlawful prongs must meet such a test. In any event, AngioScore has set forth detailed and particularized facts upon which to base its UCL claims. (*See e.g.* FAC ¶56, 57, 61, 62.)

Finally, the allegations of the Third, Fourth and Fifth Causes of Action clearly tie together the predicate breaches and the complementary actions of the Corporate Defendants that constitute their role in participating in and aiding and abetting the unfair and unlawful business acts and practices under Section 17200. These acts, i.e., pursuit of the corporate opportunity represented by the Chocolate Device, the raising of funds to develop and market and the development and marketing of the device are all spelled out in the FAC and it further alleges that their cooperation was done with the knowledge of the breach of fiduciary duty by Konstantino. Clearly these elements, which must be taken to be true when attacked under Rule 12(b)(6), constitute unfair and unlawful competition under the statute.

**D.      Angioscore Has Pled A Basis For Injunctive And Restitutionary Relief**

Defendants seek dismissal of AngioScore's UCL claim on the grounds that AngioScore has failed to allege irreparable harm and cognizable injury.  But Defendants' arguments are based upon erroneous legal standards and thus fail.

First, Defendants claim AngioScore must allege sufficient facts to demonstrate the "irreparable harm" AngioScore asserts in its FAC.  (*See* FAC *¶78, 79.*)  Notably, Defendants cite to no authority supporting this requirement.  Nor can they.  Although the "irreparable harm" standard applies to some Federal laws, it does not apply to California's UCL statute.  Instead, under the UCL, courts may order permanent injunctions "as may be necessary to *prevent* the use or employment by any person of any practice which constitutes unfair competition...." *Madrid v. Perot Sys. Corp.*, 130 Cal. App. 4th 440, 463 (Cal. Ct. App. 3d Dist. 2005) (emphasis in original). An injunction "must be supported by actual evidence that there is a *realistic prospect* that the party enjoined intends to engage in the prohibited activity." *Korean Philadelphia Presbyterian Church v. California Presbytery,* 77 Cal. App. 4th 1069, 1084 (Cal. Ct. App. 2d Dist. 2000) (emphasis added).  It is this *realistic prospect* of future harm standard, not the federal "irreparable harm" standard, that must be established for grant of injunction under the UCL.

*Haas Automation, Inc. v. Denny*, 2:12-CV-04779 CBM, 2014 WL 2966989 (C.D. Cal. July 1, 2014) confirms the point. In *Haas,* plaintiff petitioned for injunction under both Federal trademark infringement claims and UCL state law claims. The court analyzed the differences between the federal and state standard for injunction. The court found that under federal law, "actual irreparable harm must be demonstrated to obtain a permanent injunction in a trademark infringement action" *Id.*  The court then made the explicit finding that "[p]laintiff's evidence does not support a finding of irreparable harm" and rejected the federal ground for injunction. *Id.* Despite the clear finding that there was no "irreparable harm," the court granted plaintiff's injunction under UCL state law grounds. The court explained that the standard for injunction under California law requires only that "the plaintiff must prove (1) the elements of a cause of action involving the wrongful act sought to be enjoined and (2) the grounds for equitable relief, such as, inadequacy of the remedy at law." *Id.* (citing *City of S. Pasadena v. Dep't of Transp.,* 29

-13-      Case No. 4:12-CV-3393-YGR

Cal. App. 4th 1280 (Cal. Ct. App. 3d Dist. 1994).  Having already proven the cause of action, plaintiff was only required to make "[A] showing of threatened future harm or continuing violation is required" *Id.* (internal citations omitted).  The court found that plaintiff satisfied this standard of showing and granted the injunction.

Here, AngioScore has sufficiently alleged facts under this standard. For example, at paragraph 78 of its FAC, AngioScore alleges that "(b)y reason of these acts [referring to acts describe in prior allegations], AngioScore has been and is suffering permanent and irreparable injury, including but not limited to, lost business. AngioScore will suffer continuing damage and irreparable injury unless Defendants are enjoined from continuing their sales of the Chocolate device."  This continuing damage is just one example of threatened future harm alleged and also illustrates the continuing nature of the violation.  Either is sufficient to satisfy the enjoinment standard.

Defendants separate claims that "disgorgement" of defendant's profits is not a remedy under the UCL merely repeats claims already rebutted by section III.A of this brief.

Accordingly, for all the reasons above, AngioScore is entitled to pursue the causes of actions and seek the remedies it requests under Section 17200.

## IV.     LIBERAL AMENDMENTS ARE FREELY GRANTED

Defendants criticize AngioScore for amending the Complaint, and request that the Court stop AngioScore from amending again in the future.  (MTD at 4, 14.)  Because the resolution of this motion to dismiss will be the first time that the Court has evaluated AngioScore's state law claims, should dismissal be granted, it should be with leave to amend.  Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). The Ninth Circuit has held that absent prejudice, undue delay, bad faith, dilatory motive, or repeated failure to cure pleading deficiencies, "there exists a presumption under Rule 15(a) in favor of leave to amend." *Eminence Capital, LLC v Aspeon, Inc.,* 316 F.3d 1048, 1051 (9th Cir. 2003) (reversing district court dismissal with prejudice).

## V. CONCLUSION

For the foregoing reasons, AngioScore respectfully requests that this Court deny Defendants' Motion to Dismiss AngioScore's Fourth Amended Complaint.

Dated: August 8, 2014

Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN LLP

By: */s/James W. Geriak*
James W. Geriak

Counsel for Plaintiff
ANGIOSCORE, INC.