PiperJaffray.

800 Nicollet Mall, Suite 1000 Minneapolis, MN 55402-7036
612 303-6000

Piper Jaffray & Co. Since 1895. Member SIPC and NYSE.

November 19, 2014

Hon. Jacqueline Scott Corley
San Francisco Courthouse
Courtroom F - 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

Re:   **AngioScore, Inc. v. TriReme Medical, Inc., et al.**, Case No. CV 12-3393-YGR Response of Non-Party Piper Jaffray & Co. to Defendant Konstantino's Discovery Letter Brief

Dear Judge Corley:

Non-party Piper Jaffray & Co. (*"Piper Jaffray"*) submits this response to Defendant Konstantino's letter brief seeking to compel the production of documents pursuant to a subpoena served on Piper Jaffray on October 23, 2014 ("the *"Subpoena"*) requesting broad categories of sensitive and proprietary documents by October 31, six business days after service. Piper Jaffray, an investment bank, is a nonparty to this action. It has no connection to Plaintiff AngioScore, Inc. (*"AngioScore"*); it had no involvement with the underlying facts giving rise to this lawsuit. It appears that Piper Jaffrey is being subpoenaed because it served as financial advisor to The Spectranetics Corporation (*"Spectranetics"*) in connection with its June 2014 acquisition of AngioScore, years after the alleged wrongdoing.

As an initial matter, although Mr. Carmack and I have conferred a number of times in an attempt to resolve Piper Jaffray's objections to the subpoena, at no time did I tell Mr. Carmack that Piper Jaffray "could produce documents in response to the subpoena within two days." Rather, I told Mr. Carmack that Piper Jaffray could produce within two days the fairness opinion and related board book that it delivered to the Board of Directors of Spectranetics, as those were the only documents that were readily available and could be produced in the short time for compliance. However, as I made clear to Mr. Carmack, this is a very small subset of the documents requested by the subpoena. To the extent that Mr. Carmack's letter brief suggests that Piper Jaffray would have been (or currently is) in a position to produce within two days all documents potentially responsive to the subpoena, that is not correct.

Piper Jaffray is an investment bank that is regularly engaged in the business of providing capital markets and strategic advisory services to its corporate clients. In the ordinary course of providing such services, Piper Jaffray regularly receives confidential information from clients and regularly provides its clients with confidential analyses and opinions that are based, at least in part, on confidential

information received from its clients. With respect to the matter at hand, Piper Jaffray acted as financial advisor to Spectranetics in connection with its June 2014 acquisition of AngioScore, and rendered a fairness opinion to the Board of Directors of Spectranetics. Neither the fairness opinion nor the analyses on which the fairness opinion were based were required to be publicly filed by Spectranetics and in fact, were not made public. Accordingly, Piper Jaffray has significant concerns regarding the confidential treatment of any documents that it may be required to produce in this matter, which include its own work product that it has not shared outside of the firm, even with its client.

In the course of conducting its work for Spectranetics in 2014, Piper Jaffray did not value the current lawsuit against Konstantino. Nor did it seek to value the profits that may have been lost by AngioScore or the alleged ill-gotten gains by Konstantino of sales from the "Chocolate" balloon angioplasty device that appears central to the dispute. Piper Jaffrey also did not separately value any specific intellectual property of AngioScore, including U.S. Patent No. 7,691,119. Thus, nothing contained in the fairness opinion delivered by Piper Jaffray and the valuation analyses underlying Piper Jaffray's opinion highlight or even identify this patent, the lawsuit, or the damages to which AngioScore may be entitled.

Konstantino's motion to compel ignores the fact that the issues in this litigation–as set forth in AngioScore's Fourth Amended Complaint–are confined to claims of patent infringement, breach of fiduciary duty and unfair competition against Konstantino and his associated companies, TriReme, Quattro, and QT Vascular as a result of their development of a balloon catheter that competes with the balloon catheter product sold by AngioScore in 2009 and 2010. These issues are separate and distinct from the work performed by Piper Jaffray in the course of its financial advisory work for Spectranetics--the focus of which was to assist Spectranetics in valuing AngioScore as an operating entity, based on projected revenue, gross margin and other projected operating metrics over the next several years, *not* to separately value any specific intellectual property or other assets of AngioScore. Accordingly, it is difficult to understand how any valuation analysis performed by Piper Jaffray in the course of delivering a fairness opinion to Spectranetics could possibly be relevant to a damages calculation by an expert in the context of this litigation. And it is *impossible* to understand the assertion made by Mr. Cormack that Piper Jaffray's good-faith objections to his subpoena, served on Piper Jaffray on the eve of discovery cut-off (with a return date of 6 business days following service) in a case that has been pending since June of 2012 has somehow prejudiced Konstantino's ability to timely produce the report of his damages expert.

Importantly, Konstantino's letter also fails to identify why it seeks financial information about AngioScore from Piper Jaffrey, a third party. The letter does not claim that it has been unable to obtain the financial information that it seeks about AngioScore's business directly from AngioScore. Although I do not have personal knowledge of the information that has been exchanged between the parties, I am informed that party discovery has been exhaustive and AngioScore has produced

voluminous information, including sales, sales forecasts, and operating margins to Konstantino.

Konstantino's letter nowhere analyzes how the production requests set forth in the Subpoena are relevant to the issues in the litigation; it asserts only conclusory statements of relevancy. Similarly, there are only conclusory statements that the production requests set forth in the Subpoena, despite not being subject to any specific time period and despite not expressly identifying any specific documents (except for the fairness opinion) are "narrow" in scope and that the requested documents are "readily identifiable." They are not.

The Subpoena is directed to a nonparty with no interest in this litigation. In view of this context and the reasons set forth above, Piper Jaffrey respectfully requests that the Court deny Konstantino's request to compel production from Piper Jaffray.

Because Piper Jaffray is not able to execute electronic filings, I have requested counsel for the parties to file this letter on my behalf.

Very truly yours,

James M. Martin
Managing Director and Chief Counsel
Investment Banking and Capital Markets