UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGIOSCORE, INC.,<br><br>        Plaintiff,<br><br>    v.<br><br>TRIREME MEDICAL, INC., et al.,<br><br>        Defendants. | Case No. 12-cv-03393-YGR   (JSC)<br><br>**ORDER RE: WRITTEN DISCOVERY DISPUTES**<br><br>Re: Dkt. Nos. 398, 400, 401, 402, 403 & 405 |

    Plaintiff AngioScore, Inc. asserts claims for patent infringement and violations of state law against Defendants TriReme Medical, LLC, Eitan Konstantino, Quattro Vascular Pte Ltd., and QT Vascular Pte. Ltd.  Now pending before the Court are six discovery disputes regarding the parties' written discovery responses.  (Dkt. Nos. 398, 400, 401, 402, 403 & 405.)  Having considered the parties' briefs and having had the benefit of oral argument on December 15, 2014, the Court rules as follows.

**LEGAL STANDARD**

The Federal Rules of Civil Procedure provide that parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). In a motion to compel, the moving party bears the burden of showing why the other party's responses are inadequate or their objections unjustified. *See Williams v. Cate*, No. 09–0468, 2011 WL 6217378 at *1 (E.D. Cal. Dec.14, 2011)(the moving party "bears the burden of informing the Court ... for each disputed response, why Defendant's objection is not justified.... Plaintiff may not simply assert that he has served discovery responses, that he is dissatisfied, and that he wants an order compelling further responses."). "Once the moving party establishes that the information requested is within the scope of permissible discovery, the burden shifts to the party opposing discovery. An opposing party can meet its burden by demonstrating that the information is being sought to delay bringing the case to trial, to embarrass or harass, is irrelevant or privileged, or that the person seeking discovery fails to show need for the information." *Khalilpour v. CELLCO P–ship*, No. 09–02712, 2010 WL 1267749, at *1 (N.D. Cal. Apr. 1, 2010) (internal quotation marks and citations omitted).

**DISCUSSION**

**A. Privilege Log Disputes**

When a party withholds information otherwise discoverable by claiming that the information is privileged, the party must describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim. *See* Fed. R. Civ. P. 26(b)(5). The Ninth Circuit has held that a party meets its burden of demonstrating the applicability of the attorney-client privilege by submitting a log that identifies (a) the attorney and client involved, (b) the nature of the document, (c) all persons or entities shown on the document to have received or sent the document, (d) all persons or entities known to have been furnished the document or informed of its substance, and (e) the date the document was generated, prepared, or dated. *See In re Grand Jury Investigation*, 974 F.2d 1068, 1071 (9th Cir. 1992) (listing requirements). If a party provides a privilege log which meets these requirements, it satisfies its

obligation to make a prima facie showing that the privilege applies. *Id*.

**1. Plaintiff's Privilege Logs (Dkt. No. 401)**

Defendants contend that (1) Plaintiff has improperly claimed attorney-client privilege for 12 documents for which Defendant Dr. Konstantino was either the author or recipient, and (2) Plaintiff's privilege logs are deficient with respect to their description of documents, fail to identify the attorney recipient or author, and the logs list documents which were provided to third-parties thus undermining the claim of privilege. At oral argument, the parties informed the Court that they had resolved the first issue.

With respect to Defendants' general objections to the privilege logs, Defendants did not submit the privilege logs in whole or part; the Court is thus not in a position to rule on the log's adequacy. The parties are, however, ordered to meet and confer in person regarding Defendants' challenge to the assertion of privilege over documents for which an attorney is not listed as either the author or recipient. The attorney representing Plaintiff at the meet and confer must be familiar with all of the withheld documents and be able to explain why each document is privileged. The attorney must also have full authority to resolve any dispute about a particular document without further consultation with any other person. If a client representative needs to give consent, the client representative must attend the meet and confer session. Plaintiff shall be prepared to show Defendants any unprivileged information in each document which demonstrates that the document contains attorney-client advice.

To the extent that any dispute remains following the meet and confer (which must occur this year), all persons who participated in the meet and confer shall appear before the Court at 10:30 a.m. on January 5, 2015 with the withheld documents at issue. Counsel shall be prepared to meet and confer in the jury room if necessary for as long as it takes to narrow the parties' disputes. To avoid unnecessary disputes, Defendants shall focus their inquiries on those documents they deem most relevant.

**2. Defendants' Privilege Log (Dkt. No. 405)**

Plaintiff, for its part, contends that Defendants' privilege log appears to omit documents that exist but have not been produced or that have been destroyed and the destruction not

disclosed. In particular, Plaintiff objects to the fact that there are only a handful of entries on the privilege log for the "most critical time period in the case: latter 2009 through early 2010." (Dkt. No. 405 at 3.) Plaintiff also contends that Defendants have failed to produce privilege logs for the other third-parties it represents. Defendants counter that they have identified all responsive documents on their privilege log and represent that they have and will produce privilege logs for the third parties.

To the extent that Defendants have not yet produced privilege logs for the remaining third parties, they shall do so on or before December 19, 2014. With respect to Plaintiff's general challenge to the adequacy of Defendants' log, in the absence of a specific reason to conclude that the privilege logs are inadequate, the Court must accept counsel's representation as an officer of the Court that all responsive documents have been identified and that documents were not intentionally destroyed. The motion to compel is therefore denied.

Finally, both parties' letter briefs attempt to reserve the right to make objections to late produced privilege logs; however, neither party has as of yet filed anything. As the parties have now had adequate time to do so for any logs produced on or prior to December 3, the Court considers this matter closed and will not accept any further motion practice regarding this matter.

**B. Responses to Requests for the Production of Documents**

   **1. Plaintiff's Requests for the Production of Documents (Dkt. No. 405)**

Plaintiff has several objections to Defendants' responses to its Requests for the Production of Documents. First, Plaintiff generally contends that Defendants have failed to conduct a "reasonable and thorough" manual search for responsive documents in addition to their electronic search of specified custodians utilizing agreed-upon search terms ("ESI search"). However, Plaintiff has not specifically identified any document request for which the Court could say that it was per se unreasonable for Defendants to perform a search utilizing search terms.

Plaintiff references several exhibits to its letter brief (Exhibits 1, 5, and 6), which are Defendants Quattro Vascular, QT Vascular LTD, and Trireme's supplemental responses to two nearly identical requests for the production of documents. (Dkt. Nos. 405-2; 405-6 & 405-7.) The first request seeks "Any and all agreements between Eitan Konstantino and AngioScore from 2005

4

to the present, including without limitation agreements that relate to Konstantino's board membership or his fiduciary duties to AngioScore." As an initial matter, it would seem that these documents are equally available to Plaintiff as the requests call for agreements between *Plaintiff* and Defendant Dr. Konstantino. To the extent that this is not the case, Defendants' use of search terms including Angiosc* to locate responsive documents appears reasonable absent a specific reason—which has not been advanced—that would suggest that use of these search terms would not yield responsive documents.

The same is true for the other request which asks each defendant to produce documents reflecting their knowledge "of efforts undertaken with respect to the conception, design and development of the Chocolate balloon catheter before February 5, 2010." Plaintiff has not explained why use of the search terms Choc*, balloon* /20 (scor* or cut* or cage or shell), special* /10 (balloon* or catheter*) to search agreed upon custodian files was inadequate to yield responsive documents. This lack of an explanation is particularly problematic in light of Defendants' representation that they have produced over one million pages of documents and that in addition to the electronic search they collected hard copy documents and searched central repositories which were specifically identified as having potentially relevant documents. Accordingly, Plaintiff's motion to compel further searches is denied.

Second, Plaintiff objects to Defendants' failure to produce documents regarding "Innovation in Progress" and "Proteus Vascular Systems" which Plaintiff contends were the names of the companies Dr. Konstantino first formed in 2009 to fund Chocolate. Although Defendants have produced some documents, Plaintiff contends that the production is "facially incomplete" and suggests that there must be other documents. Defendants counter that they have searched three of Dr. Konstantino's email accounts during the relevant time period using the search terms choc*, invest* /50 "balloon" or "chocolate" or "catheter." Defendants assert that the email search was adequate because they "were not able to identify any hard copy files or central repositories that held such records." At oral argument, Defendants suggested that they had also used "Protetus" as a search term. Given this suggestion and Plaintiff's failure to identify any particular document or type of document which it contends should have been produced regarding

"Proteus Vascular Systems," the Court declines to order a further search for responsive documents. If Defendants did not use the term "Proteus," it shall do so with the previously-identified custodians. Such a request is not burdensome given Defendants' representation that Proteus was never incorporated and thus not important, in other words, according to Defendants there will not be many responsive documents. Any additional documents shall be produced by December 22, 2014, unless the parties agree otherwise.

Third, Plaintiff seeks "bank records showing transactions between Quattro, TriReme, and QT Vascular, and complete internal financial or accounting records" to pursue corporate veil piercing and successor liability theories. (Dkt. No. 405 at 2.) Plaintiff contends that such documents would be responsive to Requests 48-50 to Quattro and Requests 202 & 209, which seek "all documents evidencing or otherwise relating to any financial transaction or agreement between you and TriReme," all documents evidencing or relating to any financial transaction between you and Eitan Konstantino," "[a]ll documents evidence or otherwise relating to any transaction or agreement between QT Vascular and Eitan Konstantino," "all documents that support or refute AngioScore's alter ego theory of liability," and "documents sufficient to show all payments or transfers of money or other assets made by any Defendant to any other Defendant."[1] (Dkt. No. 405 at 3.) Defendants object to these requests as overly broad, unduly burdensome, not reasonably calculated to lead to the discovery of admissible evidence, and harassing. Defendants contend that they attempted to meet and confer with Plaintiff to narrow these requests, but Plaintiff refused. At oral argument, and in light of the allegations in the operative amended complaint, the Court narrowed the request to bank records showing transactions between Dr. Konstantino and TriReme, Dr. Konstantino and Quattro, and TriReme and Quattro, as well as any financial documents showing revenues exchanged between TriReme and Quattro to the extent such documents have not already been produced. Defendants shall produce documents responsive to this narrowed request and may do so subject to an attorneys-eyes-only designation. The documents shall be produced by December 22, 2014, unless the parties agree otherwise.

---

[1] Plaintiff did not attach a copy any of these requests and has not specified the contents of Requests 48-50.

6

Finally, Plaintiff contends that Defendants have failed to produce many other categories of documents and lists a few examples which Plaintiff states would be responsive to Requests 47, 66, 118, and 224; however, the only category listed which would be captured by the identified requests is "all of Quattro's final applications to the Singapore Government for investment/grant money (sections are missing in the versions Defendants identified)" which is likely responsive to "all documents submitted to or received from any government or governmental agency concerning any Chocolate Balloon Catheter."[2] At oral argument, Plaintiff indicated that it is specifically seeking Attachment 1A to the Singapore application; however, this particular document was not addressed in the parties' meet and confer. On or before December 22, 2014, Defendants shall confirm that they do not have Attachment 1A as suggested at oral argument. As to Plaintiff's remaining objections to Defendants' production, Plaintiff has failed to sufficiently identify specific requests which would capture the information sought. For example, while the request seeking "[a]ll agreements entered into by you" might capture some of the other identified categories of documents, it is so overbroad and vague that Plaintiff cannot now complain that a particular document or category of documents is missing. Likewise, to the extent that Plaintiff sought "all signed contracts been Quattro, TriReme, and various other companies that Defendants have collaborated with in developing, testing, manufacturing and distributing the Chocolate," the request for "all documents that relate to or otherwise concern any consulting or other type of agreement between Defendants and any third party regarding the design, development, manufacture, testing, or analysis of the Chocolate device" might encompass this information, but again, the request is overly broad. The motion to compel is thus denied in all other respects.

**2. Defendants' Requests for the Production of Documents (Dkt. No. 402)**

Defendants seek to compel additional responses to eight Requests for the Production of Documents. Defendants contend that the document requests seek information relevant to AngioScore's corporate opportunity claim (a subset of the breach of fiduciary duty claim), and Defendants' affirmative defenses. As with Plaintiff's motion to compel additional responses to

---

[2] As with the preceding category, Plaintiff did not attach the actual requests so the Court relies on the excerpts in the letter brief.

7

certain documents requests, the issue here is in part the adequacy of the ESI search. As with Defendants, Plaintiff contends it has fully complied with its ESI obligations. In particular, with respect to Requests 50 and 51, which seek documents regarding the competitive landscape for AngioScore's products and documents AngioScore provided to any potential inquirer regarding its financial condition, respectively, Defendants contend that just performing a search using the agreed upon search terms would not yield responsive documents. While this may be true, Plaintiff indicates that for Request 50 it has produced all non-privileged documents in its possession, custody and control. Likewise, for Request 51, Plaintiff indicates that in responding to other requests it produced responsive documents including its annual and quarterly financial statements, a complete report of its sales and detailed data regarding its costs. It is thus unclear as to either request what additional documents Defendants contend would be located through a search of the data room. The request to compel further responses to Requests 50 and 51 is therefore denied.

With respect to the other requests, Request 39 seeks documents "sufficient to show benefits, compensation or payments provided by AngioScore, Inc. to each member of AngioScore, Inc.'s Board of Directors from January 1, 2007 to June 30, 2014." Defendants contend that differences between Dr. Konstantino's compensation and that of other board members are relevant because Defendants intend to argue at trial that (1) AngioScore's position that it owned Dr. Konstantino's invention was inequitable and unreasonable, and (2) the disparity in director compensation (because Dr. Konstantino received none) reflects a bias against Dr. Konstantino which is "at the heart of the claim." The Court agrees that this information is potentially relevant and orders Plaintiff to produce documents sufficient to show the compensation paid to other members of the board during the period Dr. Konstantino was on the board. The documents shall be produced on or before December 22, 2014, unless the parties agree otherwise.

Plaintiff has agreed to produce non-privileged documents responsive to Request 59; thus, there does not appear to be a dispute regarding the request. Such documents shall be produced by December 22, 2014.

The dispute concerning Requests 61, 62 (& 53) and 65 is over the burden and relevance of the documents sought rather than the adequacy of the search for any responsive documents.

1    Request 61 seeks samples of each AngioScore product for use as an exhibit at trial to demonstrate
2    that in light of all these other products AngioScore would neither have been interested in nor able
3    to develop the Chocolate technology.  This request is burdensome—it seeks samples of over 70
4    different products—and seeks information of marginal relevance at best.  To the extent Defendants
5    intend to argue that AngioScore was not in a position to develop Chocolate, it does not need
6    samples of very small medical devices to do so, and if it wants to perform such an analysis,
7    AngioScore represents that diagrams of the products which would show their intricacy are
8    available online.  The motion to compel as to Request 61 is therefore denied.

9    Request 62 and the related 53 seek communications between AngioScore and InnoRa
10   GMbH, Ulrich Speck and/or Bruno Scheller relating to a dispute that arose between these parties
11   as discussed at the deposition of Thomas Trotter.  Defendants contend that AngioScore and
12   InnoRa GmbH had a development agreement and got into a dispute over InnoRa's agreement to
13   develop a drug-coasting technology for Chocolate; however, it is unclear what a dispute with a
14   third-party has to do with Defendants' defense to Plaintiff's breach of fiduciary duty claim and
15   Defendants have not attached the excerpts from the deposition transcript referenced.  Defendants
16   have thus failed to demonstrate the relevance of the information sought and the request to compel
17   a further response is denied.

18   Request 65 seeks "documents relating to the waiver of any of AngioScore's loan covenants
19   in 2009 or 2010" to demonstrate that AngioScore would not have been financially able to exploit
20   the corporate opportunity had it been offered.  Plaintiff contends that it has produced extensive
21   other information regarding its financial condition including its complete financial statements
22   from 2005 to the present and numerous board presentations on the financial condition of the
23   company.   The Court concludes that this evidence could be relevant and orders Plaintiff to
24   supplement its response to Request 65 on or before December 22, 2014, unless the parties agree
25   otherwise.

26   Finally, Defendants moved to compel production of the attachments to 3500 emails that
27   Defendants contended were produced without their attachments. (Dkt. No. 401 at 2.)  Plaintiff has
28   withdrawn its opposition and has produced all the attachments.  (Dkt. No. 422.)  The issue is

9

1    therefore moot.

2    **C. Interrogatory Responses**

3        **1. Plaintiff's Interrogatories (Dkt. No. 400)**

Plaintiff contends that Defendants' responses to its interrogatories are deficient and evasive. Defendant Dr. Konstantino provided nearly identical responses to Interrogatory No. 17 "describe all efforts undertaken with respect to the conception, design and development of the Chocolate Balloon catheter before February 5, 2010…" and No. 21 "identify all individuals who were aware (before the filing of the third amended complaint) of your work on the Chocolate balloon catheter before February 5, 2010, including without limitation all employees, officers and directors of TriReme Medical, LLC and/or Quattro, and state the dates and circumstances of such awareness." Plaintiff contends that the six-line response to both interrogatories is deficient as it omits information regarding Chocolate's development which is apparent in documents produced by Defendants. In response, Defendant Dr. Konstantino states that the response is complete and accurate given the undefined terms "conception," "design," and "development." The Court agrees that Defendants' response is incomplete; however, given the stage of the litigation, and the fact that Dr. Konstantino has been deposed and questioned about this very topic, the Court declines to order a further response.

Interrogatory No. 18 is a contention interrogatory directed at Dr. Konstantino which reads "state all facts upon which you base any contention that you were not obligated to disclose and/or offer to AngioScore the business opportunity associated with the Chocolate balloon catheter prior to February 5, 2010." Defendant objects to the interrogatory as calling for a legal conclusion and has declined to answer. Federal Rule of Civil Procedure 33(a)(2) provides that "an interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact." Fed. R. Civ. P. 33(a)(2); *see also Thomas v. Cate*, 715 F. Supp. 2d 1012, 1029 (E.D. Cal. 2010) order clarified, No. 05-01198, 2010 WL 797019 (E.D. Cal. Mar. 5, 2010) ("Generally, the fact that an interrogatory calls for a legal conclusion is not grounds for an objection"). However, "interrogatories directed to issues of 'pure law'—i.e., abstract legal issues not dependent on the facts of the case" are not permitted. Schwarzer, Tashima & Wagstaffe, CAL.

PRAC. GUIDE: FED. CIV. PRO. BEFORE TRIAL ¶ 11:1680 (The Rutter Group 2014). Interrogatory No. 18 is a proper contention interrogatory as it is not limited to a pure legal conclusion—it seeks the factual basis for Defendant's defense of one aspect of the breach of fiduciary duty claim. If, as a legal matter, Defendant contends he was not under a legal duty to disclose the opportunity to Plaintiff, then Defendant should say so and explain why. Defendant Dr. Konstantino shall supplement his response on or before December 22, 2014 unless the parties agree otherwise.

Interrogatory No. 25 to Defendant Dr. Konstantino seeks "the complete factual basis for each of the Affirmative Defenses provided in Your Answer, all Documents that You contend support each of Your Affirmative Defenses, all Documents that refute each of Your Affirmative defenses, and all Persons with knowledge of the facts relating to each of Your Affirmative Defenses." Defendant objected to the interrogatory as compound and containing multiple subparts. Defendant contends that because there are 12 affirmative defenses and the interrogatory has four parts (identify all facts in support of the defenses, all documents that support, all documents that refute, and all persons) it contains 48 subparts which each count as a separate interrogatory. Federal Rule of Civil Procedure 33(a)(1) limits each party to no more than 25 interrogatories. Defendant contends that based on prior interrogatories with multiple subparts Plaintiff has already exceeded this limit. Plaintiff's portion of the letter brief does not respond to Defendant's contention that the interrogatory has multiple subparts and thus exceeds the 25 interrogatory limit; however, at oral argument, Plaintiff argued that because it had responded to interrogatories containing multiple subparts without objection, Defendant should not be able to assert such an objection. While the parties could have agreed not to object to interrogatories on this basis, the parties had no agreement not to do so here, at least none has been identified for the Court. Because interrogatories which contain multiple subparts, i.e., those which "introduce[] a line of inquiry that is separate and distinct from the inquiry made by the portion of the interrogatory that precedes it" are generally counted as separate interrogatories, and in so counting, Plaintiff has exceeded the 25 interrogatory limit, Defendant's objection is sustained. *Adobe Systems Inc. v. Wowza Media Systems, LLC*, No. 11-2243, 2012 U.S. Dist. LEXIS 103988,

at *9 (N.D. Cal. July 25, 2012).  However, Defendants shall meet and confer with Plaintiff in good faith regarding their affirmative defenses and which they in fact intend to pursue.  Such meeting shall occur before the end of the year.

Interrogatory No. 22 to Defendant Quattro states in relevant part "describe the formation of Proteus Vascular Systems and Quattro…"  Plaintiff objects to Defendant's response with respect to Proteus Vascular System; namely, that "[o]n information and belief, 'Proteus Vascular Systems' has never been incorporated."  Defendant Quattro contends that it has no knowledge of Proteus Vascular Systems which Plaintiff contends was the prior iteration of Defendant Quattro because Quattro did not exist at the time Proteus existed.  Given this representation, Plaintiff's motion to compel a further response is denied.

**2. Defendants' Interrogatories (Dkt. No. 403)**

Defendants contend that Plaintiff's responses to its Third Set of Interrogatories are evasive, incomplete, or otherwise conclusory.  In particular, Defendants take issue with Plaintiff's response to Interrogatory No. 11 "identify all competitors who you believe compete with AngioScore in the market for angioplasty balloon catheters."[3]  In response, Plaintiff stated that "AngioScuplt directly competes with other specialty balloon catheters, which include Chocolate, VascuTrak PTA Dilation Catheter, and Boston Scientific Cutting Balloons."  Defendants are concerned that Plaintiff's response is incomplete because it is limited to products that directly compete as opposed to just compete and uses the phrase "specialty balloon catheters;" however, Plaintiff's response is consistent with the referenced document (the Millennium Research Report) which was used by Plaintiff's expert to evaluate Plaintiff's market share.   To the extent that Defendants seek to pin Plaintiff down on this issue, that is best done through a Rule 30(b)(6) or expert deposition.

The issue regarding Interrogatory No. 14 appears resolved as does the issue regarding Plaintiff's failure to verify its interrogatory responses.

//

//

---

[3] Interrogatory 12 similarly states "identify all products that you contend to be competitive with any product in your AngioScuplt product line."

12

**D. Requests for Admission**

    **1. Plaintiff's Requests for Admission (Dkt. No. 400)**

Plaintiff raises three primary objections to Defendants' responses to its Requests for Admission. First, Plaintiff contends that Defendants' objection and refusal to respond to Request Nos. 56, 58, 59, 63, 214, and 216-218 on the basis that the requests are based on a legal conclusion is improper; however, Plaintiff has not included the text of the requests or the responses in the letter brief and only attached the responses to Request Nos. 214 and 216-218. (*See* Dkt. No. 400-12.) The Court's ruling is thus limited to these requests. Request 214 and 216 seek an admission that QT Vascualr is the successor-in-interest to TriReme and Quattro, respectively. Defendants object that these requests call for a legal conclusion and are vague and ambiguous as to the term "successor-in-interest." Request 217 and 218 ask whether QT Vascular assumed the liability of TriReme and Quattro, respectively. Defendants object that the requests call for a legal conclusion and are vague and ambiguous as to the term "assumed the liabilities."

A request for admission calls for a legal conclusion when it purports to require a party to admit, for example, that a statute or regulation imposes a particular obligation. *See Disability Rights Council of Greater Wash. v. Wash. Metro. Area Transit Auth.*, 234 F.R.D. 1, 3 (D. D.C. 2006). In contrast, a request which asks how a particular source of a legal obligation applies to a given set of facts is permissible. *See Miller v. Holzmann*, 240 F.R.D. 1, 5 (D. D.C. 2006) (overruling legal conclusion objection to requests which asked whether on a particular date one parties' interest was assigned to another and whether pursuant to an agreement a party created a joint venture to complete certain projects). There is, however, no consensus regarding the distinction between "pure legal questions" and legal conclusions that "relate to the facts of the case." *Apple Inc. v. Samsung Elecs. Co.*, 2012 U.S. Dist. LEXIS 38508, at *21 (N.D. Cal. Mar. 20, 2012). The *Apple* court concluded that a request for admission did not impermissibly call for a legal conclusion where it streamlined the issues and narrowed the facts in dispute for trial. *Id.* at *24-*25.

Here, the Court concludes that these requests do not call for pure legal conclusion and overrules Defendants' objections on this ground. The Court likewise rejects Defendants'

objections that the terms "successor-in-interest" and "assumed the liabilities" are vague and ambiguous because these terms have well-established meanings and are part of the parlance of this case. Defendants shall respond to Requests 214, and 216-218 on or before December 22, 2014, unless the parties agree otherwise.

Second, Plaintiff takes issue with Defendants' qualified responses to various requests for admission. Plaintiff provides "examples" of the requests at issue, but does not identify or analyze with any particularity the issues with Defendants' qualified admissions or denials. There is nothing per se wrong with a qualified admission or denial. *See Marchand v. Mercy Med. Ctr.*, 22 F.3d 933, 938 (9th Cir. 1994). While Plaintiff quibbles with the language used in Defendants' qualified responses to requests 173 and 175, the responses comport with Rule 36(a)(4)'s requirement that "when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest." With respect to the only other requests for which any argument is included—Requests 110, 111, and 136—Plaintiff's objections are well-founded. Defendants should either admit or deny Requests 110 and 111—they do not ask about whether members of a board of directors owe a fiduciary duty generally, but rather, about whether Defendant Dr. Konstantino was aware he owed such a duty. Likewise, given Plaintiff's clarification that the phrase "bench testing" in Request 136 refers to the bench testing referenced in TR0045202, Defendants shall respond to the request. The responses shall be made on or before December 22, 2014, unless the parties agree otherwise.

Finally, Plaintiff objects to the inclusion of qualifiers where the requests are either admitted or denied, i.e., "Denied, to the extent not previously admitted." However, Plaintiff has again failed to include either the text of the identified requests (Nos. 58-60, 62-63) and responses in the letter brief nor has Plaintiff attached these requests to its letter brief. At oral argument, Plaintiff also identified requests 174, 176, and 179 (which were produced to the Court) as examples. Defendants explained that the language was included because Plaintiff had served "dozens" of often duplicate requests for admission on the different defendants. Because Plaintiff has not identified any particular request for which it contends that Plaintiff's "denied, to the extent not previously admitted" is something other than a denial, i.e., an admission based on Defendants'

1 response to another request for admission, Plaintiff's motion to compel revised responses to these
2 requests is denied.

**E. Service of the Subpoena on Non-Party John Sellers (Dkt. No. 398)**

Defendants issued a subpoena to John Sellers, a partner at Cooley LLP—Angioscore's former counsel—on November 6, 2014. (Dkt. No. 398-1.) Notice of the subpoena was provided to Plaintiff; however, Defendants have been unable to serve the subpoena on Mr. Sellers despite two visits by a process server to Cooley's offices in Palo Alto on November 6 and 7, 2014 as well as several visits to Mr. Sellers' home. (Dkt. No. 398-3.) At oral argument, AngioScore shall agreed to arrange with Mr. Sellers to accept service on his behalf December 15, 2014. The parties shall then schedule Mr. Sellers' deposition for a mutually convenient date that does not impose an undue burden on Mr. Sellers. Plaintiff's objections to the scheduling of the deposition after the close of fact discovery are overruled as the deposition could have occurred over a month ago—within the non-expert deposition deadline—had Plaintiff simply agreed to accept service of the subpoena at that time.

**F. Administrative Motions to Seal**

The parties' letter briefs were accompanied by three Administrative Motions to Seal (Dkt. Nos. 399, 406 & 409.)

The Administrative Motion to Seal at Docket No. 399 is GRANTED. Plaintiff, the designating party, has established that the material referenced in Defendants' Joint Letter Briefs II and III, and the attached Exhibits A-C are sealable in accordance with Local Rule 79-5(b). (Dkt. No. 420.)

The Administrative Motion to Seal at Docket No. 406 is DENIED. Defendants, the designating parties, do not contend that the any of the material in Plaintiff's Joint Letter Brief (Dkt. No. 405) or the attachments thereto should be sealed. (Dkt. No. 419.) Plaintiff shall publicly efile the Joint Letter Brief and Exhibits 2, 7-9, 12, and 13-16.

The Administrative Motion to Seal at Docket No. 409 is GRANTED as to the request to seal Exhibits 3, 4, and 5 to Plaintiff's Joint Letter Brief (Dkt. No. 400), but DENIED in all other respects. Defendants, the designating parties, have withdrawn their request to seal Exhibits 1, 2-9,

15

and 13 and the Joint Letter Brief itself, and have established that the material in Exhibits 3-5 is sealable in accordance with Local Rule 79-5(b). Plaintiff shall publicly efile the Joint Letter Brief and Exhibits 1, 2-9, and 13.

**CONCLUSION**

As set forth above, the parties' respective motions to compel are DENIED IN PART and GRANTED IN PART.

This Order disposes of Docket Nos. 398, 399, 400, 401, 402, 403, 405, 406 & 409.

**IT IS SO ORDERED**.

Dated: December 16, 2014

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge