UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

**ANGIOSCORE, INC.**,

   Plaintiff,

  v.

**TRIREME MEDICAL, INC., ET AL.**,

   Defendants.

Case No. 12-cv-03393-YGR

**ORDER (1) GRANTING AND GRANTING IN PART ADMINISTRATIVE MOTIONS TO SEAL; (2) DENYING MOTION TO AMEND INFRINGEMENT CONTENTIONS; (3) SETTING FILING REQUIREMENTS FOR DOCUMENTS CONTAINING DESIGNATED MATERIAL**

In June of 2012, Plaintiff Angioscore, Inc. ("AngioScore") filed this patent infringement and state law action against Defendants Trireme Medical, Inc., et al. ("TriReme"). Now before the Court are several motions, all stemming from AngioScore's motion to amend infringement contentions (Dkt. No. 343, 346), to which Defendant TriReme has responded (Dkt. No. 382, 383), and AngioScore has replied (Dkt. No. 393).

Having carefully considered the papers submitted and the pleadings in this action, and for the reasons set forth below, the Court hereby **GRANTS** in part the pending motions to seal, **GRANTS** the pending motions to remove incorrectly filed documents, **DENIES** the motion to amend infringement contentions, and sets forth filing requirements for all future documents potentially containing designated confidential material.[1]

---

[1] Pursuant to Federal Rule of Civil Procedure 78(b) and Civil Local Rule 7-1(b), the Court determined this motion suitable for decision without oral argument. Accordingly, the Court **VACATED** the hearing set for December 16, 2014.

## I. FACTUAL BACKGROUND

Relevant to the instant motions are the following facts.

AngioScore served its original Infringement Contentions on May 6, 2013. In those contentions, AngioScore listed the known model numbers of the Chocolate PTA Balloon Catheters. AngioScore noted that the list was non-exhaustive and "based on information currently known to AngioScore. The parties thereafter exchanged their "Preliminary Claim Constructions" pursuant to Patent Local Rule 4-2. Claim construction briefing concluded in the fall of 2013 and defendants filed their summary judgment brief in December 2013. Following a hearing, the Court issued its claim construction and summary judgment order on June 25, 2014. (Dkt. No. 218.)

As early as January 17, 2014, AngioScore was made aware of the existence of the Chocolate PTCA Balloon Catheter device that TriReme developed. During a deposition with TriReme's Vice President of Research and Development, AngioScore was informed of the Chocolate PTCA device and its purposes, including in general terms how it differed from other Chocolate devices on the market. In September 2014, AngioScore learned that TriReme had begun to sell the Chocolate PTCA device, and in October 2014, obtained documents showing the structure and use of the Chocolate PTCA device. According to AngioScore, the Chocolate PTCA device is substantially identical to the structure of the Chocolate PTA device that had been identified in AngioScore's original Infringement Contentions.

## II. MOTIONS TO SEAL

### A. Legal Standard

Two very different standards govern motions to seal depending upon whether the documents are submitted in connection with dispositive or non-dispositive motions. *Pintos v. Pac. Creditors Ass'n*, 565 F.3d 1106, 1115-16 (9th Cir. 2009) *opinion amended and superseded on denial of reh'g,* 605 F.3d 665 (9th Cir. 2010).

For judicial records submitted in connection with dispositive motions, the party seeking to seal the record must demonstrate "compelling reasons" that would overcome the public's right to view public records and documents, including judicial records. *Id.* (citing *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006)). A "party seeking to seal judicial

2

1 records must show that 'compelling reasons supported by specific factual findings ... outweigh the
2 general history of access and the public policies favoring disclosure.'" *Id.* (quoting *Kamakana*,
3 447 F.3d at 1178-79 (9th Cir. 2006)). The trial court must weigh relevant factors including the
4 "public interest in understanding the judicial process and whether disclosure of the material could
5 result in improper use of the material for scandalous or libelous purposes or infringement upon
6 trade secrets." *Id.* at 679 n. 6 (quoting *Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir.
7 1995)). While the decision to grant or deny a motion to seal is within the trial court's discretion,
8 the trial court must articulate its reasoning in deciding a motion to seal. *Id.* at 679. Given the
9 importance of the competing interests at stake, any sealing order must be narrowly tailored. Civ.
10 L.R. 79-5 (a).
11 However, a different standard applies to private documents submitted in connection with
12 non-dispositive motions, since such motions are often unrelated or only tangentially related to the
13 merits of the underlying claims. *Id.* at 1180; *Kamakana*, 447 F.3d at 1179-80. The Rule 26(c)
14 "good cause" standard applies to documents submitted in connection with non-dispositive
15 motions, such as discovery motions, and the court may seal the documents "to protect a party or
16 person from annoyance, embarrassment, oppression, or undue burden or expense." *Pintos*, 565
17 F.3d at 1116.
18 Civil Local Rule 79-5 sets forth the procedural and technical requirements for motions to
19 seal.

**B. Discussion**

**1. Standard Met; Sealing Appropriate**

22 The instant motions to file under seal and to remove incorrectly filed documents from the
23 public docket pertain to plaintiff's nondispositive motion to amend its infringement contentions.
24 Thus, the "good cause" standard enunciated in *Pintos v. Pac. Creditors Ass'n*, 565 F.3d 1106,
25 1115-16 (9th Cir. 2009) applies. Having reviewed the materials sought to be sealed, the Court
26 finds this requirement satisfied. The excerpts sought to be sealed pertain to proprietary and
27 confidential materials of the corporate parties and were produced pursuant to the protective order
28 issued in this case, and thus good cause exists to seal this information. Likewise, the Court finds

3

1    that removal of confidential materials erroneously filed on the public docket justified.  Thus, the

2    Court **GRANTS** the requests to file under seal and the motions to remove incorrectly filed

3    documents.  (Dkt. Nos. 343, 347, 352, 354, 365.)  For reasons set forth below, defendants' motion

4    to file under seal at Docket Number 381, and plaintiffs' motion to file under seal relating to their

5    reply in support of their motion to amend their infringement contentions at Docket Number 393

6    are **GRANTED** in part.

### 2. Repeated Violations of Local Rules

In granting these motions, however, the Court does not overlook the parties' failure to comply with the Local Rules of this district in seeking to file documents under seal.  *See generally*, Civ. L. R. 79-5.  Nor is it lost on the Court that the parties' discord and seeming inability to file properly their motions has resulted in a proliferation of administrative motion practice and multiple filings of errata, which has produced a docket so littered with erroneous and disjointed filings that undertaking to resolve substantive requests has proven, at times, an almost Sisyphean task.  Mindful that the parties will soon file their partial motions for summary judgment on state law claims, and that requests to file documents in support thereof under seal **will be subject to a heightened "compelling reasons" standard**, the Court provides the following *non-exhaustive* list of deficiencies in the parties' requests to file certain documents under seal.  The Court will not countenance failings such as these in future filings.  The parties are hereby warned that requests to file under seal that do not adhere to the Local Rules will be denied summarily.

#### i. Plaintiff's Motion

With respect to AngioScore's request to file its motion for leave to amend its infringement contentions, AngioScore seeks to file the motion itself and certain of the supporting papers thereto under seal.  (*See* Dkt. No. 343; *see also* Dkt. No. 346.)  However, in its administrative motion to file under seal, AngioScore has failed to comply with the Local Rules of this district, which require that the unredacted document sought to be filed under seal "must indicate, by highlighting or other clear method, the portions of the document that have been omitted from the redacted version . . . ."  Civ. L. R. 79-5(d)(1)(D).  The unredacted copy of the motion for leave to amend infringement contentions is devoid of such required designation.  (Dkt. No. 343-4.)  The same

1    deficiency presents in AngioScore's unredacted reply brief, Dkt. No. 393-5.  (*Compare* Dkt. No.

2    393-4 *with* 393-5.)

3          By separate motion, defendants request that the Court remove an additional document

4    (Exhibit 1 to the Hanle Declaration) that plaintiffs mis-filed in connection a previous motion to

5    remove incorrectly filed document.  (Dkt. No. 365, 366.)  The filing sought to be removed

6    represents AngioScore's second attempt to file this particular document properly.  (*See* Dkt. Nos.

7    343, 346, 351, 352.)  According to the docket entry description, this filing relates to plaintiff's

8    earlier motion to file under seal, Dkt. No. 347.  (*See* Dkt. No. 351.)  It appears that in attempting to

9    cure the filing of Exhibit 1 to the Hanle Declaration, which was erroneously filed in conjunction

10   with AngioScore's motion to amend infringement contentions (Dkt. No. 346) and plaintiff's

11   original motion to file under seal (Dkt. No. 343) as a *public document*, plaintiff refiled Exhibit 1 in

12   redacted form.  (Dkt. Nos. 351-1, 352.)  In their motion to remove the document from the docket,

13   defendants contend that plaintiff's redacted version (Dkt. No. 351-1) is insufficient to remove

14   confidential information pertaining to defendants' products and thus request that the Court remove

15   the document permanently from the record.  Setting aside for the moment the fact that the parties

16   failed to reach an agreement on what of defendants' allegedly confidential materials should be

17   redacted, the Court notes that AngioScore's redacted Exhibit 1 document has not been filed

18   properly as a part of an administrative motion to seal.  In the redacted version of Exhibit 1 at Dkt.

19   No. 351-1, AngioScore instead apparently deleted entirely the items sought to be redacted, rather

20   than covering them with black boxes.  The result is that the document is unclear as to what

21   substance has been redacted, and what was simply never there to begin with; large white spaces

22   abound without any suggestion that a redaction occurred at all.

### ii. Defendants' Opposition

24       Defendants fare no better.  In their administrative motion to file under seal certain exhibits

25   in support of their opposition to plaintiff's motion for leave to amend, defendants seek to seal

26   Exhibits A, C, and D to the Baum Declaration.  (Dkt. No. 381.)  It appears that the defendants seek

27   to file the entirety of these three documents under seal.  Under the Local Rules, no redacted

28   version need be filed.  Civ. L. R. 79-5(d)(1)(D).  However, the declaration in support of the

motion does not make this clear, nor does such declaration explain why Exhibit A, which defendants designated as confidential, qualifies as sealable. Indeed, the face of the document states that it "contains sealed confidential portions," which suggests that certain material therein is not sealable. Further confusing the issue is the fact that the unredacted filed version of Exhibit A bears highlighting only on particular parts of the document. As contemplated by Rule 79-5(d)(1)(D), such highlighting indicates which portions of the document have been omitted from a corresponding redacted version filed on the public docket. If that is the case here, no redacted version of the document was filed publicly. Plaintiff's related declaration states that Exhibit C need to not filed under seal, and that Exhibit D must remain under seal. Thus, defendants' motion to file under seal is **GRANTED** only with respect to Exhibit D, and is **DENIED** as to Exhibits A and C. Both Exhibit A and Exhibit C shall be filed on the public docket no earlier than 4 days, and no later than 10 days, after this order issues. Civ. L. R. 79-5(e)(2).

### iii. Plaintiff's Reply

Finally, with respect to plaintiff's motion to file its reply brief and supporting documents under seal (Dkt. No. 393), as the Court noted above, the sealed, unredacted version of AngioScore's brief bears no highlighting to indicate what redactions are proposed, as is required under the Local Rules. Separately, the Court finds that defendants' declaration provides sufficient specificity as to what content in the exhibits thereto should be redacted from the public docket. (Dkt. No. 397.) Thus, the Court **GRANTS** in part plaintiff's motion to file these documents under seal, in conformity with the specifications provided in defendants' declaration. *See* Civ. L. R. 79-5(f)(3).

More generally, however, the Court finds that the motion practice discussed above evinces conduct that is at variance with the level of respect, candor, and professionalism that is expected, and indeed required, of attorneys practicing in this District. The parties' failure to meet and confer in a meaningful way in order to reach agreement on issues that are either immaterial or non-controversial, and to reflect accurately the statements made during the course of those conversations, has wasted judicial resources, attorney time, and client resources. The Court specifically refers to the motion practice associated with Docket Number 365, defendants' motion

6

to remove an incorrectly filed document, to which AngioScore filed a response, and defendants replied, and the parties' inability to reach consensus on what of Dkt. No. 351-1 should be redacted. The vitriol presented in the briefing is ill-fitting of lawyers practicing at this bar. Counsel are admonished to take seriously the rules of professional conduct, particularly the Guidelines for Professional Conduct that apply to all lawyers who practice in this District. (*See generally*, Guidelines for Professional Conduct, available at: http://www.cand.uscourts.gov/professional_conduct_guidelines; *id.* at § 8 ("A lawyer should at all times be civil, courteous, and accurate in communicating with opponents or adversaries, whether in writing or orally.").)

In light of the foregoing, at the conclusion of this Order, the Court sets forth a filing protocol to govern the remainder of this case. Future failings such as those discussed above, and failure to comply with the procedure set forth below, shall be met with appropriate sanctions.

### III. MOTION FOR LEAVE TO AMEND INFRINGEMENT CONTENTIONS

#### A. Legal Standard

The patent local rules were "designed to require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed." *O2 Micro*, 467 F.3d at 1366 n.12. In furtherance of that end, "[i]n contrast to the more liberal policy for amending pleadings, the philosophy behind amending claim charts is decidedly conservative, and designed to prevent the shifting sands approach to claim construction." *Kilopass Tech. Inc. v. Sidense Corp.*, No. 10–cv–02066 SI, 2011 WL 5212259, at *1 (N.D. Cal. Nov. 2, 2011) (citation and internal quotation marks omitted).

A party may amend its infringement contentions "only by order of the Court upon a timely showing of good cause." Patent L.R. 3–6. "Non-exhaustive examples of circumstances that may, absent undue prejudice to the non-moving party, support a finding of good cause include: (a) a claim construction by the court different from that proposed by the party seeking amendment; (b) recent discovery of material, prior art despite earlier diligent search; and (c) recent discovery of nonpublic information about the accused instrumentality which was not discovered, despite diligent efforts, before the service of the infringement contentions." *Id.* When the party seeking to amend contends that the Court adopted a different claim construction than was proposed, the

7

party must also demonstrate that (1) the Court's construction was "so different that amended infringement contentions were necessary," and must (2) give a reason for why it waited until so late in the litigation to disclose its position on infringement.

Good cause for granting a motion to amend infringement contentions exists when the moving party shows (1) that it was diligent in amending its contentions; and (2) that the non-moving party will not suffer undue prejudice if the motion is granted.  *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366 (Fed. Cir. 2006).  If the moving party fails to establish diligence, there is "no need to consider the question of prejudice."  *Id.* at 1368.

### B. Discussion

At this late juncture, AngioScore seeks to make two changes to its infringement contentions.  First, AngioScore requests leave to add a new device that it claims is infringing: defendants' Chocolate PTCA Balloon Catheters.  (*See* Reply at 2.)  Second, AngioScore seeks to amend its infringement contentions ostensibly to bring them into alignment with the Court's claim construction and summary judgment order of June 25, 2014 (Dkt. No. 218).  The Court addresses each requested amendment in turn.

#### 1. Addition of New Accused Device: Chocolate PTCA Balloon Catheter

First, as to AngioScore's request to identify a new device that is allegedly infringing the patents at issue, the Court finds that AngioScore's inclusion of such device is not timely and that it did not exercise diligence in seeking to amend its infringement contentions.  Although AngioScore argues that only in September of 2014 did it receive notice that the Chocolate PTCA Balloon Catheter had been sold on the market, the existence of the Chocolate PTCA Balloon Catheter was known to AngioScore well before then.  (*See* Baum Decl., Ex. A at 21 (excerpt from deposition of M. Pizarro, TriReme Vice President of Research and Development).)  In January of 2014, Maria Pizarro testified that TriReme would be submitting the PTCA device for FDA approval, and elaborated on the differences between that device and the Chocolate PTA device.  Indeed, when the Chocolate PTCA device received FDA clearance, TriReme issued a press release (Baum Decl., Ex. C) and AngioScore prepared a chart comparing the Chocolate PTCA Balloon Catheter and AngioScore's AngioSculpt (*id.*, Ex. D).

AngioScore argues that it did not learn that the PTCA device had been sold until September 19, 2014, and that it did not receive documents necessary to assess whether the PTCA devices infringed its patent until October 2014. (Reply at 4.) In light of the foregoing, AngioScore claims that it acted diligently with respect to seeking leave to amend now. The question, however, is not when AngioScore discovered information relating to the alleged infringement of the PTCA device, but whether AngioScore *could have* discovered this information earlier had it acted with reasonable diligence. *See Google v. Netlist*, No. 08-cv-4144, 2010 WL 1838693, *2 (N.D. Cal. May 5, 2010). AngioScore has provided no facts to suggest that it couldn't have learned of the Chocolate PTCA device's specifications, and thus discovered the technological similarities between the Chocolate PTCA and PTA devices, earlier on. To the contrary, AngioScore likely knew of the existence of the Chocolate PTCA device as early as January 2014. Tellingly, nowhere does AngioScore represent that it sought discovery relating to this device at or near that time.

Although AngioScore vaguely argues that defendants somehow impeded discovery, it offers neither compelling argument nor evidence to support its claim that defendants obstructed its discovery efforts. (*See* Reply at 4 (suggesting that "defendants' failure to produce sufficient documentation of the structure" is the cause for AngioScore's eleventh hour amendment); Mot. at 3 (same).) Moreover, to the extent that AngioScore believed that defendants were impeding its ability to obtain necessary information by failing to comply with their discovery obligations, AngioScore should have promptly sought relief from the Court.

**2. Amendment to Theories of Infringement**

Second, AngioScore proposes certain amendments relating to its stated theories of infringement for the following limitations: "attached"; "end-to-end"; and "longitudinal expansion." AngioScore insists that it is *not* changing its infringement theories. (Reply at 6.) Rather, AngioScore asserts that its proposed amendments "*reconcile*" its "earlier contentions with the Court's claim constructions." (Mot. at 5; see also Reply at 9-10 (explaining that the amended contentions "clarify" certain theories, or include "detailed support" for positions disclosed months prior).) The Court is doubtful that AngioScore's proposed "reconciliation" undertaking does not

9

amount to any substantive change, and finds that the parties' briefing does not ably assist in that investigation.  Regardless, because the Court finds that AngioScore's proposed amendments relating to its infringement theories are untimely, the motion for leave to amend must be denied.

AngioScore insists that the instant motion seeks only to clarify its previously disclosed theories of infringement in light of the Court's claim construction and summary judgment order. The Court issued that order on June 25, 2014.  Five months later, the instant motion was filed. Despite this fact, AngioScore does not explain fully why the proposed amendments could only have been made now, long after the Order to which the proposed amendments are directed was issued.  Thus, AngioScore has not established that its request to amend its theories of infringement is timely, and there is no basis under our Local Rules to permit the requested amendment.

Moreover, accepting AngioScore's representation on its own terms – that the proposed amendments do not alter its infringement theories, but rather explain further (or bolster) what was previously disclosed – the instant motion is, simply, not necessary.  The Court is well-aware of its holdings in its claim construction and summary judgment order, and therein discussed the theories of infringement AngioScore may pursue at trial.  Likewise, AngioScore's reply brief stresses that its theories of infringement have been made clear repeatedly over approximately *ten months* of litigation, including in its February 2014 expert report, claim construction submissions in October 2013, and its summary judgment briefing of December 2013.

### 3. Efficiencies

AngioScore argues that allowing it to amend its infringement contentions now, mere months before trial, would be more efficient.  Under some circumstances, the Court might agree. Here, it does not.  The Court is not inclined to change the landscape of the litigation in this case. The change itself leads to more disputes.  If the overlap is as significant as plaintiff contends, the Court finds that it is much more expeditious for a new lawsuit to be filed, related to the instant case, and summarily resolved based on the findings made here.

**IV.   CONCLUSION**

Accordingly, for the reasons set forth above, the motions to seal are **GRANTED** and **DENIED** in part.  The requests to remove incorrectly filed documents are **GRANTED**.  Plaintiff's

10

motion for leave to amend infringement contentions is **DENIED**.

In light of the parties' discord and its impact by way of a proliferation of unnecessary motion practice, and the multiple errors committed by the parties in filing such documents, the Court hereby **ORDERS** as follows, with a view to prevent future disputes and preserve the clarity of the docket:

1. Prior to making any filing that may contain material designated as confidential by the opposing party, the parties shall exchange the proposed filing and will meet and confer regarding what materials therein need to be sealed, if any.
2. Following the meet and confer, in the event that the designating party contends that certain materials to be filed should be filed under seal, the designating party will provide to the filing/submitting party a declaration setting forth with specificity what materials should be sealed and the basis for such sealing, and a redacted version of the subject document(s).
3. Any administrative motion to file under seal shall contain the following items:
   a. The designating party's declaration relating to what materials therein should be filed under seal and providing justifications for such sealing, in conformity with Civ. L. R. 79-5(d)(1)(A). If both parties designate material as sealable, each shall submit a declaration, and the parties shall also submit a joint statement making clear which designations are attributable to which party, and the justifications for sealing each item sought to be sealed.
   b. A proposed order narrowly tailored to seal only the sealable material, and which lists in table format each document or portion thereof that is sought to be sealed, in conformity with Civ. L. R. 79-5(d)(1)(B).
   c. A redacted version of the document that is sought to be filed under seal, in conformity with Civ. L. R. 79-5(d)(1)(C) and the designating party's/parties' declaration(s).
   d. An unredacted version of the document sought to be filed under seal, in conformity with Civ. L. R. 79-5(d)(1)(D), particularly that any material sought

11

to be redacted will be **indicated in such document by highlighting**.

    e. An attestation by the filing party that such meet and confer has occurred and if necessary, that the materials therein sought to be sealed conform to the designating party's/parties' contention of what should be sealed. If the materials in the filed document are designated confidential by the filing party, the attestation shall so state. If nothing in the filing need be sealed, the attestation shall so state.[2]

4. Counsel responsible for the deficient filings discussed in this Order shall, no later than **January 15, 2015**, file on the docket declarations attesting to their having read and understood this Order, the relevant Local Rules, particularly those pertaining to filing documents under seal and the standards of professional conduct, and the Guidelines for Professional Conduct in this District, available at: http://www.cand.uscourts.gov/professional_conduct_guidelines. (*See* Dkt. Nos. 343, 347, 352, 354, 365, 381, 393.)

This terminates Docket Nos. 343, 347, 352, 354, 365, 381, 393.

**IT IS SO ORDERED.**

Dated: January 6, 2015

                              _____
                              YVONNE GONZALEZ ROGERS
                              UNITED STATES DISTRICT COURT JUDGE

---

[2] In light of this procedure, which requires that the designating party simultaneously justify a request to seal at the time a submitting party files a motion to seal, a designating party is excused from complying with Local Rule 79-5(e)'s requirement that a designating party submit a separate declaration four days following the filing of the administrative motion to seal.