1  DAVID S. STEUER, State Bar No. 127059
   dsteuer@wsgr.com
2  STEVEN D. GUGGENHEIM, State Bar No. 201386
   sguggenheim@wsgr.com
3  DYLAN J. LIDDIARD, State Bar No. 203055
   dliddiard@wsgr.com
4  THOMAS J. MARTIN, State Bar No. 150039
   tmartin@wsgr.com
5  DANIEL W. TURBOW, State Bar No. 175015
   dturbow@wsgr.com
6  BRIAN DANITZ, State Bar No. 247403
   bdanitz@wsgr.com
7  WILSON SONSINI GOODRICH & ROSATI
   Professional Corporation
8  650 Page Mill Road
   Palo Alto, CA 94304-1050
9  Telephone:  (650) 493-9300
   Facsimile:   (650) 493-6811
10
   Attorneys for Defendants
11 EITAN KONSTANTINO, TRIREME
   MEDICAL, LLC, QUATTRO VASCULAR
12 PTE LTD. and QT VASCULAR LTD.

13                 UNITED STATES DISTRICT COURT

14               NORTHERN DISTRICT OF CALIFORNIA

15                       OAKLAND DIVISION

16 ANGIOSCORE, INC.,                  )  CASE NO.:  4:12-cv-3393-YGR
                                      )
17            Plaintiff,              )  **DEFENDANTS' REPLY**
                                      )  **MEMORANDUM IN SUPPORT OF**
18        v.                          )  **MOTION TO DISMISS STATE LAW**
                                      )  **CLAIMS FOR LACK OF SUBJECT**
19 TRIREME MEDICAL, LLC (f/k/a TRIREME )  **MATTER JURISDICTION**
   MEDICAL, INC.), EITAN KONSTANTINO, )
20 QUATTRO VASCULAR PTE LTD. and QT   )   **Date:  April 21, 2015**
   VASCULAR LTD. (f/k/a QT VASCULAR PTD. )  **Time: 2:00 p.m.**
21 LTD.),                             )   **Hon. Yvonne Gonzalez Rogers**
                                      )
22            Defendants.             )
                                      )
23 _____  )

24

25

26

27

28

**TABLE OF CONTENTS**

**Page**

INTRODUCTION .................................................................................................................... 1

ARGUMENT ......................................................................................................................... 3

I.   KONSTANTINO HAS CONSISTENTLY ARGUED THAT THE STATE LAW
     CLAIMS ARE DISTINCT AND UNRELATED TO THE PATENT CLAIMS,
     BOTH HERE AND IN THE DELAWARE PROCEEDING ............................................. 3

II.  ANGIOSCORE'S CONTENTION THAT THIS IS AN IMPROPER MOTION
     FOR RECONSIDERATION IS WITHOUT MERIT ......................................................... 5

III. 28 U.S.C. SECTION 1338(B) DOES NOT PROVIDE ORIGINAL
     JURISDICTION FOR ANGIOSCORE'S STATE LAW CLAIMS ................................... 7

IV.  JURISDICTION IS LACKING UNDER 28 U.S.C. SECTION 1367(A) BECAUSE
     THERE IS NO COMMON NUCLEUS OF OPERATIVE FACTS ................................... 9

V.   DISCRETIONARY JURISDICTION IS UNWARRANTED UNDER 28 U.S.C.
     SECTION 1367(C) BECAUSE THE STATE LAW CLAIMS DOMINATE, AND
     THE STATE LAW  CLAIMS INVOLVE NOVEL ISSUES ........................................... 13

CONCLUSION ..................................................................................................................... 15

1

# TABLE OF AUTHORITIES

2

**Page(s)**

## CASES

3

4

*Angel Music, Inc. v. ABC Sports, Inc.*,
609 F. Supp. 764 (S.D.N.Y. 1985) ....................................................................... 8

5

*Axel Johnson, Inc. v. Carroll Carolina Oil Co.*,
145 F.3d 660 (4th Cir. 2998) .......................................................................... 9, 12

6

*Beacon Theatres, Inc. v. Westover*,
359 U.S. 500 (1959) ...................................................................................... 3, 15

7

8

*Bender v. Williamsport Area Sch. Dist.*,
475 U.S. 534 (1986) ........................................................................................... 5

9

*Bernhardt v. Cnty. of L.A.*,
279 F.3d 862 (9th Cir. 2002) ............................................................................... 5

10

11

*BLT Restaurant Grp. LLC v. Tourondel*,
855 F. Supp. 2d 4 (S.D.N.Y. 2012) ................................................................... 13

12

*CE Distribution, LLC v. New Sensor Corp.*,
380 F.3d 1107 (9th Cir. 2004) ........................................................................... 13

13

*Channel v. Citicorp Nat'l Servs., Inc.*,
89 F.3d 379 (7th Cir. 1996) ............................................................................... 13

14

15

*Ciro, Inc. v. Gold*,
816 F. Supp. 253 (D. Del. 1993) ........................................................................ 14

16

17

*Clark v. B.H. Holland Co.*,
Nos. 95-1008, 95-1020, 95-1441, 1996 U.S. App. LEXIS 11262
(Fed. Cir. May 14, 1996) ................................................................................... 12

18

19

*CTS Corp. v. Dynamics Corp. of Am.*,
481 U.S. 69 (1987) ........................................................................................... 14

20

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*,
318 F. Supp. 1116 (S.D.N.Y. 1970) .................................................................. 11

21

22

*Graham v. John Deere Co.*,
383 U.S. 1 (1966) ............................................................................................. 10

23

*Guth v. Loft*,
23 Del. Ch. 255 (Del. 1939) ................................................................................ 7

24

25

*In re Seagate Tech., LLC*,
497 F.3d 1360 (Fed. Cir. 2007) ......................................................................... 11

26

27

28

*Krieger v. Atheros Commc'ns, Inc.*,
    776 F. Supp. 2d 1053 (N.D. Cal. 2011) ........................................................... 14

*KSR Int'l Co. v. Teleflex Inc.*,
    550 U.S. 398 (2007) .......................................................................................... 10

*Kupferberg, Goldberg & Niemark, L.L.C. v. Father & Son Pizza*,
    No. 95 C 3690, 1997 U.S. Dist. LEXIS 3974 (N.D. Ill. Mar. 31, 1997)........................ 8

*Lam Research Corp. v. Schunk Semiconductor*,
    No. C-03-1335 EMC, 2014 WL 1995799 (N.D. Cal. May 15, 2014) .............................. 5

*Lucent Techs., Inc. v. Gateway, Inc.*,
    580 F.3d 1301 (Fed. Cir. 2009) ......................................................................... 11

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ............................................................................................ 5

*Mars Inc. v. Kabushiki-Kaisha Nippon Conlux*,
    24 F.3d 1368 (Fed. Cir. 1994) ............................................................................. 8

*Ray v. Basa*,
    No. C 11-2923 YGR (PR), 2014 WL 2605359 (N.D. Cal. June 10, 2014) ....................... 5

*Uniloc USA, Inc. v. Microsoft Corp.*,
    632 F.3d 1292 (Fed. Cir. 2011) .......................................................................... 11

*United Mine Workers of Am. v. Gibbs*,
    383 U.S. 715 (1966) .......................................................................................... 14

*United States v. Hays*,
    515 U.S. 737 (1995) ............................................................................................ 5

*Waterloov Gutter Prot. Sys. Co. v. Absolute Gutter Prot., L.L.C.*,
    64 F. Supp. 2d 398 (D.N.J. 1999) ........................................................................ 8

*Waypoint Homes, Inc. v. Fagorala*,
    No. 12-CV-05282-YGR, 2012 WL 6131080 (N.D. Cal. Dec. 10, 2012) ........................ 5

*Zenith Labs., Inc. v. Bristol-Myers Squibb Co.*,
    19 F.3d 1418 (Fed. Cir. 1994) ........................................................................... 10

**STATUTES**

28 U.S.C. § 1338(b) ................................................................................... 2, 7, 8

28 U.S.C. § 1367 ......................................................................................... *passim*

35 U.S.C. § 284 ............................................................................................... 11

Cal. Corp. Code § 309 ........................................................................................ 7

1

**RULES**

2

Fed. R. Civ. P. 12(h)(3) ............................................................... 5

3

**MISCELLANEOUS**

4

15 James Wm. Moore, Moore's Federal Practice ¶ 104.45 (3d ed. 2014) ..................................... 8

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

In their motion to dismiss, Defendants showed that this Court is without power to adjudicate the state law claims under § 1367(a) because those claims – as recognized by all parties and the Court – are distinct and do not form the same "case or controversy" as (i.e., share a common nucleus of operative fact with) the patent claim giving rise to the Court's federal jurisdiction; and alternatively, even if the Court had the authority to resolve these claims under § 1367(a), it should decline to do so under the discretionary prong of 28 U.S.C. § 1367(c) because the state law claims predominate (as AngioScore has admitted) and because they present novel issues of Delaware law.  Both the order and content of the arguments in AngioScore's opposition – including what AngioScore says and does not say – belie the weakness of its position and confirm that the motion to dismiss should be granted.

In an attempt to deflect from the fact that it conceded in the Delaware Court of Chancery that its state law and patent claim are factually and legally distinct while taking the exact opposite position before this Court, AngioScore asserts a "they did it, too" defense.  Thus, in its "Introduction," AngioScore represents that "[Defendants] convinced the Delaware court that there *was* a substantial overlap in 'pertinent facts' and 'relevant time period' between the federal and state claims in this action."  Opp'n at 1; *see also id.* at 5-6, 8.  As shown below, this assertion is flatly untrue.  Indeed, well before the present motion, in November 2014, Konstantino told the Court of Chancery that "Konstantino has consistently maintained that the *Covered [state law] Claims are distinct from the patent claims* . . . Indeed, he argued that position unsuccessfully in attempting to defeat AngioScore's . . . attempt[] to add the state law claims to the Federal Action."  Supp. Liddiard Decl. Ex. D, at 7 n.2.  Konstantino's position has not changed.

AngioScore's "Argument" section fares no better.  AngioScore first contends that the motion to dismiss is an improper motion for reconsideration that should be denied on this basis alone.  Any such assertion is shredded by the judicial reality – acknowledged by AngioScore itself – that subject matter jurisdiction may be raised at any time.  Indeed, courts must remain vigilant throughout the course of a case to ensure that subject matter jurisdiction is present.  In addition, there is no Court order addressing subject matter jurisdiction to be "reconsidered."

-1-

AngioScore next argues that the Court has original jurisdiction over at least the unfair competition claim under 28 U.S.C. § 1338(b) because that state law claim is joined with a "substantial and related" patent infringement claim.  AngioScore's own pleadings belie that claim: 28 U.S.C. § 1338(b) is not even mentioned in any complaint filed by AngioScore (let alone cited as a basis for federal jurisdiction); the unfair competition claim was never asserted in conjunction with the patent case; and AngioScore's own court submission confirms that "AngioScore's claim of unfair competition is grounded" not on its patent claims but "in its claims that Konstantino breached his fiduciary duty."  Dkt. No. 264 at 10.

Nor can AngioScore's rhetoric obscure the absence of a common nucleus of operative facts.  For example, although AngioScore *asserts* that "Dr. Konstantino's role and relationship to AngioScore is the subject of both the federal and state law claims" (Opp'n at 13), this is simply not so.  While Konstantino's role as a director of AngioScore gives rise to any duties he had as a fiduciary, which is the subject of AngioScore's state law claims, his role as a director of AngioScore and his conduct while at that company has no bearing at all on whether Chocolate infringes a "paper patent" which AngioScore did not (and does not) even practice. Similarly, while AngioScore's existing business, its financial wherewithal, and its agreements and understandings with Konstantino prior to his resignation from the board are all factors in the state law claims, what AngioScore did (or does) or what agreements it made (or did not make) with Konstantino has no relevance to the patent claim.[1]  No matter how much AngioScore may contort the record, it cannot avoid the truth that its state law claims are all about the relationship between a corporation and its former director (which ended in February 2010), whereas its patent case is about the relationship between a patent and an accused device that is not alleged to have infringed the patent until 2011.  There is no common nucleus of operative fact here; thus, the Court has no supplemental jurisdiction over the state law claims under § 1367(a).

---

[1] It is therefore unsurprising that the Court at the March 3, 2015 hearing acknowledged that the claims are "totally distinct," and bifurcated the state law claims and patent case for separate trials because they are "distinctly different" claims.  It is also unsurprising – but telling – that AngioScore's opposition does not mention the Court's statements or, for that matter, its own statements to the Court on that date.

1    AngioScore lastly contends that the Court should exercise its discretion under § 1367(c)

2    and retain jurisdiction over the state claims because this Court has presided over this case for

3    years, a trial is imminent, and thus judicial economy mandates the continued exercise of

4    jurisdiction.  Apart from the fact that the Court cannot exercise jurisdiction under 1367(c) if, as

5    here, it does not have jurisdiction under 1367(a), AngioScore's opposition omits a critical

6    consideration under 1367(c) – whether the state law claims predominate over the patent claim

7    (which militates in favor of dismissal).  And for good reason:  AngioScore's counsel has

8    admitted that this case is all about the breach of fiduciary duty claim and has abandoned any

9    pretense that the patent claim is even worth trying.  But even AngioScore's "judicial efficiency"

10   contention misses the mark because it ignores, *inter alia*, (a) that this Court has presided over the

11   state law claims for only nine months, and (b) that all discovery in this case is readily

12   transferable to another court with jurisdiction (indeed, there are actions between the parties

13   pending in both Alameda County Superior Court and the Delaware Court of Chancery).  Indeed,

14   factual determinations from the bench trial would not even be binding in any later patent trial by

15   a jury under *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 510-11 (1959).

16                                              **ARGUMENT**

17   **I.    KONSTANTINO HAS CONSISTENTLY ARGUED THAT THE STATE LAW
           CLAIMS ARE DISTINCT AND UNRELATED TO THE PATENT CLAIMS,**
18   **       BOTH HERE AND IN THE DELAWARE PROCEEDING**

19           In its Introduction, AngioScore represents that "[Defendants] convinced the Delaware

20   court that there *was* a substantial overlap in 'pertinent facts' and 'relevant time period' between

21   the federal and state claims in this action."  Opp'n at 1.  In addition, AngioScore devotes a

22   section of its "Background Information" to support the supposed proposition that Konstantino

23   argued in Delaware that "defense of the state law claims overlapped with defense of the patent

24   claims."  *Id.* at 5-6.  This is, in a word, untrue.

25           Chancellor Bouchard of the Delaware Court of Chancery granted Konstantino's summary

26   judgment request that he was entitled – pursuant to AngioScore's corporate charter,  bylaws and

27   its indemnification agreement with Konstantino – to advancement for certain "covered claims"

28   pending in the various actions against him, including the state law claims asserted against

Konstantino here.  Supp. Liddiard Decl. Ex. E.  The disputes in the Delaware action since that ruling focus on whether specific invoiced amounts are properly "advanceable" as defense costs related to the covered claims (i.e., the state law claims against Konstantino), or whether the invoiced amounts are not advanceable because they relate to the non-covered patent claims or services provided to the corporate defendants (who have no advancement rights).  It is precisely to such a dispute that AngioScore points to in its opposition – specifically, AngioScore questioned whether Konstantino was entitled to advancement for having a WSGR attorney present at certain depositions, including one that was noticed as part of the patent case.  Counsel for Konstantino offered several reasons why advancement was appropriate, including that "70 to 80 percent of the questioning was focused on the state claims, even though, 'it was a patent deposition.'"  *See* Caruso Decl. Ex. 13, at 71.  The Delaware court agreed with Konstantino and directed advancement for all disputed amounts.[2]  The fact that AngioScore was trying to use depositions in its patent case to get discovery for its state law claims cannot change the reality admitted by AngioScore in Delaware  – "'the ***factual bases*** for demonstrating that a breach of fiduciary duty occurred ***are different*** from those necessary to prove patent infringement.'" Def. Mem. at 4 (some emphasis omitted) (citation omitted). That reality is dispositive on the issue of supplemental jurisdiction – none exists here.[3]

---

[2] As Konstantino stated to the Delaware Court well before the present motion was filed (in November 2014):  "Konstantino has consistently maintained that the Covered Claims are distinct from the patent claims . . . Indeed, he argued that position unsuccessfully in attempting to defeat AngioScore's . . . attempt[] to add the state law claims to the Federal Action."  *See* Supp. Liddiard Decl. Ex. D, at 7 n.2 & ¶¶ 13-15.

[3] Likewise off-base is AngioScore's assertion that Konstantino argued in Delaware that "the pertinent facts" and "the relevant time period" for the state claims and the patent claims are the same or overlap.  *See* Opp'n at 8.  That is nonsense, as made clear by the very transcript that AngioScore cites to – *see* Caruso Decl. Ex. 13, at 69:1-77:18.  As explained by Konstantino's counsel, Konstantino (and the other defendants) opposed AngioScore's arbitrary (and misguided) initial position that sought to limit discovery on the state law claims to the period September 2009 (when Chocolate was first conceived) to February 5, 2010 (when Konstantino left the AngioScore board).  AngioScore's position was untenable (and ultimately dropped) because it is obvious that post-February 5, 2010 materials could be relevant to AngioScore's state law claims. Documents post-dating Konstantino's exit would relate, for example, to AngioScore's supposed damages resulting from the allegedly usurped corporate opportunity and whether AngioScore's state law claims are time-barred.  But again, this common-sense discovery position by Defendants has no bearing on whether AngioScore's state law and patent claims arise out of a common nucleus of operative fact and any insinuation by AngioScore to the contrary is

(continued...)

1

2

**II.    ANGIOSCORE'S CONTENTION THAT THIS IS AN IMPROPER MOTION FOR RECONSIDERATION IS WITHOUT MERIT**

3      AngioScore's lead argument – that the motion to dismiss is an improper "motion for

4   reconsideration" that should be denied for failure to comply with Local Rule 7-9(a) (requiring

5   leave of court before filing motion for reconsideration) or 7-9(b) (requiring new facts or law to

6   justify reconsideration) – has no merit.  Opp'n at 6-10.  AngioScore itself acknowledges that

7   "consideration of subject matter jurisdiction is always appropriate." *Id.* at 1, 6 ("no time limits

8   bars motions to dismiss for lack of subject matter jurisdiction"); *see also Bernhardt v. Cnty. of*

9   *L.A.*, 279 F.3d 862, 868 (9th Cir. 2002) ("'[F]ederal courts are required sua sponte to examine

10  jurisdictional issues such as standing.'" (alteration in original) (citation omitted)); *accord United*

11  *States v. Hays*, 515 U.S. 737, 742 (1995).  Article III jurisdiction must be demonstrated "at the

12  successive stages of the litigation" (*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992))

13  and "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must

14  dismiss the action" (Fed. R. Civ. P. 12(h)(3)). *Bender v. Williamsport Area Sch. Dist.*, 475 U.S.

15  534, 541 (1986).  This summarily ends any inquiry into the propriety of the motion itself, as

16  belied by the fact that none of the cases cited by AngioScore pertain to reconsideration of a court

17  order *failing* to dismiss for lack of subject matter jurisdiction.[4]  In the one case cited by

18  AngioScore where a court denied reconsideration related to subject matter jurisdiction, the court

19  refused to reconsider an order that it *lacked* such subject matter jurisdiction – i.e., it confirmed

20  the principal applicable here, that the court may not create subject matter jurisdiction where none

21  exists.[5]  In short, the Court's subject matter jurisdiction over this dispute is open for review at

22  any time.  Def. Mem. at 5.

23
        (...continued from previous page)

24  disingenuous.  As AngioScore itself has conceded both here and in Delaware, the factual and
    legal underpinnings of each claim are entirely distinct.

25      [4] *See Lam Research Corp. v. Schunk Semiconductor*, No. C-03-1335 EMC, 2014 WL

26  1995799 (N.D. Cal. May 15, 2014) (denying reconsideration of claim construction ruling); *Ray
    v. Basa*, No. C 11-2923 YGR (PR), 2014 WL 2605359 (N.D. Cal. June 10, 2014) (denying

27  reconsideration of prior order finding no municipal liability claim against Oakland police
    department).

28      [5] *See Waypoint Homes, Inc. v. Fagorala*, No. 12-CV-05282-YGR, 2012 WL 6131080 (N.D.
    Cal. Dec. 10, 2012) ("the Court previously stated in its Remand Order that it did not have subject
                                                                                    (continued...)

1    AngioScore's argument that the instant motion to dismiss is really a motion for

2    reconsideration is also off-base because there is no order from the Court addressing subject

3    matter jurisdiction.  Although Defendants raised the lack of subject matter jurisdiction as one

4    basis for denying AngioScore's request to add the state law claims to the case, the Court's order

5    granting that request did not even mention subject matter jurisdiction.  Dkt. No. 219.

6    AngioScore omits this fact in its opposition.

7    AngioScore also ignores (or worse, misrepresents) the multitude of new developments

8    that would justify a "reconsideration" of subject matter jurisdiction under § 1367, even if the

9    Court was not – as it is -- bound to consider whether it has subject matter jurisdiction.  First,

10   while AngioScore belatedly acknowledges that the Court bifurcated the state law claims from the

11   patent case at the March 3, 2015 hearing, AngioScore misrepresents the rationale for same,

12   stating that "[t]he trial was bifurcated largely because one set of claims is legal in nature, and

13   carries a jury right, while the other is equitable in nature, and must be tried to the Court."  Opp'n

14   at 9.  Not true.  The Court said the claims were "totally distinct" and bifurcated on this basis:  "I

15   will bifurcate this.  That is, the patent infringement claims are distinctly different from the breach

16   of fiduciary duty claims."  Dkt. No. 577-2 at 10:4-6.  This goes to the heart of subject matter

17   jurisdiction under § 1367(a) and AngioScore simply ignores this in its opposition papers.

18   AngioScore also ignores its counsel's statements that a trial on the patent case is unlikely and

19   that the state law claims predominate: "I can't emphasize enough *that the core of this dispute –*

20   *the core of the wrong for which we're seeking redress is Defendant's concealment of his duty –*

21   *of his development efforts regarding Chocolate.  And the remedies that we're seeking*

22   *predominantly relate to that fiduciary duty claim."  Id.* at 117:19-24 (emphasis added); *see* Def.

23   Mem. 7-9.  These admissions go to the propriety of jurisdiction under § 1367(c).

24

25

26

27          (...continued from previous page)

28   matter jurisdiction in this action.  Defendant has not provided any legal reason that there is now
     subject matter jurisdiction").

1

**III.   28 U.S.C. SECTION 1338(B) DOES NOT PROVIDE ORIGINAL JURISDICTION FOR ANGIOSCORE'S STATE LAW CLAIMS**

2

3        AngioScore's second argument in opposition to Defendants' motion to dismiss is that the

4   Court has original jurisdiction over at least the unfair competition claim under 28 U.S.C.

5   § 1338(b) because that state law claim is joined with a "substantial and related" patent

6   infringement claim.  Opp'n at 10-11.  But this last-second, ill-considered argument is belied by

7   AngioScore's own pleadings in the case.  To wit, 28 U.S.C. § 1338(b) is not even mentioned in

8   any of the five complaints filed by AngioScore in this action – let alone cited as a basis for

9   federal jurisdiction.  Dkt. Nos. 1, 12, 118, 220, 244.  Moreover, the unfair competition claim was

10  (and is) not "joined with a substantial and related" patent infringement claim – indeed, the unfair

11  competition claim was never asserted in conjunction with the patent case.  Dkt. Nos. 1, 12, 118.

12  Rather, the unfair competition claim first surfaced when AngioScore sought leave to add the

13  breach-of-fiduciary-duty-based state law claims in May 2014.  Dkt. No. 202-1.

14       To remove any doubt that the unfair competition claim relates exclusively to the breach-

15  of-fiduciary duty claims and not the patent claim, the Court need only revisit AngioScore's own

16  Opposition to Defendants' Motion to Dismiss AngioScore's Fourth Amended Complaint, where

17  AngioScore said:

18       In substance, AngioScore's claim of unfair competition is grounded in its claims
         that Konstantino breached his fiduciary duty under California law (California
19       Corporations Code, §309) and Delaware law (*Guth v. Loft*, 23 Del. Ch. 255 (Del.
         1939)) as a member of its Board of Directors by not offering to it the corporate
20       opportunity to acquire and commercialize the Chocolate device.

21  Dkt. No. 264 at 10; *see also id*. at 11 ("AngioScore alleges Defendants have committed unlawful

22  competition by breaching (or aiding and abetting the breach of) the fiduciary duty under

23  California law and Delaware law.").[6]  In short, there is zero doubt that AngioScore's unfair

24

25

26       [6] Moreover, § 1338(b) requires relation to a "substantial" patent claim, whereas here
     AngioScore has said that the "core of this dispute" is the state law claims.  Tellingly,
27   AngioScore's opposition does not reclaim any interest in trying the patent case; indeed, the most
     AngioScore can muster in defense of its patent case is that it survived a motion for summary
28   judgment and that "the patent claim cannot be viewed as a sham."  Opp'n at 1, 16.

1   competition claim is related to the breach of fiduciary duty claims, and not its abandoned (for all

2   intents and purposes) patent claim.[7]

3          But most fundamentally, § 1338(b) does not provide an end run around § 1367(a)'s

4   jurisdictional bar to supplemental claims that are not part of the same case or controversy as the

5   federal claim giving rise to jurisdiction.  Indeed, whether under the auspices of § 1338(b) or

6   § 1367(a), the Court may not exercise jurisdiction over AngioScore's state law claims unless

7   they arise from a common nucleus of operative fact animating the patent infringement claim.

8   *See* 15 James Wm. Moore, *Moore's Federal Practice* ¶ 104.45 (3d ed. 2014) ("And the test for

9   whether the two claims form part of the same case or controversy is the same common-nucleus

10   test used under Section 1338(b).  Therefore, the key to whether there is jurisdiction over the

11   claim is whether the common-nucleus test is met, not whether the claim is one for 'unfair

12   competition.'" (footnote omitted)); *Angel Music, Inc. v. ABC Sports, Inc.*, 609 F. Supp. 764, 768

13   (S.D.N.Y. 1985) (finding no 1338(b) jurisdiction over breach of fiduciary duty claim in

14   copyright case because there is not a common nucleus of operative fact:  "minimal overlap of the

15   factual circumstances behind each claim" and "the claims are based on entirely different legal

16   theories"); *Kupferberg, Goldberg & Niemark, L.L.C. v. Father & Son Pizza*, No. 95 C 3690,

17   1997 U.S. Dist. LEXIS 3974, at *5 (N.D. Ill. Mar. 31, 1997) ("A claim of unfair competition is

18   'related' under § 1338(b) if it derives from a common nucleus of operative facts.").

19

20       [7] Neither of the 1338(b) cases cited by AngioScore can extract it from the reality that by AngioScore's own pleading admissions, the unfair competition claim is unrelated to the patent

21   claim.  *See Mars Inc. v. Kabushiki-Kaisha Nippon Conlux*, 24 F.3d 1368, 1373-75 (Fed. Cir. 1994) (in action for infringement of U.S. and foreign patents, Federal Circuit affirmed holding

22   that district court had neither original jurisdiction under § 1338(b) nor supplemental jurisdiction under § 1367(a) over alleged Japanese patent infringement because foreign patent infringement

23   cannot be viewed as unfair competition and "the foreign patent infringement claim at issue here is not so related to the U.S. patent infringement claim that the claims form part of the same case

24   or controversy and would thus ordinarily be expected to be tried in one proceeding."); *Waterloov Gutter Prot. Sys. Co. v. Absolute Gutter Prot., L.L.C.*, 64 F. Supp. 2d 398, 404 (D.N.J. 1999)

25   (noting that a patent claim is related to an unfair competition claim "if it is derived from a common nucleus of operative fact," finding such relation in a patent infringement claim and a

26   counterclaim for unfair competition based on letter from plaintiff's counsel to defendants' customers that defendant was infringing patent "because the validity and enforceability of the . . .

27   patents will be critical in determining whether the Attorney Defendants' letters were sent solely to secure an unfair competitive advantage," but ultimately dismissing the unfair competition

28   claim because counsel's letters were protected under litigation privilege).

1    As set forth below, no such common nucleus of operative facts – or considerable overlap

2  of facts – exists here between the breach of fiduciary duty claims on the one hand, and the

3  patent infringement claims on the other.

4  **IV.    JURISDICTION IS LACKING UNDER 28 U.S.C. SECTION 1367(A) BECAUSE
         THERE IS NO COMMON NUCLEUS OF OPERATIVE FACTS**

5

6    In their opening brief, Defendants highlighted the admissions by AngioScore in the

7  Delaware proceeding that the "'alleged breach of fiduciary duty is totally distinct from [his]

8  alleged patent infringement' and '[t]he two claims are distinct as to both the pertinent facts and

9  the relevant time period,'" and why this Court should follow the Fourth Circuit's lead in *Axel*

10  *Johnson, Inc. v. Carroll Carolina Oil Co.*, 145 F.3d 660 (4th Cir. 2998), and dismiss

11  AngioScore's state law claims.  *See* Def. Mem. at 7-10.

12    In attempting to extract itself from its own admissions, AngioScore weakly declares that

13  the admissions were made "in a markedly different context" (Opp'n at 7).  But AngioScore fails

14  to offer any explanation as to why this matters.[8]  The admissions that the claims are "totally

15  distinct" and the factual underpinnings of the claims "different" are true and hold in both forums.

16    AngioScore next contends that "'judicial admissions on questions of law have no legal

17  effect.'"  Opp'n at 8 (citation omitted).  But AngioScore's admissions are expressly factual:

18    Moreover, the ***factual bases*** for demonstrating that a breach of fiduciary duty
      occurred ***are different*** from those necessary to prove patent infringement: for
19    example, the alleged failure of [Konstantino] to inform the Board of AngioScore
      about his early work on the Chocolate device would constitute a breach of
20    fiduciary duty regardless of whether or not the Chocolate device infringed a
      patent.  The ***factual issues*** regarding patent infringement are the structure of the
21    Chocolate device and the validity of the patent over the prior art, none of which is
      relevant to the breach of fiduciary duty case.[9]
22            *            *            *            *

23    ***The two claims are distinct as to both the pertinent facts and the relevant time
      periods***. . . .  [Konstantino's] failure to inform AngioScore's board about his early
      development of the Chocolate device would be a breach of his fiduciary duty, but
24    it may not constitute patent infringement.  Moreover, ***factual issues regarding the
      structure, functionality, and validity of the Chocolate device are not necessary***
25    ***to the breach-of-fiduciary-duty case***.[10]

26    [8] Instead, AngioScore engages in "Diversion 101" by incorrectly asserting that Konstantino
    has taken contradictory positions in Delaware and in this Court.  Opp'n at 8.  As explained *supra*
27  at 3-4, this assertion is dead wrong.

    [9] Dkt. Nos. 557-1 ¶ 9, 557-3 ¶ 8 (emphasis added).
28
    [10] Dkt. No. 557-2 at 13 (emphasis added).

1    A fact is a fact.  Here, the patent and state law claims raise different factual issues, which

2    AngioScore concedes.  More particularly, the evidence required to prove AngioScore's claim of

3    patent infringement and Defendants' defense of invalidity has no bearing on – and certainly  no

4    common nexus with – AngioScore's state law claims.  To prove patent infringement,

5    AngioScore must show that Chocolate embodies each limitation of the asserted patent claims.

6    This requires a detailed technical comparison of the two.  *Zenith Labs., Inc. v. Bristol-Myers*

7    *Squibb Co.*, 19 F.3d 1418, 1423 (Fed. Cir. 1994).  Evidence of the timing and circumstances of

8    Chocolate's development, or the intent of the developers, is irrelevant to this analysis.

9    And contrary to AngioScore's contention, the "technology and operation of . . . other

10   devices . . . such as those of AngioScore [and] other competitors" are plainly **not** "among the key

11   issues . . . of both the patent and state law claims."  Opp'n at 12-13.  These have nothing to do

12   with the patent infringement inquiry; indeed, it is legal error for the court to even *consider* a

13   comparison to the AngioScore device in deciding patent infringement.  *Zenith Labs.*, 19 F.3d at

14   1423 (court may not "compare in its infringement analysis the accused product or process with

15   the patentee's commercial embodiment or other version of the product or process; the only

16   proper comparison is with the claims of the patent").  The parties' submission of separate expert

17   reports for the patent and state law claims confirms there is no overlap in technical analysis.  Six

18   experts have offered several hundred pages of reports to analyze infringement.  Yet, both sides

19   retained separate experts who authored separate reports related to the state law claims.

20   Similarly, the evidence required to invalidate a patent is unrelated to AngioScore's state

21   law claims.  Four factors must be considered with respect to patent invalidity:  (1) "the scope and

22   content of the prior art"; (2) "differences between the prior art and the claims at issue"; (3) "the

23   level of ordinary skill in the pertinent art resolved"; and (4) "secondary considerations as

24   commercial success, long felt but unsolved needs, failure of others, etc."  *Graham v. John Deere*

25   *Co.*, 383 U.S. 1, 17 (1966); *see also KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406 (2007).

26   None of these factors relates to the timing or development of Chocolate.  None of the three

27   technical experts on invalidity have proffered opinions relating to the state law claims.

28

1   AngioScore also argues that "Dr. Konstantino's role and relationship to AngioScore" will

2   be used to "establish that the patent infringement was willful and that his fiduciary duty to

3   AngioScore was breached by taking Chocolate for himself." Opp'n at 13.  Not so.  To prove

4   willful infringement, AngioScore must meet a two-part test by clear and convincing evidence.  *In*

5   *re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007).  First, AngioScore must show that

6   the alleged infringer acted despite "an objectively high likelihood that its actions constituted

7   infringement of a valid patent." *Id.*  Second, AngioScore then must show that this objectively

8   high risk was "either known or so obvious that it should have been known" to the alleged

9   infringer. *Id.*  Defendants' knowledge of the technical merits of infringement and/or validity is

10  unrelated to Dr. Konstantino's "role and relationship to AngioScore" or its state law claims –

11  indeed, no AngioScore product even practices the '119 patent.

12      Finally, AngioScore suggests that the damages for each case overlap.  Opp'n at 13-14.

13  Again, not true.  For its state law claims, AngioScore advances lost profits and disgorgement

14  damages theories.  However, its patent law damages arise specifically from the Patent Act, 35

15  U.S.C. § 284, and the body of law relating thereto, that provides a reasonable royalty as a

16  measure of damages.[11]  Thus, it is unsurprising that even though AngioScore used the same

17  expert (Mr. Olsen) for the patent and state law damages claims, Mr. Olsen submitted separate

18  reports for each damages claim.  Mr. Olsen's analysis of patent damages relies primarily on the

19  fifteen factors identified in *Georgia-Pacific* in determining a reasonable royalty that would have

20  been the product of a hypothetical negotiation.  None of this analysis is relevant to AngioScore's

21  state-law disgorgement or lost profits theories.[12]

22

23      [11] *See generally Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292 (Fed. Cir. 2011); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301 (Fed. Cir. 2009); *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116 (S.D.N.Y. 1970).

24

25      [12] AngioScore's suggestion that its use of Mr. Olsen as an expert for both its patent damages analysis and its state law claims damages analysis somehow reflects significant overlap between the claims is rich, given the history of Mr. Olsen's deposition.  Specifically, AngioScore *refused*

26  to have two defense counsel question Mr. Olsen on his distinct damages theories, one on the patent side, the other on the state law claim damages, *unilaterally terminating the deposition*

27  *after the patent-related questioning*.  Defendants were forced to file a motion to compel before Judge Corley, who granted it:  "I find it's embarrassing the position that you [AngioScore] take. I'm granting the motion to compel."  *See* Supp. Liddiard Decl. Ex. F, at 8:22-24.  Judge Corley

28  elaborated:  "This is a case in which it was three and a half hours with one attorney, [Defendants]

(continued...)

1    AngioScore also concedes that the time periods are completely different.  The relevant

2  period for the alleged misconduct supporting the state law claims ends in February 2010, when

3  Konstantino left the board, whereas the patent claim did not even ripen until the Chocolate

4  device's sale in the United States starting in December 2011.  Also pertinent only to the state

5  claims but not the patent claim is whether Chocolate was within AngioScore's line of business

6  and necessary and essential to that business, whether Chocolate competed with that business,

7  whether AngioScore had the funds to develop that product, and what AngioScore knew about it.

8  The patent claim, based on a patent that AngioScore does not even practice, could have been

9  brought by any party holding the patent and does not implicate facts unique to AngioScore.[13]

10    At bottom, AngioScore's justification for supplemental jurisdiction is that Chocolate is

11  the purported corporate opportunity and Chocolate is the device that allegedly infringes the '119

12  patent (that is not even practiced by AngioScore).  But that alone cannot – and does not –

13  constitute a common nucleus of operative fact between the state law claims and the patent claim.

14  *See Clark v. B.H. Holland Co.*, Nos. 95-1008, 95-1020, 95-1441, 1996 U.S. App. LEXIS 11262,

15  at *7-8 (Fed. Cir. May 14, 1996) (after trial on patent inventorship claim and state law claims for

16  corporate mismanagement – including against the named inventor on the patent – Federal Circuit

17  held that the district court lacked supplemental jurisdiction over the state law claims under

18  § 1367(a) because there was no common nucleus of operative facts between the state claims and

19  the inventorship claim).

20

21         (...continued from previous page)
22  said, on the patent infringement claims, and three and a half with a different, on what are
   different theories.  It's patent infringement and it's fiduciary duties, where there will be different
23  theories of damages.  It makes perfectly good sense." *Id.* at 10:11-16.

24    [13] All of the foregoing highlights how weak AngioScore's attempt to distinguish the Fourth
   Circuit's holding in *Axel* is.  There, the Fourth Circuit found that the party and court admissions
25  precluded a showing of jurisdiction under § 1367(a).  AngioScore responds that the admissions
   were not dispositive in *Axel*, but rather, that they "only highlighted what was readily apparent
26  from the nature of the claims themselves."  Opp'n at 9.  First, the Court will search *Axel* in vain
   for any suggestion that the party and court admissions were not dispositive of the issue of subject
27  matter jurisdiction.  Second, even if AngioScore's spin on *Axel* were correct, it would be to no
   avail.  That is because, as explained herein, the Court's and AngioScore's admissions that the
28  state law and patent claims are distinct "only highlight what is readily apparent from the nature
   of the claims themselves."

1    Thus, the Court lacks the power to exercise supplemental jurisdiction over the state law

2    claims under § 1367(a).[14]

3    **V.     DISCRETIONARY JURISDICTION IS UNWARRANTED UNDER 28 U.S.C. SECTION 1367(C) BECAUSE THE STATE LAW CLAIMS DOMINATE, AND THE STATE LAW  CLAIMS INVOLVE NOVEL ISSUES**

4

5    Because there is no jurisdiction under § 1367(a), the Court should not even reach the

6    discretionary analysis under § 1367(c).  But if it were to do so, discretion should be declined here

7    because the state claims predominate and involve novel issues of state law.

8    There is no dispute that AngioScore's state law claims predominate over its patent case –

9    AngioScore itself emphasized this at the March 3, 2015 hearing.  Dkt. No. 577-2 at 117:19-24 ("I

10   can't emphasize enough that the core of this dispute -- the core of the wrong for which we're

11   seeking redress is Defendant's concealment of his duty -- of his development efforts regarding

12   Chocolate.  And the remedies that we're seeking predominantly relate to that fiduciary duty

13   claim.").  AngioScore also admitted that it has no interest in – or expectation of – actually trying

14   the patent case.  *Id*. at 117:24-118:4.  AngioScore's opposition does not even mention – let alone

15

16   _____

17   [14] AngioScore's attempt to lower the jurisdictional bar under § 1367(a) to any  "loose factual connection" is misplaced and in all events unavailing – because there is no connection between

18   AngioScore's patent and state law claims – as revealed by AngioScore's inapposite cases.  In *CE Distribution, LLC v. New Sensor Corp.*, 380 F.3d 1107 (9th Cir. 2004), the appellate court

19   reversed the district court finding that it had no *personal jurisdiction* over the foreign defendant in a breach of contract-based case; there was no holding on whether supplemental claims

20   comported with jurisdictional requirements of § 1367(a) or (c).  Similarly unavailing is AngioScore's cite to *Channel v. Citicorp National Services, Inc.*, 89 F.3d 379 (7th Cir. 1996).

21   There, the court found jurisdiction over counterclaims because the plaintiff's class claim for breach of lease agreement and defendant's counterclaim for right to early termination fee from

22   class members involved interpretation of the same provisions in the lease:  "Each class member's claim against Citicorp depends on the lease, and indeed on the same *clause* of the lease that

23   creates Citicorp's claim for a termination charge" as well as other overlapping facts and issues (*id*. at 385).  There is no such critical communality here.  In *BLT Restaurant Group LLC v.

24   Tourondel*, 855 F. Supp. 2d 4 (S.D.N.Y. 2012), the test applied for supplemental jurisdiction was "common nucleus of operative fact," which the Court said could be met if there is "substantial

25   overlap" between state and federal claims or if the presentation of the federal claim would

26   necessarily bring the facts underlying the state law claims before the court, such that the claims would ordinarily be expected to be tried together.  *Id*. at 10.  None of the requirements articulated

27   in *BLT* is even close to being met here.

28

retreat from – these admissions.  Thus, there is no doubt that the state law claims predominate and jurisdiction is therefore unjustified under § 1367(c).

There is likewise no dispute that Delaware courts have not addressed whether the corporate opportunity doctrine even applies where an outside director who co-develops an invention without using corporate resources can be compelled to disclose and assign that invention to the corporation.  AngioScore thus seeks a novel application of the doctrine..

AngioScore does not dispute this; instead countering that Delaware law on the corporate opportunity doctrine merely 'provides guidelines' which this Court can readily apply.  Opp'n at 17-18.  But such a facile assertion does a disservice to general principles of comity, a state's specific interest in regulating the affairs of its corporate citizens, and specific deference to the uniquely expert Delaware Court of Chancery.  *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726-27 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties . . . ."); *CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69, 89, 91 (1987) ("[n]o principle of corporation law and practice is more firmly established than a State's authority to regulate domestic corporations"); *Ciro, Inc. v. Gold*, 816 F. Supp. 253, 271 (D. Del. 1993) (in dismissing state law claims under § 1367(c), the court said "The United States District Court for the District of Delaware does not purport to possess any special expertise in issues of Delaware corporate law. Resolution of these complex issues in the first instance is the province of the Delaware Chancery Court."); *Krieger v. Atheros Commc'ns, Inc.*, 776 F. Supp. 2d 1053, 1062-63 (N.D. Cal. 2011) (noting that the Delaware Court of Chancery "unquestionably has a well-recognized expertise in the field of state corporation law and is a particularly suitable forum to adjudicate those disputes." (citations omitted) (internal quotation marks omitted)).

Having no real response to the predominance and novel state law factors that militate in favor of declining jurisdiction under § 1367(c), AngioScore trumpets judicial economy. Specifically, AngioScore argues that the state claims should remain in federal court because of the federal court's "long standing involvement in the state law claims" and its involvement "over the past three years."  Opp'n at 15.  But there is no "long standing involvement."  This Court did

1   not allow AngioScore to add the state law claims until June 25, 2014, meaning that the "long-

2   standing involvement" is months, not years.

3          Moreover, the District Court's bifurcation multiplies rather than reduces the number of

4   judicial proceedings envisioned by the Court's exercise of supplemental jurisdiction.  Nor can

5   the bifurcation achieve any judicial economy.  Consistent with constitutional principles, *if in fact*

6   there were a common nexus of operative facts between the Delaware fiduciary duty claim and

7   the patent claims, no factual determinations from the bench trial would or could be binding in

8   any later patent trial by a jury.  *Beacon Theatres*, 359 U.S. at 510-11.  The "significant overlap"

9   in witnesses and documents that AngioScore champions (Opp'n at 13) blithely ignores that the

10  witnesses would need to reappear, and the documents be reintroduced, at two different trials even

11  if the federal lawsuit were the only tribunal hearing these distinct claims.  Finally, as to the

12  discovery already adduced and completed in this federal action, it may be readily used in a state

13  court that has jurisdiction.

14         In sum, AngioScore's claim of "judicial economy" is a mirage and certainly does not

15  justify this Court's discretionary exercise of supplemental jurisdiction under sectino 1367(c).  To

16  the contrary, holding a separate trial on the state law claims flouts judicial economy rather than

17  serves it.  Moreover, given the predominance of the state law claims and the novelty of the legal

18  issues presented under Delaware's corporate opportunity doctrine, Defendants respectfully

19  submit that any exercise of jurisdiction under § 1367(c) would be an abuse of discretion.

20                                          **CONCLUSION**

21         For the foregoing reasons, Defendants respectfully request that the Court dismiss

22  Plaintiff's state law claims for lack of subject matter jurisdiction.  Defendants maintain that such

23  a ruling is compelled by 28 U.S.C. § 1367(a); and is further justified under 28 U.S.C. § 1367(c).

24                                    Respectfully submitted,

25  Dated:  April 1, 2015              WILSON SONSINI GOODRICH & ROSATI
                                       Professional Corporation
26

27                                     By: /s/ Dylan J. Liddiard
                                          _____
28                                         DYLAN J. LIDDIARD

                                       Attorneys for *Defendants*