1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

**ANGIOSCORE, INC.**,

Plaintiff,

v.

**TRIREME MEDICAL, INC., ET AL.**,

Defendants.

Case No.  12-cv-03393-YGR

**PRE-TRIAL ORDER NO. 5 (PATENT CLAIMS)**

Re: Dkt. Nos. 470-71, 514, 680-81, 685-87

9   This Order addresses: (1) the parties' outstanding motions *in limine*; (2) a *Daubert* motion

10  as to plaintiff's damages expert; and (3) several pending administrative motions to seal.  Having

11  considered the papers submitted, the arguments of counsel at the August 21, 2015 pretrial

12  conference, and good cause shown, the Court rules as follows.

13  **I.    MOTIONS *IN LIMINE***

14  Plaintiff filed three motions *in limine* (Dkt. No. 681) and defendants filed seven (Dkt. Nos.

15  680, 682-87).  In light of apparent concessions in various opposition briefs, the parties were

16  instructed to meet and confer and advise the Court of the aspects of the motions still at issue.  The

17  parties submitted a stipulation addressing defendants' motions *in limine* numbers four through six

18  (Dkt. No. 725) and defendants submitted a supplemental statement regarding the same (Dkt. No.

19  726).  The parties also provided revised proposed orders, indicating the specific rulings still

20  required.  (Dkt. Nos. 727, 738.)  To the extent certain aspects of the motions were not reflected in

21  the revised proposed orders, the Court deems them **WITHDRAWN**.[1]  On August 24, 2015, the Court

22  issued Pre-Trial Order No. 4, addressing defendants' motions *in limine* one through three.  (Dkt.

23  No. 736.)  The Court now addresses the remaining motions *in limine*.

24
25
26
27
28

---

[1] Moreover, certain motions *in limine* seek to preclude various experts from testifying outside the scope of their reports.  All expert witnesses at trial must tether their testimony to the contents of their respective reports, and are precluded from exceeding the scope of their reports.  The Court does not specifically address this aspect of the various motions herein unless specific guidance is required prior to trial based on the issues presented.

1    **A.    Plaintiff's Motion** *in Limine* **No. 1**

2          In its first motion *in limine*, plaintiff seeks to exclude, pursuant to Federal Rules of

3    evidence 401, 402, and 403, testimony by defendants' expert Neil Sheehan which is purportedly

4    contrary to the Court's claim construction orders.  Specifically, plaintiffs seek to exclude: (i)

5    paragraphs 114-17, 120-23, 128-29, 134, 140, and 144-45 from the Sheehan report relating to the

6    construed terms "longitudinal expansion" and "longitudinally shorten," and (ii) paragraphs 151

7    and 154 relating to the construed term "attached."  The Court **GRANTS IN PART** and **DENIES IN**

8    **PART** the motion.

9          **i.    Longitudinal Expansion and Longitudinally Shorten**

10         The Court previously construed the relevant, disputed terms as follows:

11         • Longitudinal expansion: "reshaping by straightening" (Dkt. No. 218 at 2).

12         • Longitudinally shorten: "reshaping by returning to a bended state" (Dkt. No. 679 at

13           1).

14         Plaintiff contends aspects of the November 19, 2014 Sheehan Report (Dkt. No. 681-3) are

15    inconsistent with these constructions, including by adding an additional requirement that the

16    expansion of struts at issue occurs along a particular axis.  To the contrary, the relevant paragraphs

17    explicitly adopt the Court's previous construction.  Plaintiff misconstrues the Court's concern over

18    defendant's proposed construction as it related to the *connectors* described in Claim 8 of U.S.

19    Patent No.7,691,119 (the "patent-in-suit" or "'119 Patent") as applying to the struts as well.  To

20    the contrary, in construing "longitudinal expansion," the Court found that "[g]iven that the struts

21    consist of metal wires, 'straightening' necessarily means that when they expand, they expand in a

22    longitudinal direction."  (Dkt. No. 218 at 17.)  Thus, to the extent the paragraphs in question

23    discuss measurements along a longitudinal axis, such an approach is not contrary to the Court's

24    prior orders.  Moreover, Sheehan does not opine that the claims require the struts to grow or

25    elongate, but rather merely to bend or straighten—an approach that is also consistent with the

26    Court's earlier order.  (*See* Dkt. No. 218 at 17 ("Nothing in the patent suggests this metal wire [of

27    the struts] somehow increases in length.  Rather, when the working portion of the balloon expands

28    and applies radial pressure to the interior of the struts, the curvature of the bends in the struts

United States District Court
Northern District of California

2

1    decreases.").)  The motion on this ground is therefore **DENIED**.

2              **ii.      Attached**

3          The Court also previously resolved a claim construction dispute regarding the term

4    "attached," finding its ordinary and customary meaning applies.  (Dkt. No. 218 at 2.)  Plaintiff had

5    proposed the construction "directly or indirectly attached" and defendants had proposed "fixed

6    directly to."  (Dkt. No. 218 at 18.)  The Court agreed with plaintiff that the patent does not require

7    "direct, surface-to-surface attachment of the ends of the hypo tube to the ends of the catheter

8    shaft."  (*Id.*)  It further found that plaintiff "is entitled to the full breadth" of the claim term

9    "attached," rejecting defendants' contention that the prosecution history limited the claims to

10   "direct, surface-to-surface attachment."  (*Id.* at 19-21.)  The Court found, however, that nothing

11   suggests the patent uses "attached" as a technical term of art requiring elaborate interpretation and

12   that the term's plain and ordinary meaning "more accurately captures the term's emphasis on

13   connection and junction" than did plaintiff's proposal.  (*Id.* at 18, 22.)

14         Now, plaintiff argues paragraphs 151 and 154 of the Sheehan report misconstrue the

15   Court's earlier findings in an attempt to rebut plaintiff's expert.  The Court agrees in part.  The

16   first two sentences of paragraph 151 merely quote language from the patent and express the

17   expert's understanding about a point of agreement between the parties regarding the connection

18   point of the catheter shafts in the accused devices (at the balloon necks).  Those apparently

19   uncontroverted propositions shall not be stricken.  However, the Court **STRIKES** the remainder of

20   paragraph 151 and all of paragraph 154.  Those portions of the report incorrectly suggest

21   "attached," as used in the patent, cannot encompass indirect attachment.  To the contrary, the

22   Court previously rejected this specific argument by defendants as noted above.

23            **B.      Plaintiff's Motion *in Limine* No. 2**

24         Plaintiff's second motion *in limine* seeks to exclude "evidence, testimony, and argument

25   regarding statements by Martin B. Leon concerning the Chocolate balloon catheter" pursuant to

26   Federal Rules of Evidence 403, 801, and 802 and Federal Rule of Civil Procedure 26.  The Court

27   has reviewed the relevant statement submitted in the form of an audiovisual recording of Leon.

28   Therein, Leon discusses the Chocolate device, noting it is different than a scoring or cutting

United States District Court
Northern District of California

3

1    balloon (the types of devices covered by the patent-in-suit according to defendants).  These

2    statements are relevant to the question of infringement in this case.  However, as out-of-court

3    statements offered for the truth of the matters asserted, they are also hearsay under Rule 801.

4         Defendants argue they are not hearsay under Rule 801(d)(2)(A) and (C) (exempting from

5    hearsay a party opponent's statements or those made by one authorized to speak on the subject on

6    the party's behalf), because Leon is listed as chairman of plaintiff's medical advisory board.

7    Defendants have failed to provide evidence describing the particulars of this role and legal

8    authority addressing whether statements made by a company's *advisor*—as in the case of certain

9    statements by its *officers* or *directors*—are *per se* authorized.  Defendants have also failed to

10   proffer any evidence suggesting the statements were specifically authorized in this case.

11        Defendants alternatively argue the statement should be admitted under Rule 807's residual

12   exception because they have "equivalent circumstantial guarantees of trustworthiness" because

13   plaintiff's CEO has testified Leon is highly regarded in the field.  This proffer is insufficient to

14   warrant introduction of this classic hearsay evidence.

15        Thus, finding no basis to admit the evidence, the motion is **GRANTED** insofar as it seeks

16   exclusion of the video itself.  The motion is otherwise **DENIED** without prejudice to plaintiff

17   raising appropriate objections at trial.  Defendants may be permitted to examine AngioScore

18   witnesses regarding their knowledge of Leon's statement.

19        **C.    Plaintiff's Motion *in Limine* No. 3**

20        Plaintiff's third motion *in limine* seeks to exclude, pursuant to Rules 401, 402, and 403,

21   evidence, testimony, and argument regarding the July 2015 notices of allowance by the U.S.

22   Patent and Trademark Office regarding defendants' U.S. Patent Application Nos. 13/044,425,

23   13/761,525, and 13/972,761, which defendants claim cover the Chocolate devices accused of

24   infringement in this lawsuit.  Plaintiff correctly notes that, in general, "where [a] defendant has

25   appropriated the material features of the patent in suit, infringement will be found 'even when

26   those features have been supplemented and modified to such an extent that the defendant may be

27   entitled to a patent for the improvement.'"  *Atlas Powder Co. v. E.I. du Pont De Nemours & Co.*,

28   750 F.2d 1569, 1580 (Fed. Cir. 1984).  On this basis, plaintiff argues the recent allowance of these

United States District Court
Northern District of California

United States District Court
Northern District of California

1    patents does not have any relevance to the question of whether the accused devices infringe

2    plaintiff's preexisting patent.

3         By contrast, defendants argue the allowance may be relevant for a number of purposes,

4    including: (1) as evidence of separate patentability, suggesting non-infringement under the

5    doctrine of equivalents; (2) to rebut plaintiff's damages expert's reliance on a license of the newly

6    allowed patents; (3) as evidence of the design and operation of the accused devices; and (4) as

7    evidence relevant to whether any infringement by defendants was willful.  The Court finds the first

8    argument persuasive.  Pending developments at trial, newly allowed patents may be relevant as to

9    the question of whether the accused devices infringe the patent-in-suit.  *See Nat'l Presto Indus.,*

10   *Inc. v. W. Bend Co.*, 76 F.3d 1185, 1192 (Fed. Cir. 1996) ("Whether a modified device is within

11   the scope of the prior patent, literally or by equivalency, depends on the particular facts.  The fact

12   of separate patentability is relevant, and is entitled to due weight."); *Siemens Med. Solutions USA,*

13   *Inc. v. Saint-Gobain Ceramics & Plastics, Inc.*, 637 F.3d 1269, 1281 (Fed. Cir. 2011) (noting

14   "separate patentability, while potentially relevant to the equivalence issue and deserving of due

15   weight in the infringement analysis, does not merit a heightened evidentiary burden" in an

16   infringement analysis).  Defendants have proffered that they will be able to establish the necessary

17   links at trial establishing the relevance of this evidence (e.g., demonstrating that the accused

18   devices practice the newly allowed patents).  Accordingly, it is improper to exclude this evidence

19   at this juncture.[2]

20

21        [2] Defendants' remaining arguments are not particularly persuasive.  As to the second, the
     fact of the patents' recent allowance is of minimal probative value to rebut plaintiff's reliance on a

22   early license of these patents—prior to their allowance and, indeed, at a time when only a
     provisional application had been filed.  At the time, the fact that they would ultimately be allowed
     was not known.  Nevertheless, it may have some probative value on this question as tending to

23   show, based on the subsequent allowance, that one knowledgeable in the field might have, early
     on, considered them promising.  To the extent the evidence is otherwise admitted to show separate

24   patentability, there is no risk of additional undue prejudice to plaintiff by admitting this evidence
     for this additional purpose.  As to the third, defendants have designated no expert who will testify

25   to the fact that the accused devices practice the newly allowed patents, and in any event the fact of
     their recent allowance (as opposed to the applications themselves) is not relevant to the operation

26   of the accused devices.  As to the fourth, defendants' reliance on *King Instrument Corp. v. Otari
     Corp.*, 767 F.2d 853, 867 (Fed. Cir. 1985) for the proposition that this evidence is relevant to

27   willfulness is misplaced, as there the patents in question had apparently issued prior to the time
     period at issue.  Here, the patents were not allowed until months before trial.  Thus, any probative

28   value of this evidence to the question of willfulness is minimal.

5

United States District Court
Northern District of California

1      Therefore, the Court **DENIES** the motion.  The Court will entertain an appropriate jury

2  instruction proposal, informing the jury that the allowances in question do not preclude a finding

3  of infringement of the patent-in-suit.

4      **D.      Defendants' Motion *in Limine* No. 4**

5      Defendants move to preclude evidence of a device constructed for plaintiff's employee and

6  designated expert Jeffrey Bleam that purportedly embodies the patent-in-suit.  (Dkt. No. 685.)

7  The purpose of constructing the device was apparently to rebut anticipated testimony by

8  defendants that a device as described in the '119 Patent is not feasible.  (Dkt. No. 743 (Tr.) at 90-

9  91.)  Specifically, defendants seek to strike paragraphs 7-13 of Bleam's expert report on the

10  grounds that: (1) plaintiff failed to identify such a device in their infringement contentions; and (2)

11  Bleam does not offer an opinion that the constructed device actually embodies the '119 Patent.

12  (Dkt. No. 688-9.)  As plaintiff has indicated it only seeks to introduce this evidence in rebuttal, to

13  the extent defendants argue the patented design is not feasible, the Court **RESERVES** on this

14  remaining portion of the motion.

15      **E.      Defendants' Motion *in Limine* No. 5**

16      Defendants move to preclude certain testimony by plaintiff's expert Marc Levenston.

17  (Dkt. Nos. 686 (Motion), 393-14 (Report).)  Specifically, they seek to exclude testimony regarding

18  three claim limitations: "attached," "longitudinal expansion," and "end."  They also seek to

19  preclude him from testifying on the ultimate issue of whether the accused devices infringe.

20      As for the "attached" limitation, defendants argue Levenston's opinion contradicts the

21  Court's construction.  As discussed above in connection with plaintiff's motion *in limine* number

22  one, the Court did not hold that "attached" excludes indirect attachment.  Defendants again

23  misconstrue the Court's earlier order.  The motion on this ground is **DENIED**.

24      As for the "longitudinal expansion" term, defendants contend that Levenston's opinion

25  relies on measurements of two accused Chocolate devices for which he improperly withheld the

26  underlying data.  Plaintiff asserts Levenston will no longer rely upon aspects of his opinion

27  derived from the measurement data, but argues he should be permitted to rely on opinions based

28  on simple visual observations—not measurements—of the status of the balloon as inflated or

United States District Court
Northern District of California

1    deflated.  The Court agrees with and hereby adopts that approach.  Therefore, the motion on this

2    ground is **GRANTED IN PART**.  The following aspects of the report are **STRICKEN** as clearly falling

3    within the scope of this ruling: on page 12 of the report, the sentence referencing "experimental

4    measurements"; the first full paragraph on page 13 through the end of section 1e on page 15;

5    pages 26-38 (section regarding experimental measurements); and the text listing measurements

6    accompanying Figures 4 and 8.  In light of this ruling excluding testimony as to any of these

7    measurements, to the extent Levenston seeks to opine as to his observations, plaintiffs shall first

8    make a proffer, outside of the presence of the jury, establishing that testimony did not

9    inappropriately rely on the excluded measurements.

10        As for the term "end," defendants argue the report fails to identify the function, way, or

11   result by which the accused devices purportedly infringe the patent-in-suit under the doctrine of

12   equivalents.  As a result, they claim the testimony should be stricken.  However, the authority they

13   provide for this proposition does not go so far.  In *Amgen Inc. v. F. Hoffman-La Roche Ltd.*, 580

14   F.3d 1340, 1382 (Fed. Cir. 2009), the Federal Circuit held an expert offering an opinion of

15   infringement under the doctrine of equivalents is required to present, "on a limitation-by-limitation

16   basis, particularized testimony and linking argument" either: (1) "as to the insubstantiality of the

17   differences between" the limitation and the accused product; or (2) "with respect to the function,

18   way, result test."  In the report, Levenston opines that "[e]limination of a small fraction of one

19   strut would not alter the behavior of the Chocolate devices in a manner that would fall outside of

20   any of the claim limitations" and would merely constitute "normal design iteration," not

21   "substantial differences."  (Dkt. No. 393-14 at 10.)  Therefore, the motion on this ground is

22   **DENIED** in light of prong one of *Amgen*.

23        Finally, as to the request to preclude Levenston's testimony as to the ultimate issue of

24   infringement, the Court **RESERVES**.

25        **F.    Defendants' Motion *in Limine* No. 6**

26        Defendants move to preclude testimony of plaintiff's expert Michael Horzewski (Dkt. No.

27   393-13) regarding certain infringement theories not disclosed in plaintiff's infringement

28   contentions and testimony concerning the ultimate issue of infringement.  The motion is

7

1    **GRANTED IN PART** and **DENIED IN PART**.  The Court notes, as a threshold matter, that plaintiff

2    sought leave to amend its infringement contentions in November 2014.  Plaintiff submitted to the

3    Court, and defendants, a proposed amended set of contentions at that time, including many of the

4    specific theories or explanations now challenged.  (Dkt. No. 352.)  Leave to amend was denied as

5    untimely and unnecessary in light of plaintiff's contention that no new theories of infringement

6    were presented, merely additional detail.  (Dkt. No. 453.)

7          "The scope of contentions and expert reports are not . . . coextensive."  *Apple Inc. v.*

8    *Samsung Electronics Co.*, No. 5:12-CV-0630-LHK-PSG, 2014 WL 173409, at *1 (N.D. Cal. Jan.

9    9, 2014) ("Contentions need not disclose specific evidence, whereas expert reports must include a

10   complete statement of the expert's opinions, the basis and reasons for them, and any data or other

11   information considered when forming them.").  In evaluating defendants' challenge, the Court

12   considers whether the paragraphs at issue permissibly address, in greater detail, a previously

13   disclosed theory, or impermissibly substitute a new theory altogether.  *Id.*

14         First, as to the limitation "wherein each strut extends from the proximal end to the distal

15   end," defendants seek to strike paragraphs 34-36 and page 6 of Exhibit 3 of the report regarding

16   the doctrine of equivalents.  The Court finds that paragraph 34 merely describes the Chocolate

17   device, and therefore need not be stricken.  Paragraph 36 notes "eliminating a very small segment

18   of the strut is an insubstantial difference because the missing segment is not necessary to allow

19   longitudinal or radial expansion of the constraining structure."  (Dkt. No. 393-13 at ¶ 36.)  While

20   neither party provided a copy of the infringement contentions, plaintiff represents that the

21   contentions similarly asserted that removing "a small portion of the strut" was an "insubstantial

22   difference."  Thus, the general theory underlying paragraph 36 was apparently disclosed.

23   Paragraph 35, however, asserts that the struts and rings of the accused device are "part of a single

24   integral structure," thus performing "substantially the same function as the end-to-end struts of the

25   claimed '119 device—to provide longitudinal structures that allow the constraining structure to

26   span the entire inflatable portion of the balloon with no unterminated struts exposed to the vessel."

27   (*See* Dkt. No. 352-2 at 15.)  This doctrine of equivalents theory was apparently not disclosed in

28   the contentions.  Therefore, paragraph 35 and the similar language in the last paragraph on the

*United States District Court*
*Northern District of California*

8

United States District Court
Northern District of California

1     right side of page 6 of Exhibit 3 are **STRICKEN**.

2          As to the "attached" limitation, plaintiff represents the infringement contentions asserted

3     the "attached" limitation was literally infringed by the accused devices.  The challenged portions

4     of the report—paragraphs 46-49, and page 8 of Exhibit 3—merely discuss theories of indirect

5     attachment, including by way of reference to specifications not available to plaintiff at the time of

6     its infringement contentions.  These opinions merely present greater detail as to the basic theory of

7     infringement.  Thus, the motion on this ground is **DENIED**.

8          As to the "longitudinal expansion" limitation, defendants seek to strike paragraphs 41-42

9     and page 7 of Exhibit 3.  These paragraphs are **STRICKEN** to the extent they rely on Levenston's

10    separately stricken measurements (for which the underlying data was undisclosed, as addressed

11    above).  To the extent they rely on his observations, however, these opinions are permitted.

12    Plaintiff shall make a proffer to the Court, outside the presence of the jury, before presenting any

13    opinions from these paragraphs, establishing that they were not indirectly derived from the

14    impermissible measurements.

15         Additionally, defendants move to preclude testimony regarding "summary points" not

16    included in any expert report, but instead in a document entitled "Additional Support for My

17    Opinions Based on Claim Construction Order and Sheehan Report."  (Dkt. No. 688-20.)  As noted

18    above, no expert may offer testimony exceeding the bounds of their reports.  The Court does not

19    construe this document as an expert report or supplement thereto.  To the extent material included

20    in that document was also part of a report, such testimony may be elicited at trial if not otherwise

21    prohibited.

22         Finally, as to the request to preclude Horzewski's testimony as to the ultimate issue of

23    infringement, the Court **RESERVES**.

24         **G.     Defendants' Motion** *in Limine* **No. 7**

25         Defendants seek to preclude plaintiff from introducing evidence at trial of defendant

26    TriReme's 510(k) submissions to the U.S. Food and Drug Administration relating to the Chocolate

27    PTA Balloon Catheter devices.  (Dkt. No. 687.)  For the reasons stated on the record at the August

28    21, 2015 hearing, the motion is **GRANTED**.

9

1

**II.   *DAUBERT* MOTION**

2        Defendants seek to exclude the testimony of plaintiff's damages expert, Gary Olsen, as

3   unreliable.  (Dkt. No. 471.)  Plaintiff opposes the motion.  (Dkt. No. 499.)  Rule 702 provides that

4   "scientific, technical, or other specialized knowledge" by a qualified expert is admissible if it will

5   "help the trier of fact to understand the evidence or to determine a fact in issue."  Fed. R. Evid.

6   702.  *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and *Kumho Tire Co. v.*

7   *Carmichael*, 526 U.S. 137(1999), "require that the judge apply his gatekeeping role . . . to all

8   forms of expert testimony, not just scientific testimony."  *White v. Ford Motor Co.*, 312 F.3d 998,

9   1007 (9th Cir. 2002).  However, "far from requiring trial judges to mechanically apply the

10  *Daubert* factors—or something like them—to both scientific and non-scientific testimony, *Kumho*

11  *Tire* heavily emphasizes that judges are entitled to broad discretion when discharging their

12  gatekeeping function."  *United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000).  Indeed, the

13  Ninth Circuit has determined that a "trial court not only has broad latitude in determining whether

14  an expert's testimony is reliable, but also in deciding how to determine the testimony's

15  reliability."  *Elsayed Mukhtar v. Cal. State Univ.*, 299 F.3d 1053, 1064 (9th Cir. 2002) (citing

16  *Hankey*, 203 F.3d at 1167) (emphasis in original), *overruled on other grounds*, *Estate of Barabin*

17  *v. AstenJohnson, Inc.*, 740 F.3d 457, 467 (9th Cir. 2014).

18        Defendants argue Olsen's report contains a number of flawed methodologies.  For

19  instance, they argue: (1) his starting royalty rate is flawed; and (2) his upward adjustments from

20  that figure are improper.

21        As to the first, they argue the 2.2-8.9 percent starting range is flawed because of the use of

22  data from a limited, 13-month time period and use of average gross margins in a purportedly

23  improper industry classification (Medical and Hospital Equipment).  However, as to the former,

24  the expert relied on that time period as a result of then-available data produced by defendants.  As

25  to the latter, a difference of opinion as to the proper classification is not grounds for excluding the

26  report in its entirety.  Additional challenges to the starting rate, such as his failure to consider

27  earlier gross margins (he determined the earlier figures were less relevant as the defendants were

28  in start-up mode at the time), also go to weight, not admissibility.  In his Second Supplemental

10

1    Report, Olsen further relied upon Eitan Konstantino's license to QT Vascular Ltd., and

2    specifically the finding of independent financial adviser SAC Capital that the 5 percent rate was at

3    the lower end of a 2-30 percent range for comparable licenses.  (Dkt. No. 463-3 ¶ 14.)

4            As to the second, defendants raise a slew of challenges, including as to: (a) Olsen's

5    reliance on a development agreement license between defendant TriReme Medical, LLC and

6    InnoRa GmbH; (b) Olsen's failure to afford weight to the transaction in which plaintiff acquired

7    the patent-in-suit; (c) Olsen's assumption of a worldwide, exclusive license; and (d) Olsen's

8    reliance on "comparable" license summaries selected from a reference database by plaintiff.  The

9    approaches are not so unreasonable as to warrant exclusion under Rule 702 and *Daubert*.  In

10   evaluating "comparable" licenses, an expert "must consider licenses that are commensurate with

11   what the defendant has appropriated."  *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 872 (Fed.

12   Cir. 2010) ("If not, a prevailing plaintiff would be free to inflate the reasonable royalty analysis

13   with conveniently selected licenses without an economic or other link to the technology in

14   question.").  The Court agrees that some of Olsen's decisions regarding comparable licenses are

15   questionable, however those concerns, in this case, are more properly directed to the weight of the

16   testimony, not its admissibility.  Olsen presented a colorable, though perhaps questionable, basis

17   for selecting and weighing each of the licenses included (or, in the case of plaintiff's acquisition of

18   the patent, for choosing to discount that particular transaction).  Defendants may challenge each of

19   these bases during cross-examination.  Plaintiff also adequately defends, for purposes of

20   admissibility, Olsen's assumption of a "worldwide" license by contending it was necessarily

21   limited to the United States—because the hypothetical license involves only a U.S. patent—and

22   suggests Olsen's finding that it would have been an "exclusive" license is also of minimal

23   significance, because he placed limited weight on that particular factor.  Thus, the motion is

24   **DENIED**.

25   **III.    MOTIONS TO SEAL**

26           The Court has pending before it three administrative motions to seal briefs or other

27   documents filed in connection with various pretrial motions.  (Dkt. Nos. 470, 514, 680.)  In the

28   Ninth Circuit, two different standards govern motions to seal, depending upon the nature of the

United States District Court
Northern District of California

11

1    proceeding in connection with which the documents are submitted.  *Pintos v. Pac. Creditors*

2    *Ass'n*, 565 F.3d 1106, 1115-16 (9th Cir. 2009) *opinion amended and superseded on denial of*

3    *reh'g*, 605 F.3d 665 (9th Cir. 2010).  For many judicial records, the party seeking to seal the record

4    must demonstrate "compelling reasons" that would overcome the public's right to view public

5    records and documents, including judicial records.  *Id*. (citing *Kamakana v. City & County of*

6    *Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006)).  However, a different standard applies to private

7    documents submitted in connection with non-dispositive motions, since such motions are often

8    unrelated or only tangentially related to the merits of the underlying claims.  *Kamakana*, 447 F.3d

9    at 1179-80.  The Rule 26(c) "good cause" standard applies to documents submitted in connection

10   with non-dispositive motions, such as discovery motions, which the court may seal "to protect a

11   party or person from annoyance, embarrassment, oppression, or undue burden or expense."

12   *Pintos*, 565 F.3d at 1116.  The requested redactions involve information related to the functioning

13   of the accused devices, along with other purportedly proprietary business information, such as

14   contract terms (e.g., royalty rates) or financial statements.

15         The Court finds the requests sufficiently justified and narrowly tailored for purposes of the

16   pending, non-dispositive motions with which they are connected.  Thus, the Court **GRANTS** the

17   motions, but solely for purposes of those motions and under the lower "good cause" standard.  The

18   documents and portions of documents subject to the motions are therefore sealed.  The Court

19   cautions the parties, however, that the documents are sealed *solely* for purposes of these pretrial

20   motions.  This Order does not allow any party to seal the documents or portions thereof in

21   connection with trial or with any dispositive motions.  Any party seeking to seal documents in

22   those contexts will be required to meet the higher "compelling reasons" standard.  The parties are

23   directed to meet and confer on the proper scope of any sealing requests at trial and to present them

24   jointly.

25   **IV.    CONCLUSION**

26         For the foregoing reasons, the Court rules as follows:

27         //

28         //

United States District Court
Northern District of California

12

United States District Court
Northern District of California

1. Motions *in Limine*

    a. Plaintiff's motion *in limine* number one to exclude testimony by Neil Sheehan regarding construed terms "longitudinal expansion," "longitudinally shorten," and "attached" is **GRANTED IN PART** and **DENIED IN PART**.

    b. Plaintiff's motion *in limine* number two to exclude statements by Martin B. Leon is **GRANTED IN PART** and **DENIED IN PART**.

    c. Plaintiff's motion *in limine* number three seeking to exclude recent notices of allowance is **DENIED**.

    d. The Court **RESERVES** on defendants' motion *in limine* number four to preclude rebuttal evidence concerning a device constructed for Jeffrey Bleam that purportedly embodies the patent-in-suit.

    e. Defendants' motion *in limine* number five to preclude testimony by Marc Levenston regarding three claim limitations ("attached," "longitudinal expansion," and "end") is **GRANTED IN PART** and **DENIED IN PART**, and the Court **RESERVES** on the question of whether Levenston may testify as to the ultimate issue of infringement.

    f. Defendants' motion *in limine* number six seeking to preclude testimony of Michael Horzewski regarding infringement theories that were purportedly not disclosed in plaintiff's infringement contentions is **GRANTED IN PART** and **DENIED IN PART**, and the Court **RESERVES** on the question of whether Horzewski may testify as to the ultimate issue of infringement.

    g. Defendants' motion *in limine* number seven seeking to preclude plaintiff from introducing evidence of defendant TriReme's 510(k) submissions is **GRANTED**.

2. Defendants' motion to exclude the testimony of plaintiff's damages expert Gary Olsen is **DENIED**.

3. The pending administrative motions to seal various pretrial motions are **GRANTED**.

1        This Order terminates Docket Numbers 470-71, 514, 680-81, 687.

2        **IT IS SO ORDERED.**

3  Dated: September 8, 2015

                                **YVONNE GONZALEZ ROGERS**

4                         **UNITED STATES DISTRICT COURT JUDGE**

United States District Court
Northern District of California

14